Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

for the

Central District of California

Western Division

| | | |
|---|---|---|
| | ) | Case No.   2:17 CV-07896 JAK-AS |
| | ) | |
| **Witold Kowbel** | ) | *(to be filled in by the Clerk's Office)* |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **University of Southern California** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued.  If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |



FILED
CLERK, U.S. DISTRICT COURT

JUL 1 0 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

## SECOND AMENDED

## COMPLAINT AND REQUEST FOR INJUNCTION

## I.       The Parties to This Complaint

### A.       The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if
needed.

| | |
|---|---|
| Name | Witold Kowbel |
| Street Address | 6841 E. Flamenco |
| City and County | Tucson |
| State and Zip Code | AZ 85710 |
| Telephone Number | 520 405 6130 |
| E-mail Address | witoldkowbel@gmail.com |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

**B.**      **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | University of Southern California |
| Job or Title *(if known)* | |
| Street Address | 620 Mc. Carthy Way |
| City and County | Los Angeles |
| State and Zip Code | CA 90007 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

E-mail Address *(if known)* _____

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question              ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

a.     If the plaintiff is an individual

The plaintiff, *(name)*   Witold Kowbel_____ , is a citizen of the State of *(name)*   Arizona_____ .

b.     If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

a.     If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

the State of *(name)* _____ . Or is a citizen of

*(foreign nation)* _____ .

    b.    If the defendant is a corporation

The defendant, *(name)*   University of Southern California   , is incorporated under

the laws of the State of *(name)*   California   , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

The total amount of controversy is $455,000. The total amount includes the following: $211,000 in recovery of the fees and tuition paid to USC since USC breached implied contract. $244,000 for all other educational costs associated with the Plaintiff's son education at USC since the Plaintiff sent his son to USC not any other school by accepting USC offer to send his son to USC in return for USC complying with its Policies and Promises. USC did not comply with its Policies and Promises.

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

    A.    Where did the events giving rise to your claim(s) occur?

      University of Southern California (USC)

    B.    What date and approximate time did the events giving rise to your claim(s) occur?

From April 2013 till now

C.  **What are the facts underlying your claim(s)?** *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Claim One.  Breach of Implied Contract Against USC

A. Implied  in fact Contract Existence

Contract existance elements of mutual assent and good considerations  of this implied in fact contract are defined by USC and  the Plaintiff's factual conduct as stated below.  In Spring of 2013 USC accepted the  Plantiff's son.  Subsequently USC has  invited  the Plaintiff to USC campus for one full day visit.  USC extremely aggresively  has  used  its marketiung tools and sales tools trying convince the Parents of potential USC students to send their children to  USC and pay  to USC for  their services vs sending their children other schools where  their children got also  accepted and paying other schools not USC.  USC has  made it very clear to the Plaintiff how critical to USC  are the Parents  and their money since in many cases at USC the parents  bear all the cost of their children education at USC which is extremely high, at least.   USC has described in its sale efforts  the broad range  of educatational services it would  offer to  its students in consideration for the money their parents would pay to USC not merely just the classes in order to be more competitive in the educational service business.  During the freshmsn year  USC actually required the students to live on campus, thus the parents would not only pay USC for  tuition and fees but for boarding and largely for food,  USC has clearly stated that other considerations not just classes are offered at USC for the  parents money paid to USC. It was clearly understood by the Plaintiff that USC understood during its marketing efforts that parents who pay for their  children to USC have clear RIGHTS at USC in consideration for their money paid to USC.   Actually USC has claimed how its networking  is the biggest asset they offer vs their competition in educational services and how critical are parents to USC.

IV.  **Irreparable Injury**

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

The Plaintiff has been suffering from December 2016 till now emotional distress, and in some cases extremely acute distress and on a few occasions  came close to suffer irreparable injury due to USC   Breach of Implied Contract  Claim as  stated in this complaint.  The Defendant's  absolute refusal to end Plaintiff's emotional distress will cause the Plaintiff irreperable  injury absent of injunction relief.  No future monetary compensation will ever repair such damage.  There is absolutely no standard which can quantify and measure such irreparable injury.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## V.      Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

This court injunction relief  is the only avenue available to the Plantiff to prevent irreparable injury to the Plaintiff which will be caused by the Defendant's Breach of Implied Contract  unless injuntion is granted.   Thus the Plaintiff seeks this Court Injunction to prevent irreparable injury to the Plaintiff.   In addition, the Plaintiff demands the Defendant to the pay the Plaintiff $455,000 in compensatory damages  plus interest and court cost.  The compensatory damages include: $211,000 in recovery of the tuition and fees paid by the Plaintiff to  USC.  USC breached implied in fact contract with the Plaintiff thus the Plaintiff is enititled to revover the money he has paid to USC plus the interest.  In addition  the Plaintiff demands USC to pay him the $244,000 for all other costs the Plaintiff has  incured with his son education at USC.  The basis for it  is the fact that the Plaintiff would have never sent his son to attend USC absent of the implied promises USC made to the Plaintiff and USC has breached all its implied promises made to the Plaintiff..

## VI.      Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.      For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          07/07/2018

Signature of Plaintiff

Printed Name of Plaintiff          Witold Kowbel

### B.      For Attorneys

Date of signing:

Signature of Attorney

Kowbel vs USC  Additional Pages

III. Statement of Claims.

Claim One.  Breach of Implied Contract against USC (continuation).

USC stated to the parents, including the Plaintiff, that their children  would get the credits for all the properly  completed classes and get USC degree/diploma after earning the needed credits.  USC explicitly stated the uniqueness of USC degree, claiming highly unique USC degree would offer the parents who pay for all the extremely expensive educational cost at USC (tuition on the top bracket plus extremely expansive housing, making USC one of the most expensive private Universities in the USC)  a degree for their children which would make them ultra- competitive in the market place and assure their excellent career and result in their financial independence from their parents.   In addition, USC explicitly stated  to the parents,  including the Plaintiff, that it would always  treat their children fairly and objectively and USC  would never engage in any unfair conduct which would unfairly  deprive parents children of earned  USC credits and or  USC degree which they earned as stated above.  Also USC stated, it would apply all its policies, rules  and regulation to their children in fair manner by strictly adhering to them, when the parents send them to USC and pay for their educational expenses for them at USC.  USC stated it PRIDES ITSELF in NON ALLOWING any UNFAIR treatment of its students.   Making unsupported accusations by USC Professors against their students to deprive them of  properly earned  credits clearly constitutes  non- fair conduct  not allowed by USC's promise as stated above.  Using  unsupported accusations made by USC Professors against USC students  in any disciplinary proceedings against USC students clearly  constitutes non-fair conduct  not allowed by  USC's promise as stated above.  Depriving USC students of properly earned credits and a degree  by the use of unsupported accusations made against them by their USC instructors  clearly constitutes  non-fair conduct  not allowed by USC's promise as stated above.

Thus,  fair conduct  by USC's own admission, clearly  included  making no unsupported accusations  by USC against its students, which USC could later use  to deprive its  students unfairly of earned credits and a degree from USC.   Thus, USC's fairness  Promise based upon the above stated

included: allowing the students to get credits for properly completed classes, allowing the students to get degree/diploma after they earned the needed USC credits and not to engage in any unfair conduct against its students including making unsupported accusations, which would deprive the parents children of properly earned credits and USC degree/diploma.

In simple terms, USC made its competitive implied in fact offer/promise to the parents, including the Plaintiff, to provide educational service package to their children, including allowing the students to get the credits and get the degree and be treated FAIRLY as stated above, claimed to be very unique in clear consideration of the parents sending their children to USC and paying for all their educational services to USC and paying for all other educational expenses at USC.


USC's promise to treat its students Fairly, imposed the following binding obligation on USC's conduct which could affect the Plaintiff by the following FACTS.

Under no circumstances, USC on its own admission was allowed to treat Plaintiff's son unfairly by making unsupported accusations against him and then later use unsupported accusations against him, to take the earned credits away from him and prevent him from getting USC diploma/degree when he became USC student.

That was a huge benefit to the Plaintiff by providing assurances that his son would have never be unfairly deprived of any earned credits and unfairly deprived of USC diploma/degree which would directly affect the plaintiff as stated below. USC's fairness promise made to the parents including the Plaintiff, as stated above, imposed binding obligation on USC's conduct which could affect Plaintiff in the following way:

Since the plaintiff was paying for all the educational cost at USC, he would suffer the following damages when USC treated Daniel unfairly in violation of its fairness promise: a) when USC deprived Daniel unfairly by making unsupported accusations of any credits needed for his graduation, Plaintiff would have to unjustly pay USC again for the same credits and all the educational expenses associated with spending additional time at USC, b) when USC deprived Daniel unfairly by making unsupported accusations of

USC degree/diploma, Plaintiff would lose all the money he has spent for Daniel's education, since USC degree was the sole reason Daniel has attended USC thanks to Plaintiff covering all his educational cost at USC.

The facts stated in this complaint established that USC unfair treatment of Daniel costs Plaintiff $455,000 since case (b) as stated above applies. USC's unfair treatment of Daniel by making and using unsupported accusations against Daniel, deprived Daniel of his USC degree and directly damaged the plaintiff as stated in (b).

 Thus, the fairness  promise  made by USC to the parents including Plaintiff in Spring of 2013,  was not only a clear benefit to the Plaintiff but it imposed a binding obligation on part of USC to its conduct,  which could directly affect the plaintiff as stated above and in fact affected the Plaintiff by damaging him to the extent of $455,000 since USC treated Daniel unfairly and deprived him of USC degree.

Before accepting the implied in fact offer/promise  made by USC to the Plaintiff, with the above stated promises USC has made to the parents including the Plaintiff,  to send his son to USC and pay for all his educational expenses at USC including paying tuition and fees to USC, Plaintiff has evaluated other Universities which also have accepted Plaintiff's son.

 Since several Universities have offered much more favorable financial terms and the Plaintiff would be paying for all the educational expenses for his son,  Plaintiff has very carefully evaluated all the available materials from USC (catalogs, policies, rules, regulations, etc).  Among other documents the Plaintiff has thoroughly studied USC Code of Ethics (officially adapted by USC Board of Trustees on March 28, 2004 understanding how the promises made in USC Code of Ethics could affect the Plaintiff directly).  First USC Code of Ethics stated:" At the University of Southern California, ethical behavior is predicated on two main pillars: a communication to discharge our obligation in a fair and honest manner…".

 That statement clearly meant to the Plaintiff that USC is obligated to treat his son, Daniel FAIRLY , including not making any unsupported accusations against him which could deprive him of earned credits and or

degree, consistent with the promise USC made to parents, including the Plaintiff in Spring 2013 visit to USC.    As stated above USC has expressly provided Plaintiff in its implied in fact offer/promise with binding obligation not to treat Plaintiff's son Daniel unfairly including not making any unsupported accusations against him, when he becomes a USC Student and Plaintiff would pay for his educational expenses at USC.  That binding obligation could affect plaintiff  the same way as stated above in the case of USC's  fairness promise and in fact it affected the Plaintiff by damaging him.   Also, as stated above in the case of USC fairness promise, that USC's  binding obligation provided Plaintiff with direct benefit.

  USC stated in its Code of  Ethics:" we do not take unfair advantage of anyone".    Since Daniel is USC student, he is a part of USC community and that promise clearly extends to him. That promise clearly states  that USC was not allowed to take unfair advantage of Daniel by any means which could constitute taking unfair advantage of Daniel by USC.


USC Code of Ethics  promise" we do not take unfair advantage of anyone" imposed three binding obligations on USC's conduct which could affect Plaintiff by the following FACTS:

Allowing USC Professor Tenderich to make unsupported accusations against Daniel in his official complaint to SJACS which could deprive Daniel of his earned USC credits and  USC degree  clearly  constitutes taking unfair advantage of Daniel  by USC  and it  was not allowed by USC's own admission by  USC's Code of Ethics promise as stated above.     Allowing USC's SJACS to make subjective, unsupported by any evidence decision, against Daniel, which would deprive him of earned USC credits and USC degree  constitutes taking unfair advantage of Daniel by USC and  it was not allowed by USC's own admission by  USC's Code of Ethics promise as stated above.   Allowing USC's Appeal Panel to render unsupported, FINAL decision against Daniel, which would deprive him of USC earned credits and USC degree clearly constitutes  taking unfair advantage of Daniel by USC  and  it was not allowed by USC's own admission by USC's Code of Ethics promise as stated above.

  Thus, making unsupported accusations against Daniel, by his USC instructor,  which in fact  were the basis to  deprive  him of properly earned

credits and then USC using such unsupported accusations in its SJACS' case against him to finally deprive him of USC earned credits and degree/diploma clearly constitutes taking unfair advantage by USC of Daniel in clear violation of its Code of Ethics promise: " we do not take unfair advantage of anyone..." and it was prohibited.

Thus, Daniel's USC instructor Tenderich, on USC's own admission was not allowed to make unsupported accusations against Daniel which could deprive him of earned USC credits and USC degree. In fact, Daniel's instructor Prof. Tenderich used unsupported accusations against him to initiate USC's Disciplinary action against him. On its own admission, USC was not allowed to use unsupported accusations against Daniel in its initial SJACS' proceedings to render its decision against him depriving him of earned credits and USC degree. In fact, USC's SJACS used unsupported accusations against Daniel in its SJACS' case against him to deprive him of earned credits and USC degree. On its own admission, USC's Appeal Panel was not allowed to use unsupported accusations to render its FINAL decision against Daniel depriving him of earned USC credits and USC degree. In fact, USC's Appeal Panel used unsupported allegations to render its decision against Daniel.

 USC's promise not to take unfair advantage of Daniel with these three binding obligations as stated above was a clear benefit to the Plaintiff by providing Plaintiff with the assurances that USC would not take away from Daniel his earned credits and deprive him of USC diploma/degree by engaging in an unfair conduct including making unsupported accusations. That benefit was similar benefit to that as described above in case of USC's fairness promise made in Spring of 2013 to parents including the Plaintiff.

USC's promise not to take unfair advantage of Daniel with its three binding obligations as stated above also imposed binding obligations on part of USC on its conduct which could affect the Plaintiff in the following way:

First, USC promise not to take unfair advantage of Daniel did not allow Daniel's instructor, Prof. Tenderich to make unsupported accusations against Daniel in his SJACS' complaint which could deprive him of earned USC credits and USC degree. It could affect the Plaintiff directly since

allowing Tenderich to make unsupported accusations against Daniel could result in  changing Daniel's earned grade from C to F  and  could deprive Daniel of credits needed for graduation and USC degree.   Thus,  the Plaintiff would have to pay USC unjustly for getting the same credits again and the full cost associated with spending additional time at USC to unjustly re take the same class.  Depriving Daniel of USC degree  would cost Plaintiff $455,000 full educational cost at USC since USC degree was the sole reason Plaintiff sent Daniel to USC and incurred $455,000 cost.

Secondly, USC's  promise  not to take unfair advantage of Daniel, did not allow SJACS to use unsporting accusations against Daniel and in fact change his earned C grade to F, which  deprived Daniel of  credits needed for graduation and USC degree.  The direct affect on the Plaintiff is stated above in the case of the first obligation.

 Thirdly, USC's  promise not to take unfair advantage of Daniel did not allow USC's Appeal Panel to use unsupported accusations against  Daniel to affirm SJACS' unsupported decision, and finally  changed his earned grade C to F, and   deprived  him of USC credits needed for graduation and USC degree,  since USC claims its 100% unsupported  Appeal Panel's decision is FINAL within USC system.  The direct affect on the Plaintiff is stated above in the case of the first obligation.

   Receiving the earned credits at USC needed for graduation  and receiving USC diploma/degree by  Daniel was undisputed benefit to not only to Daniel but clearly to the Plaintiff.   With USC degree/diploma Daniel could get good job and support himself and be able to pursue good carrier and become financially independent as USC claimed it would happen due to uniqueness of USC degree.  Since Daniel is Plaintiff's son, Plaintiff would directly benefit from it, by not worrying about his son's future and the need to support him in the future after he gets his USC diploma/degree.

 USC, as stated above,  fully admitted that degree from USC, not just taking classes from USC would justify for the parents to  cover extremely high educational cost at USC. Without getting the degree the money spent on USC education would be a huge financial loss to the Plaintiff on USC's own admission as stated above.  Therefore, the Plaintiff has suffered a loss of $455,000 since his son was deprived by USC's conduct of  taking unfair advantage of him by his instructor making unsupported accusations against

him, USC's SJACS and Appeal Panel using the unsupported accusatioins against Daniel to deprive him of properly earned USC credits and USC diploma/degree.

Thus, USC failure to keep its implied in fact promise not to take unfair advantage of Daniel in its conduct described above resulted in $455,000 loss to the Plaintiff.

 In addition, USC asked Daniel to write a five page essay on ethics since he allegedly committed Academic Dishonesty while  USC provided zero supporting evidence.   For Daniel, that was the ultimate USC UNFAIRNESS and caused Daniel additional huge emotional suffering. Daniel's suffering resulted in Plaintiff's  huge emotional suffering

 Thus,  taking unfair advantage as specified above  affected  the plaintiff  by causing Plaintiff  to suffer  financial losses and huge emotional distress as stated above.

 USC's  Code of Ethics statement " we not take unfair advantage of anyone"  was also  a highly unique statement.  As clearly stated  above and below keeping  promises made by USC in its implied offer/promise made in Spring 2013 and its Code of Ethics  was essential to Plaintiff not to be damaged and not suffer financial losses in educational expenses for Plaintiff's son,  Daniel at USC.

 For comparison, Arizona State University, which made Plaintiff's son hugely more competitive offer  had no mention of not  taking unfair advantage  Promise in its Code of Ethics and never stated "We keep these promises."  as USC stated in its Code of Ethics.  Therefore, USC's promises and undisputed, documented intent in its Code of Ethics to keep its promises made USC unique to the Plaintiff and it was the decisive factor Plaintiff sent his son in August of 2013 to USC so he can get USC degree claimed by USC to be so unique.

 In addition, USC policy on Student Conduct Code( SCC)  sections 10.II.1 and 15.04 strictly required USC to apply  preponderance of evidence standard in its disciplinary proceedings to Daniel since he is USC Student and Student Conduct Code directly applies to him.  Also as USC stated in Spring 2013 during Plaintiff's visit, USC was required to strictly comply with its publicly stated rules and regulations in a fair manner by strictly applying

preponderance of evidence standard in Daniel's Disciplinary proceedings since it is a USC rule and Daniel is USC student.   Thus, strict compliance with the preponderance of evidence standard was absolutely required by USC  as was clearly promised by USC to the Plaintiff in Spring of 2013 since it is USC rule and  Daniel is USC student. Also,  USC rules directly apply to Daniel as USC student and USC is obligated to comply with them by USC's own admission in its Code of Ethics" we keep promises".  That promise clearly extended to USC's SJACS proceedings against Daniel.  Thus,  USC was required to  comply with its preponderance of evidence standard in its SJACS' proceedings against Daniel and not to deprive Daniel of his earned credits and or degree by USC's failure to comply with its  required and mandatory preponderance of evidence standard in his SJACS' proceeding.Again, that was a clear benefit for the Plaintiff regarding any USC Disciplinary actions against DANIEL which would deprive him of earned credits and degree by advancing unsupported accusations  within USC's disciplinary proceedings and causing the Plaintiff direct financial losses as discussed above in the case of USC's  Fairness promise made in Spring of 2013 and USC's Code of Ethics promise not to take unfair advantage of Daniel.  USC's promise to use its preponderance of evidence standard in its disciplinary proceedings in Daniel's case imposed binding obligations on USC's conduct which could affect the Plaintiff by the following FACTS:

 USC's  promise to comply with its policy on preponderance of evidence  as stated above imposed  a binding obligation on the part of USC  to its conduct  at the initial review and USC  Appeal Panel's  conduct, which could affect and in fact  affected  the plaintiff by causing him financial losses as stated below.

 USC's  promise to use preponderance of evidence in Daniel's SJACS case initial review by Barton, could affect the plaintiff since Barton's failure to apply this standard would result in depriving Daniel of earned credits required for graduation and USC degree despite the fact that  the preponderance of evidence was 100% in favor of Daniel. Thus, under no conditions, Barton could affirm Tenderich's accusation and impose 100% unjustified sanctions on Daniel within the meaning of the preponderance of evidence standard of proof.  Since the Plaintiff has paid for all educational cost for Daniel, the direct affect on the Plaintiff was stated above in  the

case of USC's fairness promise and USC's Code of Ethics, " we do not take unfair advantage of anyone" Promise.

USC's promise to use preponderance of evidence in USC Appeal Panel's decision, could affect the Plaintiff since Appeal's Panel failure to use preponderance of evidence would deprive Daniel of earned credits required for graduation and USC degree despite the fact that preponderance of evidence was 100% in Daniel's favor. Thus, USC Appeal Panel's failure to apply USC mandatory preponderance of evidence standard of proof would impose, final 100% unjustified sanctions against Daniel depriving him of earned USC credits and USC degree.   Since  Plaintiff has paid for all Daniel's educational cost at USC, the direct affect on the Plaintiff was stated above in USC's fairness promise and USC's Code of Ethics, " we do not take unfair advantage of anyone" promise.

Plaintiff has clearly accepted all the promises made by USC in Spring of 2013 during Plaintiff's visit to USC, in USC  Code of Ethics "we do not take unfair advantage of anyone  and USC Student Conduct Code (SCC) preponderance of evidence proof,  SCC  sections 10.II.2 and 15.04  as the integral  part of educational services USC  implied in fact  offer/promise made  to the Plaintiff  which  USC presented to the Plaintiff during one day visit to USC in Spring of 2013.

On its own admission, USC stated in its Code of Ethics:" when we make promises on behalf of USC as the institution, or as individuals who are authorized on behalf of USC, we keep these promises".  Therefore, Plaintiff has been 100% justified expecting USC to comply with its implied promises made to the Plaintiff, which could affect the Plaintiff as stated above.  Since USC on its own admission stated it complies with its promises, it is undisputed fact, Defendant USC has actual knowledge that Plaintiff expected 100% USC compliance with its implied promises, which could affect the Plaintiff as stated above, when USC has accepted Plaintiff's payments for his son's educational services at USC.   All the promises made by USC as stated above imposed binding obligations on USC's conduct which could affect Plaintiff  by causing him financial losses as stated above and in fact greatly affected Plaintiff  by causing him great financial losses as stated above and  below.  Plaintiff has fully expected

USC to keep  all its promises  to prevent USC from inflicting  damages on the Plaintiff when USC accepted knowingly Plaintiff's payments.

 Promises made by USC in its implied in fact offer/promise, Code of Ethics and USC Student Conduct policy   provided direct benefit to the Plaintiff since USC compliance with these promises would assure the Plaintiff that his son Daniel would receive his USC credits and degree if he duly earned all the credits even if Unsupported  Accusations or any other form of unfair/taking unfair advantage conduct was ever made against him by USC. Since these promises created binding obligations which could affect the Plaintiff as discussed above to cause him financial losses, under no circumstances Plaintiff would accept implied in fact offer from USC, sent his son to USC and paid for his expenses if USC made no such promises to the Plaintiff which provided him with the benefits as stated above.

Thus, if USC kept its promises/binding obligations  to treat Daniel fairly, not take unfair advantage of him and apply preponderance of evidence standard in his SJACS' proceedings, Plaintiff would have never been damaged  and never lost the money paid for Daniel educational services at USC.

  Receiving USC degree was the sole purpose of Plaintiff sending Daniel to USC and paying for  all the associated costs.  Subsequently, between August 2013 and May 2017 Plaintiff's son has attended USC and took all USC classes needed for his graduation from USC.   Plaintiff has directly or indirectly  (co-signed his son student loan) paid  for all the educational costs including tuition, fees, board, food, transportation, books, etc (total of $455,000) for  Daniel from August 2013 till May 2017 at USC.   The total cost of tuition and fees paid to USC was  $211,000.   Plaintiff has obligated himself to pay for all the tuition and fees by providing USC with his accounts for the payments plan.  Therefore, Plaintiff made himself 100% responsible for Daniel's fees and tuition at USC

 Daniel has never obligated himself to make any payments for fees and tuition to USC.  Daniel had absolutely no financial resources to pay any money to USC  so he could not  obligate himself to pay USC any money and was able to attend USC solely because of Plaintiff's payments.  USC had actual knowledge that Plaintiff not Daniel was obligated to pay for Daniel's tuition and fees. USC took $211,000 from Plaintiff and simply

deprived unfairly Daniel of his degree and damaged the Plaintiff despite the definite promises USC has made. The only reason Plaintiff has obligated himself to pay for all USC fees and tuition was for USC to give Daniel the diploma after he properly  earns all required USC credits as was clearly promised to Plaintiff.

USC has accepted all Plaintiff's payments and  in consideration of the payments it received from the Plaintiff, USC has allowed Daniel to take all USC classes at USC needed for getting his diploma/degree from USC. Daniel has duly earned all the USC credits required for getting his diploma in Public Relations from USC.

 Per implied in fact promises made by USC to the Plaintiff in the implied in fact offer/promise  made by USC in Spring of 2013, Daniel should be able to get his diploma from USC since he  properly earned all the required credits at USC.  But, first USC took unfair advantage of Daniel in a dual mode.  First, it allowed his Professor to make unsupported accusations against Daniel and then it  used the unsupported  accusations to unfairly changed his duly earned grade C to F which in fact  deprived  Daniel of the needed credits for getting his USC diploma/degree which is clearly taking unfair advantage of Daniel.  The only reason Plaintiff paid $211,000 to USC and incurred the total educational cost of $455,000 was to get his son's diploma/degree from USC

The above facts establish mutual assent:  Plaintiff obligated himself to pay all tuition and fees at USC for Daniel and USC accepted it; USC obligated itself to give Daniel credits for meeting all the class requirements, give him the degree when he earns the needed credits at USC and treat Daniel fairly and in compliance with Its promises made  during Spring 2013 Plaintiff's visit to USC and in its  Policies and not deprive him unfairly, by taking unfair advantage of him, and failing to apply mandatory preponderance of evidence standard of proof to his SJACS' case  of his  earned credits and degree USC.   Plaintiff  has accepted all the promises made by  USC as the part of USC implied in fact offer/promise on its educational service package USC made in Spring of 2013.

The above stated FACTS  clearly define the following implied in fact contract  the Plaintiff has with USC.

In consideration for the Plaintiff's $211,000 paid to USC for his son's tuition and fees, USC had the following contractual obligations to the Plaintiff.   First, USC was required to allow Daniel to take classes at USC so he could earn the credits required for getting his diploma/degree, Secondly, USC was not allowed to treat Daniel unfairly and take unfair advantage of him by making unsupported accusations against him by his own instructor which could deprive him of earned USC credits and USC degree.  Thirdly, USC was not allowed to treat Daniel unfairly and take unfair advantage of him by using unsupported accusations against him in its SCAJS' proceedings against him and deprive him unfairly of the properly earned USC degree and USC credits.  Fourth, USC was required to follow its Disciplinary policy on preponderance of evidence, SCC sections 10.II.2 and 15.04 in its SJACS' proceedings against Daniel at both initial review and the Appeal stage and not deprive Daniel of his properly earned USC degree and USC credits by its failure to apply the required preponderance of evidence standard to his SJACS' case.

All USC considerations/obligations stated above clearly provided benefit to the Plaintiff as justified above and are very definite since USC breach of its obligations can be objectively determined by the facts stated below.  In addition all the promises made by USC created binding obligations on USC's conduct as stated above, which could affect the Plaintiff by causing him financial losses and emotional distress as specifically discussed above and below.

B.   Defendant's Conduct resulting in Breach of Implied Contract

USC has breached its second, third and fourth obligation as stated above.

a) USC treated Daniel unfairly and took unfair advantage of him by depriving him of earned Credits in PR 429 class and depriving him of getting his degree from USC and unfairly labelling him Dishonest with no supporting evidence.

1.   USC used 100% unsupported accusation by Prof. Tenderich against him in his SJACS' proceedings.

Daniel's instructor, Prof. Tenderich, in PR 429 in Fall 2016 Semester on October 27, 2016 submitted his complaint against Daniel to SJACS.  As

alleged supporting evidence he provided a memo, USC IT log, a hard copy of Midterm paper, and a forwarded email.  In addition on December 16, 2016, USC SJACS Judicial Officer Barton, provided a copy of metadata picture to Daniel, which he claimed corresponded to PR 429 Midterm, PDF file submitted to Tenderich by Daniel on 10/17/2016 11:49:15 PM. Tenderich stated in his memo, paragraph seven:  "In addition, the pdf document he submitted as his midterm has a date stamp of Monday, October 17, 11:52:15 AM and therefore seems to have been created six days after the date due."  The hard copy of PR 429 Miterm had no time/date stamp of October 17, 11:52:15 a.m.  Tenderich provided no hard copy of metadata correspomding to PR429 Mid term, PDF file .  SJACS claimed a copy of a picture sent to Daniel on December 16, 2016  is Tenderich's corresponding metadata and supports Tenderich's claim that PR 429 PDF file was originally created on October 17, 2016 and not on October 11, 2016. .  But  metadata provided by SJACS has the creation date of PDF file PR 429 Midterm of 10/17/2016 6:52:15 PM.  That is not the date Tenderich stated as the  alleged supporting evidence in his memo.

 Furthermore, Tenderich's memo and IT log  state that on 10/17/2016 at 11:56 AM Daniel submitted email to Tenderich,  and attached  exactly the same PDF PR 429 Mid term file, which he later submitted the same day, seven hours later at 11:49:15 p.m.  Since both files are identical, PR 429 Midterm.PDF, the metadata provided by SJACS on December 16, 2016 equally corresponds to the file Daniel submitted to Tenderich on December 17, 2016 at 11:52 a.m and the file he submitted  seven hours later at 11: 49:15 p.m. .  Thus, the alleged file creation date supplied by SJACS  could not represent the original file creation date since a non existing file could not have been sent seven hours before its creation.


 Therefore, SJACS  should had  never been  allowed to use  that picture, which provided  absolutely no evidence on original file creation date as the alleged supporting evidence of Tenderich's complaint against Daniel .  The alleged evidence supplied by SJACS to support Tenderich's accusations against Daniel, that PR 429 Miterm PDF file was  created on October 17, 2016  provides no evidence at all on the original PR 429 PDF  file creation.

It provides absolutely no evidence that original PR 429 PDF file was created on October, 17 2016 and not on October 11, 2016.

As stated on page 17 of Exhibit A, that was only possible since file creation in metadata could be changed:"  But as stated by my witness, verified by Adobe and proved by my Exhibits E and F, PDF Document Properties has nothing to do with the PDF Document time/date stamp and is subject to changes, editions, alterations, etc by a number of mechanisms.  Therefore, it does not and it can not represent the original document creation date in my case".

Thus, Tenderich made totally unsupported accusations against Daniel which is  100% unfair treatment and taking  unfair advantage of Daniel by USC in clear violation of its promises stated above.  Since the unsupported accusations made by Tenderich,  trigged a USC disciplinary process which could deprive Daniel of properly earned credits in PR 429, which was necessary for his graduation, it could not only deprive Daniel of properly earned credits required for his graduation from USC but also USC degree.   USC allowed Tenderich to make unsupported accusations since he was USC Professor and Daniel's instructor while Daniel was just a USC student.  That is a blatant violation of USC promises not to treat Daniel unfairly and not to take unfair advantage of him, and USC binding obligation which could affect the Plaintiff and in fact damaged the Plaintiff by causing him financial losses.


2.  SJACS treated Daniel Unfairly and  took unfair advantage of Daniel.

In December 2016 Prof. Tenderich assigned C grade to Daniel in PR 429 class.  On 4/19/2017 Barton sent Daniel his SJACS decision.  It states on page 3:  "Based upon preponderance of the information presented in this case, the Office of Student Judicial Affairs and Community Standards finds through Summary Administrative Review, that  the student is responsible for violating section of the Code as listed above."   Page one  lists the sections:  11.21 any act that gains or it is intended to gain an unfair academic advantage… 11.31A : Dishonesty… . It states on  page 2, that Daniel's duly earned grade C was changed by USC's  SJACS to F.

USC's  decision in fact deprived Daniel not only of duly earned credits but also of USC degree/diploma. In addition, page 2 stated that Daniel was required to write 4-5 page ethics essay.  Paragraph five, stated: Further, the properties of the PDF document submitted by Mr. Kowbel (referring to PDF file Daniel submitted on October 17th at 11:49: 15 p.m.)  show a date stamp of October 17, 2016, confirming that the document was created six days after the deadline for the assignment."   That statement is not supported by any evidence since as stated above file creation date in metadata Barton sent to Daniel on 12/16/2016   could not represent original PR 429 PDF file creation date.  Therefore, metadata provided by Barton provides absolutely no evidence when the original PR 429 PDF was in fact created.    Thus,  SJACS' Barton made his decision affirming unsupported Tenderich's accusation having absolutely no supporting evidence to affirm such unsupported accusations.

Thus, SJACS changed unfairly Daniel's properly  earned C grade to F depriving Daniel of earned USC credits required for graduation and USC degree.  In addition, Barton asked him to write ethics essay with ABSOLUTELY no supporting evidence.   That is unfair treatment and taking unfair  advantage of Daniel by USC since Barton was Judicial Officer of USC with all the powers vested in him by USC while Daniel was just a USC student.

That is a blatant violation of USC promises to treat Daniel fairly and not take unfair advantage  of him,  and its binding obligations, as stated above which could affect the Plaintiff  and in fact did  damage the Plaintiff by causing him financial losses.


3. Daniel's APPEAL.

Daniel was absolutely APPALED by the unfair treatment he received from USC.   On December 7th, after interview with Barton, Daniel filed a complaint against Barton with SJACS asking for a FAIR Judicial Officer. But SJACS did not even bother to acknowledge his request and allowed BARTON to render baseless and not supported by any evidence decision. On May 3, 2017 Daniel filed his Appeal, Exhibit A.  On page 1 it states: "The review process was fundamentally flawed, Biased, Unfair."

4. USC Appeal Panel's Decision is totally unfair and took unfair advantage of Daniel.

USC Appeal Panel's Decision, Daniel received from Malhotra, senior adviser to Carry on July 29th, 2017. The Appeal Panel, page 1 convened on July 17, 2017 to consider Daniel's Appeal discussed above. The Appeal Panel, page 3 stated: "The SBAP affirms the conclusions and sanctions made by SJACS in case 20160245." The Appeal Panel's decision provided absolutely no evidence to support otherwise totally unsupported accusations made by Tenderich, and affirmed by Barton with no supporting evidence as explicitly stated above. The Appeal Panel upheld Barton's decision which had absolutely no supporting evidence as stated explicitly above. In fact: it changed Daniel's duly earned grade from C to F depriving him of properly earned credits and USC degree. In addition, it was affirming Barton's decision forcing Daniel to write a five page essay on ethics. That was the ultimate USC unfairness to use unsupported accusations against Daniel by Tenderich, and totally reject 33 page factual Appeal Daniel submitted on May 3, 2017 and deprived him of duly earned USC credits and a USC degree. If Daniel had the earned credits for PR 429 he could graduate from USC.

In addition, the Appeal Panel's Decision totally ignored the evidence provided in Daniel's Appeal that the whole SJACS' interview process was fundamentally unfair, section I of the Appeal " Mr. Barton conducted unfair and biased interview", pages 6 to 7. Specifically page 7 states: " My father called SJACS asking how Justice can be served at SJACS. He was told I have the right to replace Mr. Barton with another impartial Judicial Officer but I have to make it in writing. I made very specific request in my complaint sent to SJACS on Dec. 7th asking SJACS to replace Mr. Barton, who has proven during the interview as totally unfair and biased....Mr. Barton has shown in his Summary exactly the same pattern as identified in my complaint, 100% biased and unfair review. Only 100% wrong decision could result based upon his conduct in blatant violation of USC policy on fairness". Page 9 states: "When I asked within my full rights as a USC student to present me with any evidence during the interview, Mr. Barton stated: You need no evidence just to say the truth. That is a highly UNFAIR treatment to simply imply you are a LIAR and no evidence is

needed".     Page 29 of Daniel's Appeal stated: " Under no circumstances PDF Document properties file creation date can provide evidence that the original file was not created on October 11th in my case based upon the undisputed record.  On the hand, the PDF Document time stamp/date stamp could had never be changed and it would indeed provide evidence if the original file was or was not created on October 11th.   Therefore the totality of evidence 100% dis proves Prof. Tenderich's second claim and the preponderance of evidence is 100% in my favor on the second claim since there is no evidence on the second claim  provided  by Mr.  Barton and Prof. Tenderich".   Section III A " Mr. Barton grossly committed gross negligence  amounting  to reckless conduct in his total failure to follow due diligence as the mandatory requirement of fair and impartial interview", pages 14 to 19 provided additional evidence on unfairness.   Page 19 states: " That was absolutely flawed process, which was solely used by Mr. Barton to exonerate himself and Prof. Tenderich against charges filed by my Father with USC Provost Office.  The only way Judicial Officer Barton could had exonerated himself and Prof. Tenderich is to act in reckless disregard of the truth.  That is exactly what happened in this review process.  USC, implied in fact, fairness standard prohibits Mr. Barton simply to say IT IS IMMATERIAL only because he did not want to understand it so INJUSTICE can be served in my case in order to help himself and Prof. Tenderich in my Witness complaints against them.  That is 100% Unfair, Biased and Flawed review process".

Since USC Appeal Panel decision was final within USC, it in fact finally deprived Daniel of his earned USC credits required for his graduation from USC and USC degree.

That was  ultimately unfair treatment of Daniel and taking unfair advantage of him by USC Appeal Panel, with all the Powers USC President vested in them per USC regulations while Daniel was just a USC students with absolutely no powers at USC to  seek a FAIR treatment at USC.

That is blatant violation of USC's promises not to treat Daniel unfairly and not to take unfair advantage of him, which was binding obligation on USC as stated above which could  affect the Plaintiff  as stated above and in fact did damage the Plaintiff by causing him financial losses associated with paying $455,000 for Daniel's education at USC.

b) USC has utterly failed to follow its strict,  mandatory publicly stated policy on preponderance of evidence, SCC 10.II.1 and 15.04 in Daniel's  SJACS case.

1. USC per its publicly stated policies was required to follow its preponderance of evidence standard in reaching its initial decision SCC 10.II.1 ,  and its Appeal Panel's Decision SCC  15.04.

USC Student Conduct Code  policy defined that standard as: "Preponderance of evidence means that based upon totality of evidence and reasonable inferences drawn therefrom, it is more likely than not that the Respondent committed the prohibited conduct charged."

2. In its initial SJACS' decision, Barton was required to use preponderance of evidence  standard to reach his decision.

Daniel's Appeal, Exhibit A, section III A, pages 14 to 19 and section VII, " Mr. Barton violated USC Student Conduct Code Section 10.II.2 Standard of Proof".   Pages 26 to 30 provide direct evidence that Barton has utterly failed to apply this standard.   As stated above, Barton on page 3 of his decision claimed to uphold preponderance of evidence USC standard. Page 29 of Daniel's Appeal states:  " As 100% proved in section IIIa, Exhibit C file creation date of October 17, 6:52:15 p.m. can not represent the original file creation date.  As  the matter of undisputed facts, there is absolutely no evidence on the record to support Prof. Tenderich's conclusion that my PR 429 Mid Term  PDF was not created on October 11th ".   Using  absolutely no evidence to support Barton's decision directly violated USC preponderance of evidence standard as stated above. Barton's decision to change Daniel's C grade to F deprived him of required credits for his graduation and USC degree.  Therefore, USC explicitly violated its promise, which was binding obligation  as stated above which could affect the Plaintiff as stated above and in fact it  did  damage the Plaintiff by causing him financial losses.

3.   In its Appeal Decision,  USC was required to use the same preponderance of evidence  standard which Barton was required to use in his initial decision, SCC section 15.04.

USC Appeal Panel's  decision, totally ignored all the undisputed evidence presented in Daniel's  Appeal, Exhibit A..  It makes absolutely no mention of any direct evidence, sections III and VII of the Appeal,  100% proving that Barton failed to apply that standard in reaching his 100% unsupported decision.  Pages  26  and 27 of Daniel's Appeal stated:" As a matter of undisputed fact, Mr. Barton in his Summary omits the critical second claim Prof.  Tenderich made against, PDF Document dare stamp of 11:52:15 a.m, and the full date in Exhibit C, October 17 6:52:15 p.m.  In terms of any evidence he only states my USC IT email as any evidence supporting my case.  He utterly disregards my Witness two affidavits and all other material evidence stated above properly submitted to SJACS.  Prof. Tenderich's complaint against me has two basic claims: sent email allegedly proving I did not submit  my original mid term report to Prof. Tenderich on October 11th, alleged date stamp again allegedly proving I did not submit my Mid term report to Prof. Tenderich on October 11th.

On the first claim Prof. Tenderich provides just one evidence, USC IT log. It is missing the October 11th entry of my original submission. Just the mere fact that IT log does not contain the October 11th entry, is used as the evidence to prove that the email in question was never sent.  As discussed above I provided the following evidence to 100% dis prove Prof. Tenderich's first claim.

My Witness Affidavit I presented undisputed evidence which clearly established the following facts:  the email system is not 100% reliable, it can be affected by a plethora of internal and external factors resulting in the actual sent email not reaching the intended recipient.   The above presented summary of undisputed evidence presented by my Witness  and I clearly established preponderance of evidence in my favor on Claim I".

Page 29 of Daniel's Appeal stated: " As 100% proved in Section IIIA: if the original file was in fact created on Monday October 17 6:52:15 p.m. per Exhibit C, IT COULD HAD NOT been sent to him on Monday October 17th at 11"56;15 a.m.  That fact is 100% supported by the factual and documentary evidence…  Under no circumstances PDF Document

properties file creation date can provide evidence that the original file was not created on October 11th in my case based upon the undisputed record. On the hand, the PDF Document time stamp/date stamp could had never be changed and it would indeed provide evidence if the original file was or was not created on October 11th. Therefore, the totality of evidence 100% dis proves Prof. Tenderich's second claim and the preponderance of evidence is 100% in my favor on the second claim since there is no evidence on the second claim provided by Mr. Barton and Prof. Tenderich".

Therefore, USC Appeal Panel has utterly failed to apply the required USC standard by not taking into considerations and rejecting all the evidence on the record proving that Tenderich's accusations have absolutely no factual support as stated above.

Since USC Appeal Panel's Decision was final within USC it deprived Daniel of earned credits required for his graduation and USC degree. That is a USC's blatant violation of its preponderance of evidence standard and its binding obligation as explicitly stated above which could affect the Plaintiff and in fact did greatly damage the Plaintiff who suffered $455,000 financial loss since USC deprived Daniel of his USC degree.

    c) USC's unfairness, taking unfair advantage of Daniel and failure to follow its policy on Student Conduct Code in a fair manner affected the Plaintiff in a highly negative way and damaged him.

The unimaginable unfairness in blatant violation of USC Code of Ethics promise " we do not take unfair advantage of anyone" and very specific promise made by USC in Spring 2013 to the Plaintiff, never treat Daniel unfairly, by depriving Daniel of USC credits and USC degree/diploma and asking him to write 5 page essay with absolutely no supporting evidence brought Daniel to a clearly critical suicide stage. USC's despicable unfairness and violation of USC specific Student Conduct policies in its treatment of Daniel, in total violation of USC promises, has caused the Plaintiff the loss of $455,000 paid for his education at USC and huge continuing emotional distress as directly related to USC bringing Daniel to a critical suicide stage. Even, if the Plaintiff paid unjustly USC one more time for PR 429, Daniel's mental state directly created by USC breach of

implied in fact binding obligations would had never allowed him to take this class   again   and write the 5 page essay on ethics  in light of despicable and unimaginable UNFAIRNESS USC inflicted on him without huge risk of triggering committing suicide.   Therefore, USC's conduct as described above resulted in the net loss of $455,000 to the Plaintiff.  USC degree was the reason Plaintiff has paid $455,000  for his son's educational expenses at USC, but USC failure to comply with its obligations as stated above in fact deprived Daniel of his USC degree/diploma and directly caused the Plaintiff a loss of $455,000.

.

C.  Plaintiff's performance under implied contract

 Plaintiff has 100% performed under implied contract by the following facts: Plaintiff has paid USC $211, 000 for his son tuition and fees.

i)        in total the Plaintiff has paid $455,000 for all his son educational expenses at USC following USC offer made to the Plaintiff by sending his son to USC.

D. Causation between USC breach of implied  contract and Damages to the Plaintiff.

USC  breach of three  implied in fact  contractual obligations to the Plaintiff is a direct result of damages suffered by the Plaintiff.

USC breach of implied in fact contract  is highly material.  Plaintiff did not get at ALL  what was promised by USC to him in the above stated three implied in fact promises  on which the Plaintiff  had predicated sending his to USC, paying USC for his tuition and fees and, paying for all other educational expenses at USC.

E. Damages

 Plaintiff  has  suffered  monetary damages totaling $455,000 since USC deprived Daniel of his degree  which was the sole reason, Plaintiff has paid all the educational expenses for Daniel.   Also implied contract breach by USC resulted in  great emotional distress of Plaintiff,  causing near

irreparable injury on a number of occasions , which continues up to date, inflicted on him by  USC Breach of implied  contract which directly brought Daniel to  a suicide stage in the totally unfair manner.

**EXHIBIT A**

**Daniel's Appeal filed with USC on May 3, 2017**

APPEAL of the Initial Review Decision.

**A. Opening statement.**

This Appeal is pursuant to Section 15 of University Student Conduct Code.

The ground for the appeal is in section 15.02 III.  The review officer has failed to follow university rules and regulation while reviewing the cited behavior. The net result:  THE REVIEW PROCESS WAS FUNDAMENTALLY FLAWED, BIASED, UNFAIR; FRAUD.

Mr. Barton's Summary Administrative Review (Summary) IS UNDISPUTED FRAUD under US LAWS which USC MUST follow and  it blatantly violates USC own Code of ETHICS. In order to prove the case against me, in Favor Of Prof. Tenderich's complaint, Mr. Barton first  grossly falsified  the actual complaint.  He intentionally OMITS Prof.  Tenderich's second claim against me. That act was made with undisputed intent to deceive,  FRAUD UNDER US Law.  Then Mr. Barton falsified the self-produced, not part of the review process, PDF Document Properties by intentionally omitting the  full date in the PDF Document Properties, which is absolutely critical to proving the case in my favor.  As the matter of undisputed facts, USC policy on Fairness required SJACS Judicial Officer Barton to present all the facts in his Summary.  Thus Mr. Barton, on his own admission disqualified himself from having any standing in this case, and ADMITTED that the review process is undisputed FRAUD since he committed undisputed FRAUD.

The appeal provides factual evidence 100% proving the reviewing officer GROSS failures. It is NOT  JUST THE CASE of a mistake BUT IT is a CASE OF AN UNPRECEDENTED BIAS And UNFAIRNESS AGAINST ME in a BLATANT  VIOLATION OF THE FUNDAMENTAL PRINCIPLES OF JUSTICE AND FAIRNESS AT USC.

 The evidence used  by me in my the APPEAL is based upon  the factual and documentary evidence on the record.

As the matter of undisputed fact, I have submitted a large body

of evidence both factual and documentary directly to SJACS after
December 7th interview including two Witness Affidavits.   I have
never received any communication from SJACS to even merely
confirm the receiving of my evidence which clearly is a
violation of USC POLICY ON FAIRNESS.
   My Witness was never contacted by SJACS for the interview
which is implied in fact standard at SJACS.  Again it is a
blatant violation of USC POLICY on FAIRNESS.


   Mr. Barton not only disregarded all my Witness factual evidence
but refers to my Witness factual evidence as a "Perspective"
which is  not only deeming to my WITNESS  AND FAIRNESS at USC
BUT also 100% Unfair and BIASED.  The fact that my  Witness is
my Father, Dr. Witold Kowbel who has discovered all the
wrongdoings of Mr. Barton in violation of USC rules and policies
in his handling of my case including blatant violation of USC
Code of Ethics, submitted the evidence to the USC Provost
Office, who passed it on Mr.Barton should have had absolutely no
IMPACT on TREATING my Witness  without    Fairness and
Impartiality, but with infinite BIAS AS 100% proved by calling
his FACTUAL EVIDENCE, directly related to my case "PERSPECTIVE".
It is clearly  a  CONTEMPT and PREJUDICE for my WITNESS derived
from the fact, that my witness named Judicial Officer Barton, a
Perpetrator in numerous charges against Mr. Barton and named me
as the witness against Mr. Barton in the letter he submitted to
SJACS which I followed up on.  Under no circumstances these
undisputed FACTS should had any negative IMPACT on this CASE
per USC POLICY on FAIR and Justice.  But they did, because Mr.
Barton's conduct showed his unprecedented BIAS against me and my
Witness in violation of USC Policy on Impartiality of the review
process.


   Subsequently, Mr. Barton also disregarded all my Material
evidence  both FACTUAL and Documentary as totally IRRELEVANT to
the case in his Summary Which is 100% consistent with the  BIAS
and UNFAIRNESS he demonstrated during the interview.


He does not provide one single explanation why ALL the massive
body of  UNDISPUTED factual and documentary evidence supplied by
my witness and I is immaterial to this case (no natural tendency
to affect the outcome of the case as defined by US SUPREME
COURT).  That is a BLATANT violation of due process at USC which
makes FAIRNESS and IMPARTIALITY of the review the cornerstone of
USC overall policy on FAIRNESS AND JUSTICE for ALL its STUDENTS.
.

In addition Mr. Barton  showed on Dec. 7th unprecedented BIAS and Unfairness against me  as well as violation of USC CODE OF ETHICs by harming me by his outrageous conduct which I reported in my email to SJACS on Dec. 7th.

Since SJACS has never corresponded with me after Dec.16th, it was a big concern to me.  At the same time USC PROVOST was in active communication with my FATHER and stated to him that his correspondence is forwarded to  SJACS.  Therefore, my FATHER sent to USC PRVOST OFFICE the summary of all my evidence submitted by me by SJACS, which per USC PROVOST statement was forwarded to SJACS.

Subsequently my FATHER asked USC PROVOST OFFICE, if any additional information is needed.  The answer was,  none.

AS the matter of FACT my Father submitted undisputed evidence to USC PROVOST OFFICE in support of numerous charges against Prof. Tenderich and Judicial Officer Barton to support his complaints against both of them, including but not limited to the following charges:

  i)    Prof. Tenderich committed prohibited Act of Dishonesty in his complaint.

  ii)   Prof. Tenderich  violated USC code  of Ethics by committing prohibited act of making deliberate misrepresentation in his complaint.

  iii)  Judicial Officer Barton committed prohibited ACT of dishonesty in his review.

  iv)   Judicial Officer Barton violated USC Code of Ethics by committing deliberate misrepresentation in his review.

My father initial complaints were originally filed  with USC VICE Provost, Dr. Grady and USC VP for Student Affairs, Dr. Carrey.  In January USC PROVOST OFFICE officially informed my father that they take the sole JURISDICTION over all his complaints.  Subsequently USC PROVOST OFFICE, informed my father all his correspondence is being  forwarded  to SJACS.

Thus, as the matter of undisputed facts, my FATHER complaints and his direct correspondence with USC Provost Office became a part of this review process.

THUS, M. Barton had the actual knowledge that he is named a PERPETRATOR in my father complaints but he has  refused to excuse himself from being a reviewing officer, which was the

only one for  USC to prevent the fundamental conflict of
interest.

THAT FACT by ITSELF rendered the review process fundamentally
flawed, BIASED and UNFAIR.  No justice in this case could have
ever been served when Mr. Barton, named as a perpetrator, was
allowed to review the case and make the DECISION on behalf of
SJACS in this case.

His so -called preponderance  of evidence statement is made in
clear violation of USC regulations by 100% rejecting the
Totality of evidence and using False Statement,  Deliberate
Misrepresentations  and a FRAUDULENT Conduct to draw his
conclusions and inferences.   Since SJACS has never confirmed
receiving my evidence, in order for JUSTICE to be served  my
father sent to USC PROVOST Office a list of all the evidence
submitted by my me to SJACAS.  Per USC PROVOST OFFICE earlier
statement they were forwarding all his correspondence to SJACS.
In order to further assure JUSTICE is served in this case,  my
father asked USC Provost Office, if any other information is
needed.  My father got an email from USC PROVOST OFFICE stating
no other information is NEEDED.

Thus as the matter of undisputed facts:

   i)    **SJACS  received all my evidence**

   ii)   **SJACS understood all the evidence and in the name of JUSTICE needed no
         clarifications.**


   Since I am invoking Section 15.2.III and  Mr. Barton/SJACS is
allowed to respond to my APPEAL, all evidence both FACTUAL and
Documentary  which is NEEDED to PROVE my APPEAL  is on SJACS
case file.

   The only part of my APPEAL which could be contested BY Mr.
Barton  AS THE MATTER OF FACT IS MY ACCOUNT of the interview.
But as the matter of the fact I had submitted my complaint to
SJACS on Dec. 7th to provide objective evidence of the UNFAIRNESS
and harming conduct of Mr. Barton.  Therefore regardless what
response Mr. Barton will provide to defend his UNFAIR Conduct
the record SPEAKS FOR ITSELF. There is  absolutely no evidence
(false and fraudulent statements are NOT EVIDENCE) on the record
to prove charges made by Prof. Tenderich in his complaint
against me.  Mr. Barton's UNFAIRNESS  is the best exemplified by

using a deliberate misrepresentation to falsify the actual
complaint ( intentionally omitting key evidence is
Falsification with intent to deceive, FRAUD) in order to
FRAUDULENTLY PROVE IT. That summarizes this review process the
best.

ALSO under USC RULES Prof. Tenderich is allowed to reply to my
Appeal.

If Prof. Tenderich  confirms that Mr. Barton's  PDF Document
Properties Exhibit C creation date is what he falsely referenced
as  a "date stamp"  in his complaint.  HE WILL ADMIT that HE
COMMITTED a FRAUD UNDER  US law by intentionally LYING in his
complaint.  THE FRAUD under US law is a  USC PROHIBITED  Conduct
of a DELIBERATE misrepresentation.

Judicial Officer had  absolutely no standing under USC Fairness
policy to be ever allowed to review this case and make the
decision in this case.

 SINCE SJACS HAD  NEVER REPLIED to my complaint to contest my
charges of UNFAIRNESS and HARM,  it is IMPLIED IN FACT THEY 100%
agreed with my charges stated in the complaint. Therefore  SJACS
admitted  that Mr. BARTON's conduct during the interview
violated ALL USC policy on JUSTICE.

The reviewing officer, Mr. Barton has violated not only
University Student Conduct Code Rules but also USC Policy on
Dishonesty and Code of Ethics.

USC Officially states that CODE OF ETHICS is the GUIDING
principle of ITS operation.

Blatant violation OF USC CODE OF ETHICS was committed by
Judicial OFFICER BARTON in at least three instances identified
below and fully proven in the APPEAL.

Using deliberate misrepresentations to Fraudulently prove the
 complaint against me by the following acts:

   i)      Use a deliberate misrepresentation to fraudulently prove the complaint

5

ii)     Use a fraudulent misrepresentation to hide the truth  that Prof. Tenderich blatantly violated USC CODE of ETHICS in his complaint

iii)    violated USC Code of ETHICS in his email sent to me on December 16th

Therefore, Mr. Barton's conduct is not only 100%  Unfair to me in the review but he is using a PROHIBITED CONDUCT in blatant violation of USC Code of Ethics during his review of the case.

MY EMAIL SUBMITTED TO SJACS on February 1st provided undisputed evidence on the following:

i)      Prof. Tenderich  intentionally fabricated a MATERIAL LIE on the date stamp to fraudulently prove his complaint against me.

ii)     Mr . Barton  statement in his email sent to me on Dec. 16th is patently false statement , in fact  a deliberate misrepresentation.

Like ALL other evidence (but USC IT Email) which I provided, and all the factual evidence provided by my Material Witness, my email submitted to SJACS on February 1st,  was 100% dismissed by Mr. Barton.
Unlike, Mr. Barton's summary,  I am providing factual and documentary evidence to prove  that the review of my CASE was 100% flawed, biased and unfair.   Unlike Mr. Barton's review of the case and his summary I do  not make any  false statements or commit any misrepresentations or  USE  FRAUDULENT CONDUCT to prove my APPEAL.

Below I am providing the specific USC rules and Policies which were GROSSLY violated by  Mr. Barton with the supporting factual and documentary evidence.  My APPEAL 100% proves that a fundamentally wrong decision based upon the evidence on the record, and any inferences which can be drawn from the evidence was reached.

B.  Factual and documentary evidence on the record supporting Mr. Barton's violations.

I.      Mr. Barton  Violated  of section  10.30 IV of University Student Conduct

Section 10.30. IV states: fair and impartial review of the incident.

A.  Mr. Barton conducted  unfair and biased interview on December 7th

6

The first violation  of this section occurred During the
interview with Mr.  Barton on December 7th.

On December 7th after the interview I filed an official
Complaint, and stated: the meeting was one sided attack on me
with the total disregard of the due fairness process and I was
very  sick after the meeting, implied in FACT Mr. BARTON's
conduct greatly harmed me. Since  Mr. Barton in his email to me
on Dec. 16th, refers to my request on the TIME Stamp, as the
matter of fact he acknowledged reading my complaint.

B. Mr. Barton refused to exclude himself from my case which was the only way  to
assure  compliance with section 10.30 IV.  HE ALSO VIOLATED USC OF ETHICS by
intentionally harming me during the interview.

After the disastrous interview on Dec. 7th as stated in my
complaint I was very sick. Since USC CODE OF ETHICS STATES: we
do not harm" I called my FATHER to express my OUTRAGE of total
INJUSTICE INFLICTED on me by Mr.  BARTON in the violation of USC
CODE OF ETHICS.  MY FATHER called SJACS asking how JUSTICE BE
SERVED AT SJACS.  HE WAS TOLD I HAVE THE RIGHT TO REPLACE  Mr.
BARTON with another IMPARTIAL JUDICIAL OFFICER but I HAVE TO
MAKE IT IN WRITING.

 Following the conversation with my FATHER, I made very specific
request in my complaint sent to SJCS on December 7th asking
SJACS to replace  Mr.Barton who has proven during the interview
as totally unfair and biased.

But Mr. Barton has refused  to exclude himself from the process
to permit USC FAIRNESS and JUSTICE to be served.  Obviously he
has violated SJACS RULES passed on my FATHER and VIOLATED MY
RIGHTS as the USC student to HAVE FAIR AND IMPARTIAL REVIEW.

 My complaint was sent to SJACS not to Mr. Barton and neither
SJASA or Mr. Barton never even acknowledge the mere receipt of
my email not to mention any response required under USC Fairness
policy.

Mr. Barton has shown in the Summary EXACTLY the same pattern as
identified in my complaint to SJACS on December 7th, 100% BIASED
and UNFAIR review.  Only 100% wrong decision could result based
upn his conduct in blatant violation of USC policy on fairness.

II. Violation section 10.30 VII of University Student Code

7

This section states: the opportunity to be present at the interview, to inspect all the evidence presented and to present witnesses.

### A.  Mr. Barton failed to provide me with all the evidence prior to the interview .

On November 14th, I sent an email to SJACS demanding SJACS to comply with USC Policy on Fairness and to provide me with ALL the evidence submitted by Prof. Tenderich and the actual complaint.  My interview with SJACS was on December 7th.

 Mr. Barton sent me on December 6th all the evidence  on the SJACS record.  There was absolutely no evidence provided by Prof Tenderich on his time stamp/date stamp  claim.  It was 100% unsupported allegation.  The fact that Mr. Barton submitted the complaint and the evidence just few hours before the interview 100% prevented me from properly reviewing it and getting READY for the interview.

It is highly unfair not  to allow me to be properly prepared for the interview.

### B.  Mr. Barton failed  to provide me with all the evidence at the interview per my specific request.

Mr. Barton provided no evidence during the interview to allow me to ask him any clarifying questions so I can fully understand the accusations against me with the evidence supporting it.  He merely read the complaint several times and asked me several questions  about the TIME STAMP.  HE had never mentioned PDF DOCUMENT PROPERTIES UNTIL the email he sent me on December 16th.

Again, not providing any evidence during interview so I could inspect it is highly UNFAIR.

### C.  Mr Barton up front  refused during the interview to provide with any evidence on the time stamp.

 As I stated in my complaint SJACS JUDICIAL OFFICER Barton REFUSED to FOLLW strict USC guidelines on  Fairness and simply REFUSED to provide any evidence on the time stamp during the interview.  Since he asked me so many questions on the  TIME STAMP I specifically asked for any evidence during the interview so I can address this issue properly but my efforts were in vain.  No evidence was ever shown to me on  the TIME STAMP during the interview. Not a single question during the interview

8

was on PDF DOCUMENT PROPERTIES.

After the interview, I concluded that simply SJACS has absolutely no evidence on the time stamp based upon the following facts:

If such evidence indeed existed Barton would provide it with ALL the evidence he provided to me on December 6th

If SJACS had any evidence on the time stamp  Barton would be able to provide it to me at the interview .

Again USC rules on Fairness were not followed.

### D.  Mr. Barton Stated  during the interview  that I need no evidence.

When I asked within my FULL RIGHTS as a USC student to present me with any evidence, during the interview (I simply had absolutely no time to properly review the complaint and the evidence since I received it just shortly before the interview) Mr. Barton stated:  You need no evidence just to SAY THE TRUTH.

That implied in fact statement: You are a LIAR was a big triggering factor in the anxiety attack I had during interview as stated in my complaint.

That is a highly UNFAIR treatment to simply IMPPLY you are a LIAR and no evidence is needed.

### E.  Mr. Barton mentioned no  evidence  on the PDF Document Properties.

During the interview Mr. Barton asked me questions on when I inserted the TIME STAMP to my PDF document.

Since I have never inserted any TIME STAMP to my MidTerm paper, I naturally demanded during the interview  any evidence that in fact my PDF Mid Term has any TIME stamp.  I got no evidence on the time stamp, As the matter of FACT,  Mr. Barton  also has never showed me any PDF Properties Metadata with a creation date at the interview or mentioned its  mere existence or its relevance to the case.

The only valid conclusion he had no PDF Mid Term Properties on

actual SJACS file during  December 7 th interview.

Again,  Mr.Barton violated USC policy on Fairness to present me
with any evidence on file regarding the PDF Document Properties.

### F.   Mr. Barton intentionally withholding the evidence any evidence the time stamp until USC VP for Student Affairs informed SJACS, cc to me, on December 15th about my Father, Dr. Witold  Kowbel complaint filed with USC  Vice Provost, Dr. Graddy on December 10t and acting in RECKLESS DISREGARD of the  TRUTH

   It is undisputed FACt that SJACS had not presented me with any
evidence on the time stamp during the interview or before it.
Therefore after the interview,  the complaint's claim on the
time stamp/date stamp was a 100% unsupported allegation. In my
complaint submitted to SJACS on December 7th, I demanded from
SJACS to provide evidence on the time stamp referred to in the
interview, also referred by Prof. Tenderich in his complaint as
date stamp.  It was agreed during the interview  that I would
submit all the evidence to SJACS on December 16th.  On December
10 th, my father, Dr. Kowbel using all the SJACS validated
evidence on the record sent a complaint against Prof Tenderich
to a USC OFFICIAL, Dr. Graddy, A USC
VICE PROVOST for Academic and Faculty Affairs against  Prof.
Tenderich for committing undisputed  FRAUD within the meaning of
US governing laws based upon SJACS validated evidence, which
would be  the only COURT admissible evidence.  My Father clearly
stated that it could had been be a criminal FRAUD committed by
Prof. Tenderich. I attached this complaint as the evidence in my
email to SJACS on December 22 nd.


On December 15th, USC VP for Student Affairs, Dr. Carrey cc me on
the email sent to SJACS HEAD, Ms. Budar-Turner informing her
about my Father's complaint.

One day after my father's complaint, Mr. Barton sent me an email
with his alleged PROOF of the time stamp.

It was a computer screen picture with absolutely no SJACS stamp
validating it as a part of SJACS record, Exhibit C.

The picture had a description "PDF Document Properties".
Clearly it did not say :  PDF Document time stamp as I
specifically requested in My complaint, dated Dec 7th ( inserting
the time stamp  into my Mid Term was the key issue Mr. Barton

asked me in the interview.)  Mr. Barton did not provide any
explanation how his picture provides the evidence on the time
stamp since there was no time stamp inserted into any pages of
the document as clearly stated in my father complaint, dated
Dec. 10th, which was forwarded to SJACS by USC VP of Student
AFFAIRS, Dr. Carrey on Dec.15th and became part of SJCS case
record.  In light of that complaint he was obligated to explain
how that picture was ever inserted into the document and why his
EMAIL, Dec. 6th with ALL evidence against me did not include that
picture.  Also he did not explain, why his picture is not SJACS
validated, received October 27th  SJACs date stamp, and what USC
authority he had to take a picture himself outside SJACS
evidence and CALL it ALLEGED EVIDENCE.

Mr. Barton acted with total Reckless Disregard of the Truth.

As a  JUDICIAL OFFICER , he was required by USC overall policy
of FAIRNESS and specifically section 10.30 IV stated above to
show DUE DILIGENCE and determine the following:

   i)    Is PDF Document TIME STAMP/date stamp  meaning the same as PDF Document
         Properties

   ii)   If not,  what are the differences

   iii)  How these  differences can affect the outcome of the case

As proved in the following sections,  Mr. BARTON 100% ACTED in
RECKLESS DISREGARD of the truth, and a MADE Patently FALSE,
HIGHLY MATERIAL FALSE statement, VIOLATING USC policy on
DISHONESTY.

In addition Mr. Barton was not allowed to intentionally withhold
from me any information furnished by Prof. Tenderich with his
complaint, if indeed Prof. Tenderich had submitted such a
picture with his complaint on October 27th.

Withholding any material supplied by Prof. Tenderich  would
amount to concealing of evidence which clearly is a violation of
FAIR and Impartial review.

ALSO,  Mr. BARTON FAILED to understand the fact that his
introduction of inadmissible evidence as not validated BY SJACS
in the case of FRAUD is an attempt to interfere with Justice.
Using a picture to potentially fraudulently prove a case against
me, with no validation, which could easily be falsified is a
serious  issue for Mr. Barton. HOW can this review EVER be fair

11

and just if the reviewing OFFICER can do anything he wants, feeling he has unlimited powers over USC students because HE IS a SJACS JUDICIAL OFFICER.  THAT IS TOTAL UNFAIRNESS TO ME and represents 100% flawed review process. In addition it is a clear violation of USC CODE of ETHICS by taking UNFAIR ADVANTAGE of me as a USC STUDENT and the power he had over me as SJACS JUDICIAL OFFICER.


Under this review, Mr. Barton had unlimited and unchecked POWERS to take a picture at his own discretion, with the total disregard of implied in fact SJCACS admissibility standards and then call it EVIDENCE against me. THAT IS NOT JUST AND FAIR CONDUCT, which  Mr. BARTON was required to  UPHOLD.

SJACS clearly has  IMPLED in FACT admissibility standards which MUST be incumbent on Mr. Barton for the review process to be fair and impartial.  These standards were followed in his email on Dec. 6th.
For the purpose of this APPEAL I  am using  implied in fact standards  for SJACS EVIDENCE to be admissible; it MUST have the SJACS RECEIVED date stamp and must be kept in the case binder. ALL evidence (factual and documentary) sent to me by Barton on Dec. 6th meets this implied in fact admissibility standard, but the  picture he sent me on Dec. 16th failed to meet implied in fact admissibility standard.  He never stated in his Summary, he is using a picture, with no validation in place of documentary evidence supplied by Prof. Tenderich with Proper SJACS validation.


G.  Mr.Barton failed to mention in summary that In fact have a WITNESS who submitted two AFFIDAVIT

Per section 10.30 IV stated above I have the right to a WITNESS. But in his Summary Mr. Barton failed to mention my right and the fact  that I submitted two witness affidavits two SJACS.  He violated my rights as a USC Student to conceal the truth in order to FALSELY prove the complaint.


H.  Mr. Barton failed to comply with  SJACS implied in fact policy on witnesses by  never treating my MATERIAL Witness per  USC policies on witnesses  and denying him SJACS interview .

My  Witness sent  three emails to SJACS clarifying his Witness

status and rights as the Witness.  My Witness clearly stated
that SJACS policy on Witnesses is to arrange for an interview.
My Witness prior to writing his AFFIDAVITS  contacted directly
SJACAS OFFICE.  They stated to him,  ALL SJACS Witnesses are
always interviewed by SJACS.  My Witness  stated that SJACS has
never contacted him and he had informed USC Provost Office about
that fact since his complaints against Mr. Barton and Prof.
Tenderich at the time were handled directly by USC Provost
OOFICE.

My Witness  also sent to SJACS an email, clarifying he is a
Material Witness not AN EXPERT WITNESS.  He emphasized the
absolute criticality of HIS ACTUAL KNOWLEDGE in this case and
offered to have an interview with SJACS so JUSTICE CAN BE
SERVED.


THREE is a fundamental difference between Expert Witness and
Materia Witness.

An EXPERT WITNESS expresses his opinion, and  Mr. Barton could
take an exception to an OPINION, but to refer to a bona fida
Material Witness FACTUAL AFFIDAVITS as "persepective" in
principle disqualifies Mr. Barton to have any standing in this
case.  THERE is no room at USC to tolerate such BIAS and turned
SJACS initial review into a Totally FLAWED PROCESS  as it
happened in my case.  Furthermore, Judicial Officer BARTON
violated SJACS  rules by intentionally not allowing my Witness
to provide any additional information.  My Witness had a
significant Experience under USC FEDERAL District Courts as both
MATERIAL and EXPERT Witness.  His affidavits contained no
clarifications just mere FACTS.

Depriving my Witness of his right to  provide any clarification
on his Factual Evidence again proves  the total Unfairness  of
the review and again greatly undermined impartiality of this
review.

 It is undisputed fact, that Mr. Barton was 100% motivated  by
his  self -interest not interview my witness.

Since my witness named  Mr. Barton  as a Perpetrator in his
complaints, there was a FUNDAMENTAL conflict of interests
barring impartiality of this review.  Any  additional
information attained  during my Witness interview, which could
help my case,  would be additional evidence against Mr. Barton.

Impartiality of this process could had never been achieved when
Mr. Barton did not exclude himself from the review  of this case
and made the decision while being named a perpetrator.
Specifically, My Witness affidavit addresses two fundamental
problems for Mr. Barton.

i)   My Witness direct contact with Adobe confirmed the FACT a digital picture can be
     FALSIFIED.   For Mr. Baton to be allowed to attach it as evidence by itself
     undermined  this review process.

ii)  My witness in direct contact with Adobe confirmed that Mr. Barton made a patently
     false statement on PDF Document Properties /METADATA.  Again, the review
     undermined Justice, by allowing in FACT OBSTRUCTION of justice  to PREVENT
     JUSTICE BE served in this review process.

Therefore Mr. Barton had great self -interest to be the
reviewing Officer so JUSTICE can be Obstructed and never served
to protect himself  AT ALL COST as the perpetrator in my Witness
complaints with the selfish interest to undermine the FAIRNESS
and JUSTICE at USC.

How can ANY PERSON IN the WORLD CALL this review, IMPARTIAL.
Clearly it is 100% flawed process.

Thus Impartiality in this case was intrinsically impossible in
my vase.

The fundamental truth is Mr. Barton used his position as the
JUDICIAL OFFICER of SJACS to defend himself and Prof. Tenderich
against the charges  my Witness filed with the USC PROVOST
OFFICE against both of them, while taking UNFAIR Advantage of
me.  Mr. Barton action clearly amounts to taking unfair
advantage of me, a blatant violation of USC CODE of ETHICS.

If he admitted the truth about the difference between PDF
Document Properties and PDF Document time stamp/date stamp, the
essence of my Witness II affidavit, he would admit to committing
falsity and deliberate misrepresentation in his Dec. 16th email.

Therefore Mr. Barton had no other choice but to dismiss my
Witness second factual affidavit as "perspective" and make sure
my witness is never allowed to be intervened by SJACS.

THAT IS the ABSOLUTE Unfairness and Injustice what happened in
my review.

14

.

III.     Additional violation of USC Student Conduct Code section 10.30 IV

A. Mr. Barton grossly committed GROSS NEGIGANCE  amounting RECKLESS CONDUCT in his
   total failure to follow the DUE DILLEGENCE AS THE MANDATORY REQUIREMT of FAIR and
   IMPARTIAL Review.

It was incumbent on Mr. Barton  as SJACS JUDICIAL OFFICER to
follow due diligence   required both under section 10.30  IV AND
USC OFFICIAL POLICY TO SERVE JUSTICE and FAIRNESS TO ALL its
students.

Mr. Barton's conduct as 100% documented in his Summary
represents GROOS Negligence.  First, he was required to  use DUE
Diligence to  review  all the facts and documentary evidence
provided by Prof.Tenderich, my Witness and I.  He absolutely
failed his duty.

First,  the complaint states: Daniel Kowbel replied to my email
the following Monday October 17th, and attached the electronic
copy of his Midterm.

My additional evidence, submitted to SJACS on February 1,
clarifies Prof .Tenderich's  statement: I stated:  Exhibit A
(Prof. Tenderich's complaint) contains Tenderich statement that
I resubmitted MY MIDTERM on October 17th.

The same email states, Exhibit B1 (IT log) lists the
corresponding date: 10/17/11:56 a.m.


My statement in the email sent to SJACS on February 1st that I
resubmitted my Midterm on October 17th,  HAD ONE  AND ONLY
MEANING, I did send to Prof Tenderich  on 10/17/11:56 a.m the
same PR429 Midterm PAPER.pdf  which I submitted originally to
him on October 11th and later forwarded  to him on October 17th,
at 11.48 p.m .

 In his complaint, Prof. Tenderich further states: "This email
(second email sent to him on October 17th) had the Midterm
attached". Prof. Tenderich actually attached the copy of the
second email, which states:  Attachments:  PR429 Midterm Paper.
PDF.

Since he is using the same term, midterm attached, clearly he refers to the same attachment in both emails sent to him on October 17th.  The fact that Prof. Tenderich did not attach a copy of the first email provides undisputed proof that both emails contain the same attachment: PR429 Midterm Paper.pdf.


IF Mr. Barton had any problem Of understanding  this undisputed FACT he was required UNDDER  USC due Diligence in his Duty as SJACS JUDICIAL OFFICER to contact me to seek any clarification to prevent any misunderstanding, so FAIRNESS CAN BE SERVED in the review process. He FAILED to do so.

Furthermore my opening statement states the FACTS regarding my FATHER correspondence with USC PROVOST OFFICE.

Mr. Barton was given another opportunity, to ASK ANY CLARIFYING QUESTIONS BUT  HE INTENTIONALLY REFUSED TO DO SO.

HIS CONDUCT is made in  ABSOLUTELY RECKLESS DISREGARD OF THE TRUTH.  But as STATED in this complaint it was much more than that.

HIS RECKLESS CONDUCT had only one and only purpose: to exonerate himself of the charges brought by my father against him by  my father to ASSURE 100% JUSTICE IN THIS CASE WILL NEVDER SERVED.

THAT is the ultimately FLAWED, UNJUST and UNFAIR REVIEW PROCESS.

Therefore he GROSSLY FAILED HIS Duty and violated  not only 10.30.IV section but the USC POLICY ON FAIRNESS AND JUSTICE for ALL USC students.

The email sent by me on October 17, 11:56 a.m.  to Prof. Tenderich, " Your midterm"  is a part of the case record on the basis of its USC IT log RECORD (attached by Prof. Tenderich) and its meaning first defined by Prof. Tenderich in his complaint and  further  100% clarified by me in the email sent to SJACS on February 1st.  Both Prof. Tenderich and USC IT server have it, as of October 17th, as proved by the case record.

 While the facts stated above are undisputed, I am attaching a copy of it.  This email " Your midterm" is a part of IT log (documentary evidence provided by Prof. Tenderich, stating : "Your midterm") and it is on USC server as undisputed evidence.

16

IT HAS EXACTLY the SAME ATTACHMENT as, forwarded EMAIL (sent on October 17th at 11:48 pm to Prof. Tenderich):
PR 429 Midterm Paper.PDF., which was attached as the documentary evidence by Prof. Tenderich  and it has the SJACS date stamp.

That is EAXTLY what I stated in my email sent to SJACS on February 1st, "Additional Evidence".

THUS "the attached Midterm" to both emails I sent to Prof. Tenderich on October, 17, as it is referred to by Prof. Tenderich in his complaint is as the matter of undisputed FACT, PR429 Midterm  Paper, PDF.


My email sent to SJACS on February 1st 100% proved that file creation date in a screen picture, Exhibit C, CAN  NEVER REPRESENT THE Actual Original file creation in my specific case. Since the PR429 Midterm Paper.PDF,  was as a matter of undisputed fact first resubmitted to Prof. Tenderich on 10/17/11:56 a.m.  and then forwarded to Prof,. Tenderich on October 17 at 11:48 p.m. ,  THUS exhibit C refers to the same PR 429 Midterm Paper. PDF.  Thus as the matter of undisputed fact, file creation  in Document Properties of " PR429 Midterm Paper." PDF as shown in Exhibit C must correspond to both emails sent to Prof. Tenderich  on October 17th since they both contain the PR429 Midterm Paper. PDF file.

Undisputed evidence shows that the PR429 Midterm PDF file was sent twice on October 17th, first at 11:56 a.m and then at 11:48 p.m..

 The  above undisputed facts established the following: Exhibit C file creation date applies equally to the same PR429 Mid Term. PDF file resubmitted on October 17 th at 11: 56 a.m. and then forwarded to Prof. Tenderich on October 17th at 11: 48 p.m.

   It is physically impossible that PR429 MidTerm PDF  could had been  created on October 17th at 6:52:15 p.m. as Exhibit C suggests, and  sent to Prof Tenderich six hours earlier, on October 17 at 11: 56 a.m.

**IN SIMPLE TERMS:  if the  PR429 Mid Term PDF file was created at 6:52:15 p.m  on October 17th as falsely claimed by Mr. Barton, it**

17

**WOULD NOT EXIST on October 17th at 11:56 a.m. and I COULD NOT
SEND A NON EXISTING FILE TO PROF. TENDERICH. THAT IS
PHYSICALLY IMPOSIBLE.**

**THAT IS EXACTLY WHAT I STATED in my email sent to SJACS on
February 1st.**

HOW COULD USC JUDICIAL OFFICER BARTON BE SO RECKLESS TO
DISREGARD my email sent to SJACS on February 1st. There is only
one answer : to protect himself against the charges filed
against him by obstructing JUSTICE and FAIRNESS at USC.

Therefore, undisputed evidence shows that the date in Exhibit C
provides absolutely no evidence on the original file creation.
In fact, Exhibit C provides absolutely no EVIDENCE that I did
not send my original midterm to Prof. Tenderich on October 11th.

AGAIN, the criticality of my Witness Affidavit II and my
Exhibits E and F is so ESSENTIAL to this case and it was not
only ignored by JUDICIAL OFFICER BARTON, but in my Witness CASE
labelled "PERSPECTIVE".

If Exhibit C corresponded indeed to PDF DOCUMENT time stamp/date
stamp the original file creation date could had never been
changed by any factors. But as stated by my Witness, verified
by ADOBE and proved by my EXHIBITS E and F, PDF Document
Properties has nothing to do with the PDF Document time/date
stamp and is subject to changes, edition, alterations, etc by a
number of mechanisms. Therefore, It does not, and it can not
represent the original document creation date in my case.

The undisputed facts presented above also prove the following:

i)   As stated above data in a digital picture can be changed proving the picture taken
     by Mr. Barton can not be admissible evidence

ii)  PDF Document Properties /metadata as proved above is not PDF Document Time
     STAMP/date stamp and it provide no evidence when original document was
     created.

These undisputed facts 100% prove the following:

i)   Mr. Barton statement made on Dec. 16 on the TIME Stamp/date stamp is patently
     false.

ii)  Ii) Prof. Tenderich statement in his complaint on Time Stamp/date stamp is
     patently False

iii)    Mr. Barton acted in Reckless Disregard of the TRUTH when making his statement
         about Time Stamp /date stamp not only on Dec. 16th but also t in his SUMMARY


 Mr. Barton acted in Gross Negligence during the review by
utterly failing to fairly, according to 10.30. IV, review all
these   undisputed facts. If he, for whatever reason, had any
trouble to understand these undisputed FACTS or any confusion on
these undisputed fatcs, he was required under  a FAIR review
standard to simply contact me for any clarification.  THAT IS A
UNIVERSAL FAIRNESS standard clearly imputed to section 10.30.IV
of USC rules.

In addition, SINCE SJACS/ Mr. Barton  has never in any way
corresponded with me after Dec. 16th, my father as stated in my
opening statement of the APPEAL, via the USC PROVOST OFFICE gave
SJACS a chance to clarify any issues.

As stated in the opening statement of the APPEAL, USC PROVOST
OFFICE stated, NO ADDITIONAL INFORMATION IS NEEDED.

That evidence, further PROVES not only GROSS NEGLIGANCE but
RECKLESS CONDUCT BY JUDICIAL OFFICER BARTON to ASSURE THAT
JUSTICE AND FAIRNESS WILL NEVER BE SERVED IN MY CASE.

THAT IS the ABSOLUTELY FLAWED INTERVIEW PROCESS, which was
solely used by Mr. Barton to EXONERASTE Himself and Prof.
Tenderich against charges filed against them by my FATHER with
the USC PROVOST OFFICE.  The ONLY WAY JUDICIAL OFFICER BARTON
could had exonerated himself and Prof. Tenderich is to ACT IN
RECKLESS DISREGARD OF THE TRUTH.  That is exactly what happened
in this review process.

 USC, implied in fact, FAIRNESS standard prohibits Mr. Barton
simply to say IT IS IMMATERIAL only because he did not
understand it or simply he did not want understand it so
INJUSTICE can be served in my case in order to help himself and
Prof. Tenderich in my Witness complaints against them.  THAT is
100%  Unfair, BIASED and Flawed review process.


.


This a monumental, GROSS negligence committed Mr. Barton in
violation of not only section 10.30.IV but also IMPLIED in FACT
USC Policy on FAIRNESS.

**B. Mr. Barton violated implied in fact SJACS Policy on admissible evidence  by submitting non SJACS Validated evidence.**

The alleged evidence on time stamp/date stamp emailed to me  Mr. Barton on December 16th  is a just a screen digital picture.   I am attaching the  printed actual digital picture attached to Mr. Barton email sent on Dec.16th, as Exhibit C.   There is absolutely no evidence who took that picture, when and IF the screen picture supplied by Barton in fact is REALLY the PDF Document Properties metadata as furnished to SJACS  by Prof. Tenderich on October 27th .  The undisputed fact is that in his email with ALL SJASCS validated evidence, that picture was not included.   There is absolutely no evidence on the record, that Prof. Tenderich supplied a copy of this picture, since that picture has no SJACS received October 27th date stamp.

SJACS implied in fact policy on admissible evidence was 100% not followed BY  Mr. BARTON .  The review of the evidence submitted by  Mr. BARTON 100% shows that for any evidence to be admissible in this case, it must contain both SJACS time stamp, received SJACS October 27th as well as the evidence it is kept in the SJACS binder (the evidence of the Binder holes)

The undisputed evidence in the case proves that a digital screen picture information can be altered.

Therefore introducing in admissible evidence by Mr. Barton undermined the FAIRNESS of  review process by allowing a potential tampering with evidence.

THE ONLY TIME that screen picture could be admissible if SJACS personal responsible for SJACS evidence on the record would take that PICTURE ON OCTOBER 27th, printed it, applied the RECEIVED SJACS October 27th date stamp and kept it in the CASE EVIDENCE BINDER with ALL OTHER SJCS VALIDATED CASE EVIDENCE. Then on Dec. 6th that SJACS validated picture would be sent to me with ALL OTHER EVIDENCE.  THAT was not the case.
No Fairness or Justice can  EVER be served  AT USC if there is any potential  at ALL of tampering with evidence.

That is monumental violation of not just Student Conduct Code but USC policies on FAIRNESS and USC CODE OF ETHICS

The fact that Mr. Barton provided this non SJACS validated
alleged evidence only after getting my Father complaint which is
100% based upon SJACS validated evidence raises additional
fundamental problems with Mr Barton following any FAIRNESS
standard.

### C. Mr. Barton falsely stated in his email on December 16th that a screen picture of PDF document properties is the evidence on the time stamp/date stamp. His statement was made in RECKLESS Disregard of the TRUTH.

Mr.Barton in his email on December 16th refers to a screen
picture of the PDF document properties as PDF document time
stamp.

As the USC employee he was required to conduct a due diligence
on any statements he made in his capacity as SJACS Judicial
OfFICER. He made absolutely no effort to verify the
truthfulness of his statement. AS matter of undisputed fact he
acted in RECKLESS Disregard of the truth in total violation of
USC policy on fairness.

### D. Mr Barton dismissed my Witness two Affidavits containing key material facts to the case and disregarded my WITNESS material facts presented in his Affidavits as "Perspective" would indeed have no impact on the case.

On December 22 and I submitted my Witness First Affidavit to
SJACS. It provides factual information 100% proving that using
IT log lack of information on the received email, Provides
ABSOLUTELY NO EVIDENCE that the email in question was not sent
by me on October 14th. IT is a highly MATERIAL FACT to ESTABLISH
preponderance of EVIDENCE in my case and MR BARTON VIOLATED THE
FAIRNESS of the Review by not not even mentioning its EXISTANCE.

On January 30 th I submitted to SJACS my NEW EVIDENCE document
with 12 attachment attached, including my Witness II AFFIDAVIT.

The second AFFIDAVIT is based upon FACTS attained by the Witness
by Witness including KEY ADOBE Technical Group verification of
these facts.

The fundamental undisputed FACT is that PDF Document time stamp/
date stamp has absolutely nothing in common with PDF Document
Properties Metada including its file creation date.

The PDF document time stamp/date stamp CAN NOT BE ALTERED, it

provides EVIDENCE on the actual initial DOCUMENT CREATION date.

The PDF document Properties, including its Meta data file creation can be edited, changed, and altered.  IT PROVIDES ABSOLUTELY NO EVIDEDENCE on the initial FILE CREATION DATE since it has no real traceability to the initial file creation date.

In addition the Witness II Affidavit states provides evidence that like PDF Document Metadata the digital picture information can be edited, altered and changed.

Therefore just a digital picture provides no evidence by itself unless it is properly validated.

The evidence provided by my Witness is critical to establishing the following:

1. **Prof. Tenderich claim on time stamp/date stamp is FALSE.**

2. Mr. Barton claim on time stamp/date stamp is false.

3. The non validated  digital picture supplied b Mr. BARTON can not served as admissible evidence.

In addition, I am attaching an email my father as my Witness sent to SJAS "Clarification on my affidavits"

The email clearly states the critical importance of my Witness ACTUAL knowledge directly related to my case addressing to critical issues:

i)      First affidavit exact situation like my email not received ny Prof. Tendertich.

ii)     Ii) the factual basis of the FACT that calling PDF time stamp/date stamp  a PDF Document Properties is FALSE.

Thus my Witness affidavit not only provide key material evidence to support my case but PROVED that  Mr. Barton made a patently false statement.

Mr. Barton action against my Witness 100% undermined the fairness of the review process.

E. **Mr. Barton disregarded   ALL material evidence presented by me (except USC IT email) as 100% immaterial to the case**

My evidence submitted to SJACS on January 30 contains the

following Exhibts:

Exhibit C a digital picture absolutely no SJACS validation
showing date of file creation of 10/17/2016 6:52:15 p,m

The complaint submitted by Tenderich states Monday, October 17
11:52.15 a.m. In light the most favorable to Mr. Barton, and
allowing his inadmissible evidence still be considered Exhibit C
proves that Prof. Tenderich made PATENTLY FALSE statement.

6:52:15 pm time is NOT 11: 52:15 a.m.


The SJACS record shoes that none of the pages of my Midterm
REPORT has the TIME  stamp/date stamp on THEM.

Therefore both Prof.TENDERICH and Mr. Barton made PATENTLY False
statements on TIME STAMP/DATE STAMP.

Exhibit E has the definition of time stamp/date stamp 100%
supporting my Witness Affidavit II.

Exhibit F has the definition of Metadata in PDF document
properties 100% supporting my Witness Affidavit II.

On February 1st I submitted additional evidence to SJACS 100%
proving that the creation date as shown in Exhibit C CAN EVER BE
THE OROGINAL FILE CREATION DATE.

Prof. Tenderich complaint as supported by his IT log, states
that I did send my Midterm Paper electronic copy to him on
October 17th at 11.56 a.m.   Yes, I did send to Prof.  Tenderich
on October 17th at 11:56 a.m and email with attached PDF file of
the Midterm Paper and then on October 17th at 11:48 p.m. re sent
my original email sent on October 11th, with the same attached
filed, PR429 MidTerm.PDF.

Therefore the digital picture information provided by  Mr.Barton
with FILE CREATION of October 17 6:52: 15 p.m  CAN NOT REPRESENT
THE original file creation

Section IIIA, presented above fully supports this conclusion.

Therefore the material FAlSE statement made by Prof. Tenderich
actually represents DELIBERATE MISREPRESENTATION.

Prof. Tenderich fabricated the date of October 17 11:52:15  a.m in his complaint to Deceive USC that I created the filed before the undisputed file submission  date, October 17 11:56: a.m.

Therefore ALL FOUR Elements of Deliberate Misrepresentation are MET.

1. The statement is OBJECTIVELY FALSE.

2. Prof. Tenderich had actual knowledge of its FALSITY.

3. It is material.

4. It was made deliberately with the INTENT to DECEIVE USC

Mr. Barton action on my evidence 100% undermines the Fairness of the review process.


F. Mr . Barton omitted  the absolutely critical fact in the Summary what is the actual time in the PDF Document Properties Metadata.

Mr Barton intentionally omits the fact that PDF document date of October 17 6:52:15 pm actually proves that Prof Tenderich claim on the time stamp/date stamp (even if I allow Barton to use false statement using PDF Document Properties in lieu of the actual date stamp statement made by Prof. Tenderich in his complaint) 100% proves that  Prof. Tenderich's complaint is a Deliberate Misrepresentation.


G. Mr .Barton omitted  the fact that Prof. Tenderich complaint FALSE statements which by themself constitute the undisputed FACT that Prof. Tenderich committed ACT of Dishonesty

Attached is the USC Policy on Dishonesty of its employees.  It states:  providing false, inaccurate and fraudulent information in the course of conducting business or university documents..


H. Mr. Barton omitted  in his summary  the fact that False Statements made by Prof. Tenderich amount to DELIBERATE Misrepresentation in clear violation of USC Ethics Code.

Attached is a copy of USC code of Ethics, which states: We do not tolerate deliberate misrepresentations.  In FACT the complaint was made by a USC PROHIBITED conduct and should have been dismissed on that basis.

IV.     Mr Barton  Violated  of USC Policy on Dishonesty.

A. On December 16th sent me an email containing a patently false statement on "time stamp:  as 100% proved above.  Making a patently false statement clearly amounts to providing false information.

B. Mr Barton makes a patently false statement in his Summary by falsifying  both  the complaint and   EXHIBIT C.  He states: The properties of the PDF Document  submitted by Mr. Kowbel shows  a date stamp of October 17, 2016,  confirming that the document was created six days after the deadline for the assignment.  The complaint states the following: the PDF Document he submitted as his  midterm has a date stamp of Monday, October  17th 11:52:15 AM and therefore seem to have been created six days after the due date while the Exhibit .

```
Mr. Barton intentionally falsified the record by omitting
Three  critical material facts:  the complaint states: i)
PDF Document has a date stamp not PDF Document Properties
Metadata ii) fraudulently omits the actual time: 11:52:15
AM  in the complaint, iii) and in order to deceive USC
further just states October 17. Date in Exhibit C, not the
full date, critical to the case, October 17 6:62:15 p.m.
Under US laws, which USC MUST obey, omitting material
evidence  is FRAUD,  Omitting key material evidence within
narrow USC rules is DISHONESTY. Omitting key evidence is in
fact "making FALSE STATEMENTS".
```

C. In his Summary  he states Mr. Kowbel has submitted statement s may have  not been received by the professor as a result of faults with USC network performance.   THAT is a patently false statement which ignores all the statements made by me in "Statement of Facts  " submitted to SJASC on December 22nd  and discussed in detail above.

V.      Mr. Barton violated USC Code Of Ethics

```
Mr. Barton patently false statements, A and B as stated above
are meet all the criteria of Deliberate misrepresentation which
is a USC Code of Ethics Prohibited act.
```

i)      It is objectively false statement -the falsity is undisputed as proven above

25

ii)     Barton made it either with actual knowledge of its falsity, or in Reckless  Disregard of the truth  both  cases proved above and in the case record

iii)    His false statement was material. Within US Supreme Court definition they affected decision, thus were material

iv)    He made it with the specific intent to deceive and prove his argument by deceitful action.

No mistake took place, purely intentional and deceitful conduct.

## VI.    Mr.  Barton violated  USC Student Conduct Code  Section 10.30.IX

Section 10.30 IX states:  Factual basis for conclusion drawn (must be used)

### A.  Mr.  Barton  uses his personal opinion not a fact supported by any  Evidence on the RECORD .

Barton claims that PDF Document Properties in his picture, evidence C, would not contain a creation date after the date the email was.

He provides absolutely no evidence to support, 100% speculative statement.

### B.  The undisputed  evidence on the record  categorically proves that Mr.  Barton conclusion is  PATENTLY FALSE.

The undisputed evidence on the record shoes:

i)     PDF Document Properties meta data including its creation file date can be change or edited providing absolutely no evidence on the original PDF document creation date.

ii)    The evidence presented above in section III.A 100% dis proves it.  It is patently false statement

VII.  Mr Barton violated USC Student Conduct Code section 10. II. 2  Standard of Proof.

The 10.II.e sections states: The preponderance of evidence means that based upon Totality of Evidence and reasonable inferences drawn therefrom, it is more likely  than not that the responded committed  the prohibited conduct charged

**A. Mr.  Barton utterly failed in reaching his conclusion to consider the totality of evidence.**

As the matter of the undisputed fact, Mr. Barton in his Summary OMITS the critical second claim Prof. Tenderich made against me on, PDF Document date stamp of 11:52:15 a.m, and the full date in Exhibit C, October 17 6:52:15 p.m. In terms of my evidence he only states my USC IT email as any evidence supporting my case. He UTTERLY disregards my Witness two Affidavits and ALL OTHER MATERIAL Evidence stated above properly submitted to me to SJACS

Prof. Tenderich's complaint against me has two basic claims:

1. sent email  allegedly proving I did not submit my ORIGINAl MID TERM to Prof. Tenderich on October 11th

2. Alleged  date stamp again allegedly proving I did not submit my Mid term report to Prof. Tenderich on October 11th

On the first claim: Prof. Tenderich provides just  one evidence, USC IT log. It is missing the October 11th entry of my Original submission. JUST the mere FACT that IT log does not contain the October 11th entry, is USED as the EVIDENCE to prove that the email in question, was never sent

As discussed above I provided the following  evidence to 100% DIS PROVING Prof. Tenderich's first claim.

My witness Affidavit I provides TWENTY ONE CASES (not just ONE case) in which sent email did not reach the intended recipient. My Witness AFFIDAVIT I 100% proves that a missing entry in the IT log PROVIDES  ABSOLUTELY NO EVIDENCE AT ALL if the email in question was sent. The fundamental reliability of EMAIL System is not 100%.  Therefore as stated in my Statement of the Facts submitted to SJACS on Dec. 22nd, Item SIX, My witness AFFIDAVIT I presented undisputed evidence which clearly established the following FACTS:

i)   The email system is not 100% reliable

ii)  It can be affected by a plethora of internal and external factors resulting the ACTUAL SENT email not reaching the INTENDED RECEIPIENT.

The above presented summary of undisputed  evidence presented by my Witness and I  clearly established preponderance  of evidence in my favor on Claim 1

27

The second claim states:  His PDF Document on  Mid Term has Date
STAMP of Monday, October 17th, 11:52:15 a.m.  This alleged date
STAMP leads Prof. Tenderich to the following conclusion:
"therefore seems to have been created six days after the due
date".

First, AS STATED ABOVE Mr. Barton Committed undisputed FRAUD, he
SIMPLY OMMITTED the whole THE SECOND CLAIM from his SUMMARY.
No where in the summary "date stamp is stated with the October
17th 11:52:15 a.m  actual date.

THAT FRAUD by itself disqualifies Mr. Barton as USC JUDICIAL
OFFICER and renders his summary a FRAUD.

But Mr. Barton's  FRAUD extends further.

On the second claim Prof. Tenderich provided  ABSOLUTELY no
evidence on the date Stamp since the SJACS validated evidence of
what Prof. Tenderich submitted on October 27th to SJACS had
absolutely no PDF Document TIME/Date stamp or even  a SJACS
validated screen picture of PDF Document Properties.   Therefore
Prof. Tenderich's  SECOND Claim is a 100% unsupported allegation
based  upon USC/SJACS implied in fact evidence admissibility
standard. However, Mr. Barton introduced his OWN non- SJACS
validated evidence, without any expressed or implied in fact
authority,  falsely claiming that PDF Document Properties is the
same as PDF DOCUMENT TIME stamp/date stamp. As 100% proved above
by my Witness II affidavit (including ADOBE statements) and my
Exhibits E and F submitted to SJACS on January 30th Mr. Barton
made not only a patently FALSE statement on PDF Document time
stamp/date stamp but actually committed a deliberate
misrepresentation. Next FRAUD in Summary is to entirely omit the
SECOND CLAIM by Prof. Tenderich as stated Above.

 BUT THE SUMMARY has also a SECOND FRAUD.  After intentionally
omitting the second claim, FIRST FRAUD, now he falsifies EXHIBIT
C, only stating in Summary OCTOBER 17 th, not the whole date,
October 17th, 6:52:15 p.m. which was the key material evidence to
prove in SECTION IIIA , that EXHIBIT C file creation date, does
not correspond to the original file creation date.

Again, I am proving my case in light the most favorable to
Mr.Barton and Prof. Tenderich. I am using the non SJACS
validated, which is 100%  inadmissible evidence, picture Mr.
Barton Provided by himself outside the  formal review process,
Exhibit C, as the evidence I have to dis prove.

As discussed above, I provided the following evidence to dispute
Prof. Tenderich's second claim and Exhibit Exhibit C introduced
outside the complaint process by Mr. Barton.

The evidence introduced by my Winess in Affivit II and my
evidence submitted to SjACS  on January 30 proved the following:

i)      Both  Prof. Tenderich and  Mr. Barton made false statements on date  stamp.

ii)     Prof. Tenderich committed Deliberate Misrepresentation on date Stamp claim

In summary,  First I proved 100% that PDF Document Properties,
Exhibit C IS NOT  the PDF Document date STAMP as stated in Prof.
Tenderich's complaint. Therefore the statement made by Prof.
Tenderich on  PDF Document date STAMP is objectively FALSE.
Secondly,   there is a monumental difference between the two:
PDF Document time stamp/date Stamp CAN NOT BE altered while  PDF
Properties Metadata including its creation date can be changed,
altered and EDITED. Thirdly, as proved above Prof. Tenderich's
date Monday  October 17  11:52:15 AM  in his complaint is not
the date on EXHIBIT C, which shows the date 6:52:15 PM.
Thus,Prof. Tenderich's  statement on  the PDF Document date
stamp in his second claim is false if Exhibit C is allowed to
become evidence.  I  have also proved that Prof. Tenderich made
no mistake but deliberately created that FALSE statement on the
PDF Document date STAMP to fraudulently  prove his case, Section
III E.

Also as 100% proved in section III.A ,  Mr. Barton committed
Gross Negligence in his review and omitted the UNDISPUTED TRUTH:

 As 100%  proved in Section IIIA:  if the original file was in
fact created  on Monday October 17 6:52:15 p.m. per Exhibit C, .
IT COULD HAD NOT been sent to him on Monday October 17th at 11:
56: 15 a.m.. THAT FACT is 100% supported by the factual and
documentary evidence.

Undisputed evidence, discussed in section III A showed that the
SAME file, PR429 Mid Term PDF was sent to Prof. Tenderich on
October 17th twice, first at 11:56 a.m and then on October 17 at
11:48 p.m.  THUS Document Properties, Exhibit C  corresponds to
the same file, PR 429 Mid Term. PDF.  As I stated in my email
sent to SJASCS on February 1 and reiterated in section IIIA, it
is physically impossible to send a NON –EXISTING FILE.  If PR
429 Midterm.PDF was indeed created on October 17 at 6:52:15 p.m

as Exhibit C would suggest IT COULD HAD NOT BEEN SENT to PROF.
Tenderich  six hours earlier October 17 11:56 a.m. as 100%
proved by undisputed evidence in section IIIA.

THAT IS WHY it was so important  for my Witness to even go as
far as directly contact ADOBE to 100% prove that PDF Document
properties can be  changed by a number of factors and the PDF
Document Properties screen displayed file creation date can
actually show a different date then the original file creation
date.  UNDER NO CIRCUMSTANCES PDF DOCUMENT Properties file
creation date can provide evidence that the original file was
not CREATED on October 11th in my case based upon the undisputed
record.

On the other hand, the PDF Document time stamp/date could  had
never be changed and it would  indeed provide evidence if the
original file was or was not created on October 11th.

Therefore,  the totality of evidence 100% dis proves Prof.
Tenderich's second claim and the preponderance of evidence is
100% in my favor on the second claim since there is no evidence
on the second claim provided by Mr. Barton and Prof. Tenderich
(under USC rules FASLSE statements and deliberate
misrepresentations are not EVIDENCE since they are USC
PROHIBITED ACTS) to support it.  As 100% proved in section IIIA,
Exhibit C file creation date of October 17, 6:52:15 p.m CAN not
represent the original file creation.  As the matter of
undisputed facts, there is absolutely no evidence on the record
to support Prof. Tenderich's conclusion that my PR 429 Mid
Term.PDF was not created on October 11th.

### B. Mr. Barton  committed  Deliberate misrepresentation  to fraudulent to stly prove Prof. Tenderich  complaint.

The undisputed evidence proves that both Mr. Barton and Prof.
Tenderich are the one who COMMITTED PROHIBITED acts of
DISHONESTY and Deliberate misrepresentation NOT I.
Mr. Barton responsibilities as the reviewing officer in his
Summary was to clearly  and exactly state  Prof. Tenderich's
second claim in his complaint and using the evidence on the
record prove it or dis prove.  THAT is the FAIR and IMPARTIAL
review.   Mr. Barton was not allowed to FALSIFY the EVIDENCE.
Mr. Barton First  Fraudulently omitted the actual  second
claim . Then Mr. Barton omits the full date  in Exhibit C which,
first proved 100% Prof. Tenderich made a patently false

statement, secondly as 100% proved in section IIIA it would 100% dis prove Prof. Tenderich's second claim.

Within the US laws, which UCS MUST OBEY, intentionally omitting material evidence with intent to deceive is  UNDISPUTED FRAUD.

But as stated above, SECTIONS IV B and V,  Mr. Barton intentionally Falsified  both the second claim  and Exhibit in order to fraudulently prove it.  That is undisputed act of deliberate misrepresentation, a PROHIBITED Conduct UNDER USC Code Of Ethics.


### C.  Mr. Barton uses   deliberate misrepresentations as  the basis for his inferences.

FALSE statements can not be the basis for any reasonable inferencing.  Mr. Barton is attempting to prove the case by using the statement that PDF Document Properties in his picture, Exhibit C, proves that my original document was created on October 17 at 6: 52: 15 pm.

He is using a deceptive, FRAUDULENT and UNFAIR tactic,  FIRST entirely omitting Prof. Tenderich's second claim and then stating only that Exhibit C shows the date of October 17th thus there no way the PDF document could had been submitted on October 11th.
Mr. Barton again uses FRAUD not to  STATE TRUTH that Exhibit C shows October 17, 6:52:15 p.m. date
Section III A 100% proves it is a patently false statement.
Section  V proves it is a deliberate misrepresentation (fraudulent misrepresentation).

That is why I provided so much evidence that Prof. Tenderich and Mr. Barton have produced absolutely no EVIDENCE on TIME STAMP/ date stamp.

The time stamp/date stamp issue was so critical to this case but Mr. Barton made absolutely no MENTION of it in his summary and any differences between the PDF Document time stamp/date stamp and PDF document Properties  and how that fundamental difference AFFECTED this CASE.

Therefore his inferencing that I could had not submitted my original Mid Term on October 11th is made using a patently false statement and a deliberate misrepresentation as proven in sections III A and V as well as fraudulent conduct, section

VIIB.

C . THE SUMMARY and Closing Statement.

1. THERE IS  ABSOLUTELY no Evidence on the record to show that I did not submit my mid term to Prof. Ttenderich on October 11th.

2. As the matter of undisputed fact, I DID SUBMIT MY Original  Mid Term paper to  Prof. Tenderich on October 11th.

3. I made absolutely no FALSE statement to Prof. Tenderich and absolutely did not violate USC policy on Academic Honesty.

4.  AS the matter of Undisputed facts it is Prof. Tenderich who   committed  prohibited ACTS of Dishonesty in his complaint.

5.  As the matter of undisputed facts it is Prof. Tenderich who committed prohibited acts of making deliberate misrepresentation in his complaint.

6.  As the matter of undisputed facts, Mr. Barton committed prohibited acts of Dishonesty in his review.

7. As the matter of undisputed facts, Mr. Barton committed prohibited acts of deliberate misrepresentation in his review.

8. The review process was fundamentally flawed.

9. The review process was UNFAIR, BIAS and FRAUDULENT.

**10.  I am a victim of PROHIBITED USC ACTS committed against me by both PROF. TENDERICH and Judicial Officer Barton.**

Thus,  Prof.  Tenderich's  case against me MUST BE DISMISSED.

I,  as the Undisputed  VICTIM in this CASE  of the Gross

32

INJUSTICE INFLICTED on me  by Prof. Tenderich's fraudulent
complaint and JUDICIAL OFFICER BARTON's  FRAUD and the harm it
caused me,  CAN  NOT BE PENALIZED  UNDER US law and USC Policy
of Fairness and Justice. BUT the PERPETRATORS of THESE OFFENSES
MUST BE PENALIZED  at least BY USC.

In addition,  for Mr. Barton, who committed undisputed
prohibited acts of Dishonesty and making deliberate
misrepresentations,  to request me,  who is a victim of
Injustice inflicted  by him, to write a 5 page essay on Ethics
is not JUST 100% unacceptable, It IS AN ISULT TO JUSTICE.

For the record, undisputed evidence shows that it is Mr. Barton,
not I who committed USC PROHIBITED ACTS of deliberate
misrepresentation and DISHONESTY.

THE FACT  THAT USC on whole, including UCS President,   TRUSTED
HIM as the USC SJACS JUDICIAL OFFICER  to serve JUSTICE on
behalf of USC, brings this case to even a higher level of
INJUSTICE, UNFAIRNESS and FLAWED PROCESS.

SJACS Judicial OFFICER  is required to uphold JUSTICE at USC,
NOT undermined The JUSTICE at USC by committing undisputed
FRAUD.

That is the best closing statement in my case.

Daniel Kowbel

**PROOF OF SERVICE**

I,  Jo Ann Kowbel, declare:

I am resident of the state of  Arizona, over 18 years old and not a party to this action.
My address: 6841 E. Flamenco, Dr. Tucson, AZ, 85710

On, 7/9/2018 I served the following documents: Second Amended Complaint, Exhibit A
and Redlined Second Amended complaint,   by placing the documents listed above in a
sealed envelope with postage fully pre-paid, in the United States mail at Tucson, AZ
addressed  as forth below:

Mr. Tenner C. Tseng

Hill, Farrer and Burril LLP

One California Plaza

300 S. Grand Av. 37th Fl.

Los Angeles, CA 90012

I declare under penalty of perjury under the laws of Arizona that the above is  true and
correct.

Executed on  7/9/2018 at Tucson, Arizona.

Jo Ann Kowbel

Second Amended Complaint