**Second Amended Complaint Redlined version used two-fold redlining:**

**Pages 7 to 41:  Red Text  -additions, stricken out red text-deletions.**

**Pages 1-6 are Pro Se pre set format not allowing the changes as stated above.**

**Thus black color was used to strike out deletions and yellow highlight  was used to denote additions.**

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

for the

Central  District of California

Western Division

| | | |
|---|---|---|
| | ) | Case No. 2:17 CV-07896 JAK-AS |
| **Witold Kowbel** | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| | ) | |
| University of Southern California , ~~C.L. Max Nikias~~ | ) | |
| ~~and Ainsley Carry~~ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued.  If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | | |

## SECOND AMENDED REDLINED

## COMPLAINT AND REQUEST FOR INJUNCTION

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Witold Kowbel |
| Street Address | 6841 E. Flamenco |
| City and County | Tucson |
| State and Zip Code | AZ 85710 |
| Telephone Number | 520 405 6130 |
| E-mail Address | witoldkowbel@gmail.com |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

**B.**     **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | University of Southern California |
| Job or Title *(if known)* | |
| Street Address | 620 Mc. Carthy Way |
| City and County | Los Angeles |
| State and Zip Code | CA 90007 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | ~~C.L. Max Nikias~~ |
| Job or Title *(if known)* | ~~USC President~~ |
| Street Address | ~~USC Presidential Residence~~ |
| City and County | ~~SAn Marino~~ |
| State and Zip Code | ~~CA 91108~~ |
| Telephone Number | |
| E-mail Address *(if known)* | ~~president@usc.edu~~ |

Defendant No. 3

| | |
|---|---|
| Name | ~~Ainsly Carry~~ |
| Job or Title *(if known)* | ~~USC Vice President for Student Affairs~~ |
| Street Address | ~~24856 Carbon LN~~ |
| City and County | ~~Valencia~~ |
| State and Zip Code | ~~CA 91354~~ |
| Telephone Number | ~~213 740 2421~~ |
| E-mail Address *(if known)* | ~~acarry@usc.edu~~ |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

E-mail Address *(if known)* _____

## II.   Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.   If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.   If the Basis for Jurisdiction Is Diversity of Citizenship

1.   The Plaintiff(s)

a.   If the plaintiff is an individual

The plaintiff,  *(name)*   Witold Kowbel                          , is a citizen of the State of *(name)*   Arizona                          .

b.   If the plaintiff is a corporation

The plaintiff,  *(name)*                          , is incorporated under the laws of the State of *(name)*                          ,

and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.   The Defendant(s)

a.   If the defendant is an individual

The defendant,  *(name)*   ~~C.L. Nikias~~                          , is a citizen of

Page 3 of 7

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

the State of *(name)*     California                                    . Or is a citizen of
*(foreign nation)*

b.     If the defendant is a corporation

The defendant,  *(name)*     University of Southern California     , is incorporated under

the laws of the State of *(name)*     California                          , and has its

principal place of business in the State of *(name)*                                .

Or is incorporated under the laws of *(foreign nation)*                              ,

and has its principal place of business in *(name)*                            .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The  total amount of controversy is $455,000  ~~$1,055,000  excluding punitive damages, the amount of which will be determined at the trial~~.  The total amount includes the following: $211,000 in recovery  of the fees and tuition paid to USC since USC breached implied contract. $244,000 for all other educational costs associated with  the Plaintiff's son education at USC since the Plaintiff sent his son to USC not any other school by accepting USC offer  to send his son to USC in return for USC complying with its Policies and Promises. USC did not comply with its Policies and Promises.  ~~$600,000 for emotional distress suffered as the result of Defendants Breach of Implied Contract,  Fraud and Negligence~~. .

III.   **Statement of Claim**

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.     Where did the events giving rise to your claim(s) occur?

University of Southern California (USC)

B.     What date and approximate time did the events giving rise to your claim(s) occur?

From April 2013 till now

C.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Claim One.  Breach of Implied Contract Against USC
A. Implied Contract.
 Contract existence elements of mutual assent and good considerations of this implied in fact contract are defined by USC and  the Plaintiff's factual conduct as stated below.  The Plantiff has implied in fact contract with USC.  The existance and terms of this impled in fact contract are defined by USC and the Plaintiff factual conduct as stated below.   In Spring of 2013 USC accepted the  Plaintiff's son. Subsequently  USC has  invited  the Plaintiff to USC campus for one full day visit.  USC extremely aggresively  has  used  its marketiung tools and sales tools trying convince the Parents of potential USC students to send their children to  USC and pay  to USC for  their services  vs sending their children other schools where  their children got also  accepted and paying other schools not USC.  USC has made it very clear to the Plaintiff how critical to USC  are the Parents  and their money since in many cases at USC the parents  bear all the cost of their children education at USC which is extremely high, at least.   USC has described in its sale efforts  the broad range  of educatational services it would  offer to  its students in consideration for the money their parents would pay to USC not merely just the classes in order to be more competitive in the educational service business.  During the freshmsn year USC actually required the students to live on campus, thus the parents would not only pay USC for tuition and fees but for boarding and largely for food,  USC has  clearly stated that other considerations not just classes are offered at USC for the  parents money paid to USC. It was clearly understood by the Plaintiff that USC understood during its marketing efforts that parents who pay for their  children to USC have clear RIGHTS at USC in consideration for their money paid to USC.   Actually USC has claimed how its networking  is the biggest asset they offer vs their competition in educational services and how critical are parents to USC.

## IV.   Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

The Plaintiff has been suffering from December 2016 till now emotional distress, and in some cases extremely acute distress and on a few occasions  came close to suffer irreparable injury due to USC   Breach of Implied Contract, Fraud and Negligence Claims  as  stated in this complaint.  The Defendants absolute refusal to end Plaintiff's emotional distress will cause the Plaintiff irreperable  injury absent of injunction relief.  No future monetary compensation will ever repair such damage.  There is absolutely no standard which can quantify and measure such irreparable injury.

## V.     Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

This court injunction relief  is the only avenue available to the Plantiff to prevent irreparable injury to the Plaintiff which will be caused by the Defendants Breach of Implied Contract, Fraud and Negligence unless injunction is granted.    Thus the Plaintiff seeks this Court Injunction to prevent irreparable injury to the Plaintiff. In addition, the Plaintiff demands the Defendants to the pay the Plaintiff $1,055,000 $455,000 in compensatory damages  plus interest and court cost plus  the punitive damages with the amount determined at the Trial.  The compensatory damages include: $211,000 in recovery of the tuition and fees paid by the Plaintiff to  USC.  USC breached implied in fact contract with the Plaintiff thus the Plaintiff is enititled to revover the money he  has paid to USC plus the interest.  In addition  the Plaintiff demands USC to pay him the $244,000 for all other costs the Plaintiff has  incured with his son education at USC.  The basis for it  is the fact that the Plaintiff would  have never sent his son to attend USC absent of the implied promises USC made to the Plaintiff and USC has breached all its implied promises made to the Plaintiff.   Since USC Breach of Implied  Contract, Fraud and Negligence have been causing the Plaintiff emotional distress, very negatively affecting Plaintiff's life the Plaintiff is entitled to $600,000 damages for emotional distress.  In addition, USC Fraud permits the Plaintiff to seek the punitive damages againts USC with the amount determined at the trial.

## VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:             07/07/2018

Signature of Plaintiff

Printed Name of Plaintiff        Witold Kowbel

### B.     For Attorneys

Kowbel vs USC ~~et al~~ Additional Pages

~~II.  Basis for Jurisdiction.~~

~~1.  Defendant Ainsley Carry is a citizen of the state of California.~~

III.  Statement of Claims.

Claim One.  Breach of Implied Contract against USC (continuation).

USC stated to the parents, including the Plaintiff, that  their children would get the credits for all  properly  classes and get USC degree/diploma after earning the needed credits.  USC explicitly stated the uniqueness of USC degree, claiming highly unique USC degree would offer the parents who pay for all the extremely expensive educational cost at USC (tuition on the top bracket plus extremely expansive housing, making USC one of the most expensive private Universities in the USC)  a degree for their children which would make them ultra- competitive in the market place and assure their excellent career and result in their financial independence from their parents.   In addition, USC explicitly stated  to the parents,  including the Plaintiff, that it would always  treat their children fairly and objectively  and USC  would never in any unfair conduct which would unfairly deprive parents  of  earned USC  credits and or  USC degree which they earned as stated above.  Also USC stated, it  would apply all its policies, rules  and regulation in a fair manner to them by strictly adhering to them, when the parents send them to USC and pay for their educational expenses at USC. USC stated it PRIDES ITSELF in NON ALLOWING any UNFAIR treatment of its students.   Making unsupported accusations by USC Professors against their students to deprive them of  properly earned  credits clearly constitutes  non- fair conduct not allowed by USC's promise as stated above.  Using  unsupported accusations made by USC Professors against USC students  in any disciplinary proceedings against USC students clearly  constitutes non-fair conduct not allowed by  USC's promise as stated above.  Depriving USC students of properly earned credits and a degree  by the use of unsupported accusations made against them by their USC instructors  clearly constitutes  non-fair conduct  not allowed by USC's promise as stated above.

Thus, fair treatment by USC own admission, clearly included making no unsupported accusations by USC against its students, which USC could later use to deprive its students of earned credits and a degree from USC. Thus, USC's fairness Promise based upon the above stated facts included: allowing the students to get credits for properly completed classes, allowing the students to get degree/diploma after they earned the needed USC credits and not to engage in any unfair conduct against its students including making unsupported accusations, which would deprive the parents children of properly earned credits and USC degree/diploma.

In simple terms, USC made its competitive implied in fact offer to the parents, including the Plaintiff, to provide educational service package to their children, including allowing the students to get the credits and get the degree and be treated FAIRLY as stated above, claimed to be very unique in clear consideration of the parents sending their children to USC and paying for their educational service to USC and paying for all other expenses at USC

USC's promise to treat its students Fairly, imposed the following binding obligation on USC's conduct which could affect the Plaintiff by the following FACTS.

Under no circumstances, USC on its own admission was allowed to treat Plaintiff's son unfairly by making unsupported accusations against him and then later use unsupported accusations against him, to take the earned credits away from him and prevent him from getting USC diploma/degree when he became USC student.

That was a huge benefit to the Plaintiff by providing assurances that his son would have never be unfairly deprived of any earned credits and unfairly deprived of USC diploma/degree which would directly affect the plaintiff as stated below. USC's fairness promise made to the parents including the Plaintiff, as stated above, imposed binding obligation on USC's conduct which could affect Plaintiff in the following way:

Since the plaintiff was paying for all the educational cost at USC, he would suffer the following damages when USC treated Daniel unfairly in violation of its fairness promise: a) when USC deprived Daniel unfairly by making

unsupported accusations of any credits needed for his graduation, Plaintiff would have to unjustly pay USC again for the same credits and all the educational expenses associated with spending additional time at USC, b) when  USC deprived Daniel unfairly by making unsupported accusations of USC degree/diploma, Plaintiff would lose all the money he has spent for Daniel's education, since USC degree was the sole reason Daniel has attended USC thanks to Plaintiff covering all his educational cost at USC.

The facts stated in this complaint established that USC unfair treatment of Daniel costs Plaintiff $455,000 since case (b) as stated above applies. USC's unfair treatment of Daniel by making and using unsupported accusations against Daniel, deprived Daniel of his USC degree and directly damaged the plaintiff as stated in (b).

 Thus, the fairness  promise  made by USC to the parents including Plaintiff in Spring of 2013,  was not only a clear benefit to the Plaintiff but it imposed a binding obligation on part of USC to its conduct,  which could directly affect the plaintiff as stated above and in fact affected the Plaintiff by damaging him to the extent of $455,000 since USC treated Daniel unfairly and deprived him of USC degree.

Before accepting USC implied in fact offer with the above stated promises USC has made to the parents including the Plaintiff, to send his son to USC and paying for all his educational expenses at USC including paying  tuition and fees to USC, Plaintiff has evaluated other Universities which also have accepted Plaintiff's son.

 Since several Universities have offered much more favorable financial terms and the Plaintiff would be paying for all the educational expenses for his son, Plaintiff has very carefully evaluated all the available materials from USC (catalogs, policies, rules, regulations, etc). Among other documents the Plaintiff has thoroughly studied USC Code of Ethics (officially adapted by USC Board of Trustees on March 28, 2004 understanding  based upon his previous record as a US faculty the criticality of any governing University documents  on how they are affecting Student/Parents/University relationship at a given institution how the

promises made in USC Code of Ethics could affect the Plaintiff directly).
First USC Code of Ethics stated:" At the University of Southern California,
ethical behavior is predicated on two main pillars: a communication to
discharge our obligation in a fair and honest manner…" ~~That statement
means Dishonesty is not allowed at USC by students, faculty, staff and
USC executives including its President.~~  That statement clearly meant to
the Plaintiff that USC is obligated to treat his son, Daniel FAIRLY consistent
with the promise USC made to parents, including the Plaintiff in Spring
2013 visit to USC.    As stated above USC has expressly provided Plaintiff
in its implied in fact offer with binding obligation not to treat Plaintiff's son
Daniel unfairly when he becomes a USC Student and Plaintiff will pay for
his educational expenses at USC.  That binding obligation could affect
plaintiff  the same way as stated above in the case of USC fairness
promise.   Also as stated above in the case of USC fairness promise, that
USC binding obligation provided Plaintiff with direct benefit.


~~In another policy document USC defines Dishonesty as" making false
statements in course of conducting business".~~  USC stated in its Code of
Ethics:" ~~we do not harm or~~ take unfair advantage of anyone  ~~we do not
tolerate lying, deliberate misrepresentations~~".

     Since Daniel is USC student, he is a part of USC community and that
promise clearly extends to him. That promise clearly states  that  USC was
not allowed to take unfair advantage of Daniel by any means which could
constitute taking unfair advantage of Daniel by USC.


USC Code of Ethics  promise" we do not take unfair advantage of anyone"
imposed three binding obligations on USC's conduct which could affect
Plaintiff by the following FACTS:

Allowing USC Professor Tenderich to make unsupported accusations
against Daniel in his official complaint to SJACS which could deprive Daniel
of his earned USC credits and  USC degree  clearly  constitutes taking
unfair advantage of Daniel  by USC  and it  was not allowed by USC's own
admission by  USC's Code of Ethics promise as stated above.    Allowing
USC's SJACS to make subjective, unsupported by any evidence decision,

against Daniel, which would deprive him of earned USC credits and USC degree  constitutes taking unfair advantage of Daniel by USC and  it was not allowed by USC's own admission by  USC's Code of Ethics promise as stated above.   Allowing USC's Appeal Panel to render unsupported, FINAL decision against Daniel, which would deprive him of USC earned credits and USC degree clearly constitutes  taking unfair advantage of Daniel by USC  and  it was not allowed by USC's own admission by USC's Code of Ethics promise as stated above.

 Thus, making unsupported accusations against Daniel, by his USC instructor,  which in fact  were the basis to   deprive  him of properly earned credits and then  USC using such unsupported accusations in its SJACS' case against him  to  finally deprive him of  USC earned credits and degree/diploma  clearly constitutes taking unfair advantage by USC of Daniel in clear violation of its Code of Ethics promise:  " we do not take unfair advantage of anyone..." and it  was  prohibited.

    Thus,  Daniel's USC instructor Tenderich, on  USC's   own admission was not allowed to make unsupported accusations against Daniel which could  deprive him of  earned USC credits and USC degree.  In fact, Daniel's instructor Prof. Tenderich used unsupported accusations against him to initiate USC's Disciplinary action against him.   On its own admission, USC was not allowed to use unsupported accusations against Daniel in its initial SJACS' proceedings  to render its decision against him depriving him of earned credits and USC degree.  In fact, USC's SJACS used  unsupported accusations against Daniel  in its SJACS' case against him  to deprive him of  earned credits and USC degree.  On its own admission, USC's Appeal Panel was not allowed to use unsupported accusations to render its  FINAL decision against Daniel depriving him of earned USC credits and USC degree.  In fact, USC's Appeal Panel  used unsupported allegations to render its decision against Daniel.

 USC's  promise not to take unfair advantage of Daniel  with these three binding obligations as stated above was a clear benefit to the Plaintiff by providing Plaintiff with the assurances that USC would not take away from Daniel his earned credits and deprive him of USC diploma/degree by engaging in an unfair conduct including making unsupported accusations. That benefit  was similar benefit to that as described above in case of

USC's  fairness promise made in Spring of 2013 to parents including the Plaintiff.

USC's  promise not to take unfair advantage of Daniel   with its  three binding obligations as stated above also  imposed  binding obligations on part of USC  on  its conduct which  could affect  the Plaintiff  in the following way:

First, USC promise not to take unfair advantage of Daniel did  not  allow Daniel's instructor, Prof. Tenderich to make unsupported accusations against Daniel in his SJACS' complaint which could deprive him of earned USC credits and USC degree.  It   could affect the Plaintiff directly  since allowing Tenderich to make unsupported accusations against Daniel could result in  changing Daniel's earned grade from C to F  and  could deprive Daniel of credits needed for graduation and USC degree.   Thus,  the Plaintiff would have to pay USC unjustly for getting the same credits again and the full cost associated with spending additional time at USC to unjustly re take the same class.  Depriving Daniel of USC degree  would cost Plaintiff $455,000 full educational cost at USC since USC degree was the sole reason Plaintiff sent Daniel to USC and incurred $455,000 cost.

Secondly, USC's  promise  not to take unfair advantage of Daniel, did not allow SJACS to use unsporting accusations against Daniel and in fact change his earned C grade to F, which  deprived Daniel of  credits needed for graduation and USC degree.  The direct affect on the Plaintiff is stated above in the case of the first obligation.

Thirdly, USC's  promise not to take unfair advantage of Daniel did not allow USC's Appeal Panel to use unsupported accusations against  Daniel to affirm SJACS' unsupported decision, and finally  changed his earned grade C to F, and   deprived  him of USC credits needed for graduation and USC degree,  since USC claims its 100% unsupported  Appeal Panel's decision is FINAL within USC system.  The direct affect on the Plaintiff is stated above in the case of the first obligation.

Receiving the earned credits at USC needed for graduation  and receiving USC diploma/degree by  Daniel was undisputed benefit to not only to Daniel but clearly to the Plaintiff.   With USC degree/diploma Daniel could get good job and support himself and be able to pursue good carrier and become financially independent as USC claimed it would happen due

to uniqueness of USC degree.  Since Daniel is Plaintiff's son, Plaintiff would directly benefit from it, by not worrying about his son's future and the need to support him in the future after he gets his USC diploma/degree.

 USC, as stated above,  fully admitted that degree from USC, not just taking classes from USC would justify for the parents to  cover extremely high educational cost at USC. Without getting the degree the money spent on USC education would be a huge financial loss to the Plaintiff on USC's own admission as stated above.  Therefore, the Plaintiff has suffered a loss of $455,000 since his son was deprived by USC's conduct of  taking unfair advantage of him by his instructor making unsupported accusations against him, USC's SJACS and Appeal Panel using the unsupported accusatioins against Daniel to deprive him of properly earned USC credits and USC diploma/degree.

Thus, USC failure to keep its implied in fact promise not to take unfair advantage of Daniel in its conduct described above resulted in $455,000 loss to the Plaintiff.

 In addition, USC asked Daniel to write a five page essay on ethics since he allegedly committed Academic Dishonesty while  USC provided zero supporting evidence.   For Daniel, that was the ultimate USC UNFAIRNESS and caused Daniel additional huge emotional suffering. Daniel's suffering resulted in Plaintiff's  huge emotional suffering

 Thus,  taking unfair advantage as specified above  affected  the plaintiff  by causing Plaintiff  to suffer  financial losses and huge emotional distress as stated above.

 USC's  Code of Ethics statement " we not take unfair advantage of anyone"  was also  a highly unique statement.  As clearly stated  above and below keeping  promises made by USC in its implied offer/promise made in Spring 2013 and its Code of Ethics  was essential to Plaintiff not to be damaged and not suffer financial losses in educational expenses for Plaintiff's son,  Daniel at USC.

 For comparison, Arizona State University, which made Plaintiff's son hugely more competitive offer  had no mention of not  taking unfair advantage  Promise in its Code of Ethics and never stated "We keep these promises." as USC stated in its Code of Ethics.  Therefore, USC's

promises and undisputed, documented intent in its Code of Ethics to keep its promises made USC unique to the Plaintiff and it was the decisive factor Plaintiff sent his son in August of 2013 to USC so he can get USC degree claimed by USC to be so unique.  In addition, USC policy on Student Conduct Code (SCC) sections 10.II.1 and 15.04  strictly required USC to provide preponderance of evidence standard in its  disciplinary proceedings to Daniel  since he is USC student and Student Conduct Code directly applies to him.  Also as USC stated in Spring 2013 during Plaintiff's visit, USC was required to strictly comply with its publicly stated rules and regulations in a fair manner by strictly applying  to Daniel who is USC student preponderance of evidence standard in Daniel's disciplinary proceedings .since it is a USC rule and Daniel is USC student. Thus,   strict compliance with the preponderance of evidence standard was absolutely required by USC  as was clearly promised by USC to the Plaintiff in Spring of 2013.  That promise clearly extended to USC's SJACS proceedings against Daniel.  Also, USC rules directly apply to Daniel as USC Student and USC is obligated to comply with them by USC's own admission in its own Code of Ethics " we keep promises".  Thus,  USC was required to comply with its preponderance of evidence standard in its SJACS' proceedings against Daniel and not  to deprive Daniel of his earned credits and or degree by USC's failure to comply with its  required and mandatory preponderance of evidence standard.

Again, that was a clear benefit for the Plaintiff regarding any USC Disciplinary actions against DANIEL which would deprive him of earned credits and degree by advancing unsupported accusations  within USC's disciplinary proceedings and causing the Plaintiff direct financial losses as discussed above in the case of USC's  Fairness promise made in Spring of 2013 and USC's Code of Ethics promise not to take unfair advantage of Daniel.

USC's promise to use its preponderance of evidence standard in its disciplinary proceedings  in Daniel's case imposed binding obligations on USC's conduct which could affect the Plaintiff by the following FACTS:

 USC's  promise to comply with its policy on preponderance of evidence  as stated above imposed  a binding obligation on the part of USC  to its conduct  at the initial review and USC  Appeal Panel's  conduct, which

could affect and in fact  affected  the plaintiff by causing him financial losses as stated below.

 USC's  promise to use preponderance of evidence in Daniel's SJACS case initial review by Barton, could affect the plaintiff since Barton's failure to apply this standard would result in depriving Daniel of earned credits required for graduation and USC degree despite the fact that  the preponderance of evidence was 100% in favor of Daniel. Thus, under no conditions, Barton could affirm Tenderich's accusation and impose 100% unjustified sanctions on Daniel within the meaning of the preponderance of evidence standard of proof.  Since the Plaintiff has paid for all educational cost for Daniel, the direct affect on the Plaintiff was stated above in the case of USC's fairness promise and USC's Code of Ethics, " we do not take unfair advantage of anyone"  Promise.

USC's promise to use preponderance  of evidence in USC Appeal Panel's decision, could affect the Plaintiff since Appeal's Panel failure to use preponderance of evidence would deprive Daniel of earned credits required for graduation and USC degree despite the fact that preponderance of evidence was 100% in Daniel's favor. Thus, USC Appeal Panel's failure to apply USC mandatory preponderance of evidence standard of proof would impose, final 100% unjustified sanctions against Daniel depriving him of earned USC credits and USC degree.   Since  Plaintiff has paid for all Daniel's educational cost at USC, the direct affect on the Plaintiff was stated above in USC's fairness promise and USC's Code of Ethics, " we do not take unfair advantage of anyone"  promise.

 Plaintiff has clearly accepted all the ~~statements~~ promises made by USC in Spring of 2013 during Plaintiff's visit to USC, in its Code of Ethics and its other policies, rules and regulations including its  Student Conduct Code (SCC) preponderance of evidence, SCC sections 10.II.1 and 15.04  as the implied promises  which are the integral part of the educational services USC implied in fact offer made to the Plaintiff during the one day visit to USC.  On its own admission, USC stated in its Code of Ethics" when we make promises as the institution, or as individuals who are authorized on behalf of USC, we keep these promises".  Therefore, Plaintiff has been 100% justified expecting USC to comply with  its promises made to the Plaintiff which could affect Plaintiff.  Since USC on its own admission stated

it complies with its promises it is undisputed fact, Defendant USC had actual knowledge that Plaintiff expected 100% USC compliance with its promises which could affect plaintiff, when USC has accepted Plaintiff's payments for his son's educational services at USC. All the promises made by USC as stated above imposed binding obligations on USC's conduct which could affect Plaintiff by causing him financial losses as stated above and in fact greatly affected Plaintiff by causing him great financial losses as stated below. Plaintiff has fully expected USC to keep all its promises to prevent USC from inflicting damages on the Plaintiff when USC accepted knowingly Plaintiff's payments.

Promises made by USC in its implied in fact offer, Code of Ethics and USC Student Conduct policy provided direct benefit to the Plaintiff since USC compliance with these promises would assure the Plaintiff that his son Daniel would receive his USC credits and degree if he duly earned all the credits even if False Accusations or any other form of unfair/taking unfair advantage conduct was ever made against him by USC. Since these promises created binding obligations which could affect the Plaintiff as discussed above to cause him financial losses, under no circumstances Plaintiff would accept implied in fact offer from USC, sent his son to USC and paid for his expenses if USC made no such promises to the Plaintiff. Thus, if USC kept its promises/binding obligations to treat Daniel fairly, not take unfair advantage of him and apply preponderance of evidence standard in his SJACS' proceedings, Plaintiff would have never been damaged and never lost the money paid for Daniel educational services at USC.

Receiving USC degree was the sole purpose of Plaintiff sending Daniel to USC and paying for all the associated costs. Subsequently, between August 2014 and May 2017 Plaintiff's son has attended USC and took all USC classes needed for his graduation from USC. Plaintiff has directly or indirectly (co-signed his son student loan) paid for all the educational costs including tuition, fees, board, food, transportation, books, etc (total of $455,000) for Daniel from August 2013 till May 2017 at USC. The total cost of tuition and fees paid to USC was $211,000. Plaintiff has obligated himself to pay for all the tuition and fees by providing USC with his accounts for the payments plan. Therefore, Plaintiff made himself 100% responsible for Daniel's fees and tuition at USC

Daniel has never obligated himself to make any payments for fees and tuition to USC.  Daniel had absolutely no financial resources to pay any money to USC  so he could not  obligate himself to pay USC any money and was able to attend USC solely because of Plaintiff's payments.  USC had actual knowledge that Plaintiff not Daniel was obligated to pay for Daniel's tuition and fees. USC took $211,000 from Plaintiff and simply deprived unfairly Daniel of his degree and damaged the Plaintiff despite the definite promises USC has made. The only reason Plaintiff has obligated himself to pay for all USC fees and tuition was for USC to give Daniel the diploma after he properly  earns all required USC credits as was clearly promised to Plaintiff.

USC has accepted all Plaintiff's payments and  in consideration of the payments it received from the Plaintiff, USC has allowed Daniel to take all USC classes at USC needed for getting his diploma/degree from USC. Daniel has duly earned all the USC credits required for getting his diploma in Public Relations from USC.

 Per implied in fact promises made by USC to the Plaintiff in the implied in fact offer Daniel should be able to get his diploma from USC since he properly earned all the required credits at USC.  But, first USC took unfair advantage of Daniel in a dual mode.  First, it allowed his Professor to make unsupported accusations against Daniel and then it  used the unsupported accusations to unfairly changed his duly earned grade C to F which in fact deprived  Daniel of the needed credits for getting his USC diploma/degree which is clearly taking unfair advantage of Daniel.  The only reason Plaintiff paid $211,000 to USC and incurred the total educational cost of $455,000 was to get his son's diploma/degree from USC

The above facts establish mutual assent:  Plaintiff obligated himself to pay all tuition and fees at USC for Daniel and USC accepted it; USC obligated itself to give Daniel credits for meeting all the class requirements, give him the degree when he earns the needed credits at USC and treat Daniel fairly and in compliance with Its promises made  during Spring 2013 Plaintiff's visit to USC and in its  Policies and not deprive him unfairly of earned credits and   or a degree.    Plaintiff  has accepted all the promises made by USC as the part of USC implied in fact offer.

17

The above stated FACTS  clearly define the following implied in fact contract  the Plaintiff has with USC.  In consideration for the  Plaintiff's $211,000 paid to USC for his  son's   tuition and fees, USC had the following contractual obligations to the Plaintiff.  First USC was required to provide Plaintiff's son its educational services. As it was marketing and offering to the Plaintiff during full day meeting in the Spring of 2013, e.g classes which  in fact  were provided and the Plaintiff's son took all the needed classes.  Secondly, USC was required as stated above to 100% comply with its implied promises made knowingly by USC to the Plaintiff, including making no false statements in official conduct with his son, no deliberate misrepresentations in official conduct with his son, make no lies in official conduct with his son, not taking unfair advantage of Plaintiff's son and not harming Plaintiff's son.   First, USC was required to allow Daniel to take classes at USC so can earn the credits required for getting the diploma/degree, Secondly, USC was not allowed to treat Daniel unfairly and  take unfair advantage of  him by making unsupported accusations against him by his own instructor which could  deprive him of  earned USC credits and degree . Thirdly, USC was not allowed to treat Daniel unfairly and take unfair advantage of him by using unsupported allegations against him in its SJSCS's proceedings against him which deprived him unfairly of the properly earned USC degree and USC credits.   Fourth, USC was required to follow its Disciplinary policy on preponderance of evidence SCC sections 10.II.1 and 15.04 and not deprive Daniel of his properly  earned degree and or credits  by its failure to apply the preponderance of evidence standard in a fair manner to his SJACS' case.  All USC considerations/obligations  stated above clearly provided benefit  to the Plaintiff as justified above and are very definite since USC breach of its obligations can be objectively determined by the facts stated below.  In addition all the promises made by USC created binding obligations which could affect the Plaintiff by causing him financial losses as specifically discussed above.

B.  Defendant's Conduct resulting in Breach of Implied Contract

The Defendant in fact, made False Statements, made LIES, committed deliberate misrepresentations, took unfair advantage and greatly harmed the Plaintiff's son USC student Daniel Kowbel in conjunction with Daniel FRAUDULENT SJACS case.

USC has made objectively verifiable, FALSE statements, LIED and made deliberate misrepresentations on five occasions in its Official, Daniel SJACS case related conduct. First, USC Professor, Daniel Instructor in PR 429 class, Tenderich has made objectively verifiable FALSE statement in his complaint against Daniel filed with SJACS on October 27th, 2016. He falsely stated: " In addition, the pdf document he submitted as his midterm has a date Stamp of Monday, October 17 11:52:15 A.M." Tenderich lied, since he had actual knowledge of its FALSITY. This statement was highly material to Tenderich's fraudulent prove of his claim.

That statement was a deliberate misrepresentation. In addition to being False, made knowingly with actual knowledge of its falsity, being material, it was made by Tenderich with a specific intent to deceive. Without making this false statement Tenderich could have not proved his conclusion as he fully admitted in his complaint. He had to fabricate this LIE to support his stated conclusion and intentionally deceive that his complaint is true while in fact it is FALSE and FRAUDULENT and Tenderich KNEW IT. In addition Tenderich made his false statement with the specific intent to harm Daniel. And IN Fact, Tenderich did harm the Plaintiff's son. In fact that statement amounts to a FRAUD.

Secondly, Judicial Officer Barton during Dec. 7th, 2016 SJACS interview with Daniel Kowbel, made FALSE statement: " There is preponderance of evidence against you". Barton knew that his statement is FALSE. He LIED since he had actual knowledge of its falsity. The statement was highly material. This statement was in fact a deliberate misrepresentation. In addition to being false, made knowingly with actual knowledge of its falsity and being material, he made it with a specific intent to deceive that during the interview there was absolutely no evidence to support such a statement. In fact that statement amounts to a FRAUD since Barton made it not just with intention to deceive (deliberate misrepresentation), but intent to harm Daniel and in Fact he harmed the Plaintiff's son..

Thirdly, on April 19th Barton sent to Daniel his SJACS Decision. It contained a FALSE statement,: the properties for the attached paper would not contain a creation date after the date the email was sent. " Barton knew this statement is FALSE. In FACT Barton LIED since he had actual knowledge of its falsity. He knew it is highly material since it was the

basis for his SJACS decision.  He made it with a specific intent to deceive that his  SJACS decision is TRUE while he knew his SJACS decision is patently FALSE and  fraudulent.  Thus this statement is a deliberate misrepresentation.   It was also made with a specific intent to harm Daniel. It in fact harmed the Plaintiff's son. It is a FRAUD.

Forth, on July 29th Daniel Kowbel got an email, from Malhotra, a senior adviser to Defendant Carry, containing USC Appeal Panel recommendation.  It contained a patently false statement " the case file shows the review officer appropriately reviewed and considered the evidence in his assessment".  That  FALSE statement was made knowingly. Since it was made with actual knowledge of its falsity it is a LIE. It was highly material. It was made with the specific intent to deceive that initial SJACS decision is TRUE while in FACT it  is false and fraudulent. Thus this statement is a deliberate misrepresentation.  The False Appeal Panel recommendation was predicated on this Patently false and deliberate misrepresentation statement.  In fact it  is a FRAUD since it was made with a specific intent to harm Daniel and it did harm the Plaintiff's son .

Fifth, Maholtra email to Daniel  contains a Patently FALSE statement that USC  Appeal Panel recommendation is final and binding.  She knew  her statement is FALSE and highly material. Since she made with the actual knowledge of its FALSITY,  She LIED.   She made it with a specific intent to deceive that the recommendation is  FINAL and Binding, while she knew that in FACT it was not FINAL and Binding. Again, this statement is a deliberate misrepresentation.

During SJACS Daniel case, Tenderich, Barton, and Maholtra took unfair advantage of Daniel Kowbel by the undisputed fact he is a USC student not a  USC employee while USC through the acts of Defendants Nikias and Carry and USC Provost Quick have  unfairly allowed   its EMPLOYEES Tenderich, Barton and Malhotra undisputed misconducts to make FALSE statements against him, make LIES,  make deliberate misrepresentations, in FACT commit FRAUD against him  to FRAUDULENTLY decide SJACS case against  him and deprived him of any FAIR defenses  in a blatant violation of its CODE of Ethics and implied promises made to the Plaintiff. The facts alleged in this complaint show the advance knowledge on the part of USC Provost Quick of the Fraud committed against the Plaintiff

which imputes to USC and the knowledge of falsity and deliberate misrepresentations as alleged above. In addition Defendants Carry and Nikias per the facts alleged in this complaint knew that the above listed FALSE statements, LIES, deliberate misrepresentations and FRAUD are the basis of the FAILSE and Fraudulent decision USC made to intentionally harm Daniel as stated below with the knowledge of the Defendants and USC Provost Quick of all the alleged acts including FRAUD with intent to harm Daniel. Thus USC through the acts of Defendants Nikias and Carry and Provost Quick has accepted the above stated falsity, LIES, deliberate misrepresentations and FRAUD with intent to harm Daniel by taking no actions, in fact rendering its CODE OF ETHICS implied promises made to the Plaintiff patently false and 100% has broken these implied in fact promises made to the Plaintiff . The alleged FACTS prove that USC intentionally took unfair advantage of Daniel Kowbel since he has no power as a USC Student to FORCE USC to treat him fairly per the mandate USC has per its Code of Ethics and provide him with FAIR under any objective standard defenses again mandated by the USC Code of Ethics and Implied Promises made by USC to the Plaintiff. Daniel is just a USC Student while his accuser Tenderich as well as Barton and Malhotra who falsely and fraudulently sided with the accuser Tenderich were 100% supported unjustly and unfairly by all the power of USC as proved by the following facts. USC top executives, Defendants Nikias and Carry and Carry's boss Quick knew of Falsity and fraudulent acts with intent to harm Daniel committed by Tenderich, Bartion and Malhotra and 100% failed their USC Code of Ethics mandated obligation that they had to serve FAIRNESS in Daniel case and keep their implied promises to the Plaintiff since the undisputed Dishonesty, LIES, deliberate misrepresentartions and FRAUD with intent to harm Daniel by Tenderich, Barton and Malhotra were USC Prohibitive ACTS under its guiding POLICY, CODE OF ETHICS.

USC has greatly harmed Daniel by labelling him falsely Dishonest (Fraudulent/ FRAUD) a 100% unfair intentionally gravely harming Daniel in the clear violation of USC implied promises made to the Plaintiff, changing falsely and fraudulently his earned C grade in PR 429 to F, not allowing him effectively to graduate from USC, asking him to write a five PAGE essay on Ethics since he allegedly is FRAUD, while protecting Tenderich, Barton and

Malhotra  undisputed dishonest and fraudulent  conduct at all cost.   All
these blatant violations of implied in fact promises made to the Plaintiff not
to harm Daniel  and not to take unfair advantage of Daniel were in fact on
behalf of USC since Defendants Nikias and Carry and Provost Quick had
knowledge of it.  In fact the factual allegations made in this complaint show
that in Fact Barton, Tenderich and Malhotra are the one who should be
forced by USC including Defendants Nikias and Carry and Provost  Quick
to be labelled Dishonest and asked to write a five page essay  on ETHICS,
since they are the one who engaged in a fraudulent conduct not Daniel.
But in a despicable  ACT of  intentionally harming  and taking unfair
advantage of its own 100% defenseless student,  Defendant USC is
labelling a totally innocent person based upon all the facts alleged in this
complaint as DISHONEST/FRAUD  while 100% protecting those who
commit FRAUD, LIES, deliberate misrepresentations  and undisputed acts
of Dishonesty as also alleged in this complaint.  All these acts were in fact
approved on Behalf of USC by Defendants Nikias and Carry and Provost
Quick since they knew about it  and did nothing  as alleged in this
complaint.

 Thus as the matter of undisputed FACT USC knowingly, with actual
knowledge or reckless disregard of the truth  ( with the knowledge and
acceptance of these acts by Defendants Nikias and Carry and Provost
Quick)  took advantage and  intentionally  harmed its defenseless
STUDENT, the Plaintiff's son DANIEL KOWBEL.


That is the most blatant, unthinkable,  despicable  and harmful to the
Plaintiff , Defendant USC breach of its IMPIED, CONTRACTURAL
PROMISES it made to the Plaintiff.

 The facts alleged in this complaint demonstrate the conduct of the USC
top administrators, Defendants  Nikias and Carry and its Provost Quick to
allow USC employees to  violate its CODE OF ETHICS IMPLIED
PROMISES  made to  the Plaintiff  and in fact approve blatant violation of
ITS CODE OF ETHICS  by not taking any actions as require per its Code of
ETHICS:  … we do not tolerate lying, making deliberate
misrepresentations…"

~~In summary,  USC has breached the  implied contract by breaching its five contractual obligations: making no FALSE statements in the official business with the Plaintiff's son, no LIES in the official business with the Plaintiff's son, no deliberate misrepresentations in the official business with the Plaintiff's son, not taking unfair advantage of the Plaintiff's son and not harming  the Plaintiff's son.~~

USC has breached  its second and third obligation as stated above.

    a)  USC treated Daniel unfairly and took advantage of him by depriving him of earned Credits in PR 429 class and depriving him of getting his degree from USC and unfairly  labelling him Dishonest with no supporting evidence.

1.  USC used unsupported accusation against him in his SJACS' proceedings

Daniel's instructor, Prof. Tenderich,  in PR 429 in Fall  2016 Semester on October 27, 2016 submitted his complaint against Daniel to SJACS.  As alleged supporting evidence he provided a memo, USC IT log, a hard copy of Midterm paper, and a forwarded email.  In addition on December 16, 2016, USC SJACS Judicial Officer Barton, provided a copy of metadata picture to Daniel, which he claimed corresponded to PR 429 Midterm, PDF file submitted to Tenderich by Daniel on 10/17/2016 11:49:15 PM. Tenderich stated in his memo, paragraph seven:  "In addition, the pdf document he submitted as his midterm has a date stamp of Monday, October 17, 11:52:15 AM and therefore seems to have been created six days after the date due.  He provided no hard copy of metadata with that date.   SJACS claimed a copy of a picture sent to Daniel on December 16, 2016  is Tenderich's corresponding metadata.  But  metadata provided by SJACS has the creation date of PDF file PR 429 Midterm of 10/17/2016 6:52:15 PM.  That is not the date Tenderich stated as the supporting evidence in his memo.

 Furthermore, Tenderich's memo and IT log   state that on 10/17/2016 at 11:56 AM Daniel submitted email to Tenderich,  and attached the same

PDF PR 429 Mid term file, which he later submitted the same day, seven hours later at 11:49:15 p.m.   Since both files are identical, PR 429 Midterm.PDF, the metadata provided by SJACS on December 16, 2016 equally corresponds to the file Daniel submitted to Tenderich on December 17, 2016 at 11:52 a.m and the file he submitted  seven hours later at 11: 49:15 p.m. .  Thus, the alleged file creation date supplied by SJACS  could not represent the original file creation date since a non existing file could not have been sent seven hours before its creation.

Therefore, SJACS  should had  never been  allowed to use  that picture, which provided  absolutely no evidence on original file creation date as the alleged supporting evidence of Tenderich's complaint against Daniel .  The alleged evidence supplied by SJACS to support Tenderich's accusations against Daniel, that PR 429 Miterm PDF file was  created on October 17, 2016  provides no evidence at all on the original PR 429 PDF  file creation. It provides absolutely no evidence that original PR 429 PDF file was created on October, 17 2016 and not on October 11, 2016.

As stated on page 17 of Exhibit A, that was only possible since file creation in metadata could be changed:"  But as stated by my witness, verified by Adobe and proved by my Exhibits E and F, PDF Document Properties has nothing to do with the PDF Document time/date stamp and is subject to changes, editions, alterations, etc by a number of mechanisms.  Therefore, it does not and it can not represent the original document creation date in my case".

Thus, Tenderich made totally unsupported accusations against Daniel which is  100% unfair treatment and taking  unfair advantage of Daniel by USC in clear violation of its promises stated above.  Since the unsupported accusations made by Tenderich,  trigged a USC disciplinary process which could deprive Daniel of properly earned credits in PR 429, which was necessary for his graduation, it could not only deprive Daniel of properly earned credits required for his graduation from USC but also USC degree.   USC allowed Tenderich to make unsupported accusations since he was USC Professor and Daniel's instructor while Daniel was just a USC student.  That is a blatant violation of USC promises not to treat Daniel unfairly and not to take unfair advantage of him, and USC binding

obligation which could affect the Plaintiff and in fact damaged the Plaintiff by causing him financial losses.

2. SJACS treated  Unfairly  and took unfair advantage of Daniel.

In December 2016 Prof. Tenderich assigned C grade to Daniel in PR 429 class.  On 4/19/2017 Barton sent Daniel his SJACS decision.  It states on page 3:  "Based upon preponderance of the information presented in this case, the Office of Student Judicial Affairs and Community Standards finds through Summary Administrative Review, that  the student is responsible for violating section of the Code as listed above."   Page one  lists the sections:  11.21 any act that gains or it is intended to gain an unfair academic advantage… 11.31A : Dishonesty… . It states on  page 2, that Daniel's duly earned grade C was changed by USC's  SJACS to F.

 USC's  decision in fact deprived Daniel not only of duly earned credits but also of USC degree/diploma. In addition, page 2 stated that Daniel was required to write 4-5 page ethics essay.  Paragraph five, stated: Further, the properties of the PDF document submitted by Mr. Kowbel (referring to PDF file Daniel submitted on October 17th at 11:49: 15 p.m.)  show a date stamp of October 17, 2016, confirming that the document was created six days after the deadline for the assignment."   That statement is not supported by any evidence since as stated above file creation date in metadata Barton sent to Daniel on 12/16/2016   could not represent original PR 429 PDF file creation date.  Therefore, metadata provided by Barton provides absolutely no evidence when the original PR 429 PDF was in fact created.   Thus,  SJACS' Barton made his decision affirming unsupported Tenderich's accusation having absolutely no supporting evidence to affirm such unsupported accusations.

. Thus, SJACS changed unfairly Daniel's properly  earned C grade to F depriving Daniel of earned USC credits required for graduation and USC degree.  In addition, Barton asked him to write ethics essay with ABSOLUTELY no supporting evidence.   That is unfair treatment and taking unfair  advantage of Daniel by USC since Barton was Judicial Officer of USC with all the powers vested in him by USC while Daniel was just a USC student.

That is a blatant violation of USC promises to treat Daniel fairly and not take unfair advantage of him, and its binding obligations, as stated above which could affect the Plaintiff and in fact did damage the Plaintiff by causing him financial losses.


3.  Daniel's APPEAL.

Daniel was absolutely APPALED by the unfair treatment he received from USC.   On December 7th, after interview with Barton, Daniel filed a complaint against Barton with SJACS asking for a FAIR Judicial Officer. But SJACS did not even bother to acknowledge his request and allowed BARTON to render baseless and not supported by any evidence decision. On May 3, 2017 Daniel filed his Appeal, Exhibit A.  On page 1 it states: "The review process was fundamentally flawed, Biased, Unfair."


4.  USC Appeal Panel's Decision is totally unfair and took unfair advantage of Daniel.

USC Appeal Panel's Decision, Daniel received from Malhotra, senior adviser to Carry on July 29th, 2017.   The Appeal Panel, page 1 convened on July 17, 2017 to consider Daniel's Appeal discussed above.   The Appeal Panel, page 3 stated: "The SBAP affirms the conclusions and sanctions made by SJACS in case 20160245."  The Appeal Panel's decision provided absolutely no evidence to support otherwise totally unsupported accusations made by Tenderich, and affirmed by Barton with no supporting evidence as explicitly stated above.

The Appeal Panel upheld Barton's decision which had absolutely no supporting evidence as stated explicitly above.  In fact: it changed Daniel's duly earned grade from C to F depriving him of properly earned credits and USC degree.  In addition, it was affirming Barton's decision forcing Daniel to write a five page essay on ethics. That was the ultimate USC unfairness to use unsupported accusations against Daniel by Tenderich, and totally reject 33 page factual Appeal Daniel submitted on May 3, 2017  and deprived him of  duly earned USC credits and a USC degree.  If Daniel had the earned credits for PR 429 he could graduate from USC.

In addition, the Appeal Panel's Decision totally ignored the evidence provided in Daniel's Appeal that  the whole SJACS' interview process was fundamentally unfair, section I of the Appeal " Mr. Barton conducted unfair and biased interview", pages 6 to  7.  Specifically page 7 states: " My father called SJACS asking how Justice can be served at SJACS.  He was told I have the right to replace Mr. Barton with another impartial Judicial Officer but I have to make it in writing. I made very specific request in my complaint sent to SJACS on Dec. 7th asking SJACS to replace Mr. Barton, who has proven during the interview as totally unfair and biased....Mr. Barton has shown in his Summary exactly the same pattern as identified in my complaint, 100% biased and unfair review.  Only 100% wrong decision could result based upon his conduct in blatant violation of USC policy on fairness".  Page 9   states: "When I asked within my full rights as a USC student to present me with any evidence during the interview, Mr. Barton stated:  You need no evidence just to say the truth.   That is a highly UNFAIR treatment to simply imply you are a LIAR and no evidence is needed".     Page 29 of Daniel's Appeal stated: "  Under no circumstances PDF Document properties file creation date can provide evidence that the original file was not created on October 11th in my case based upon the undisputed record.  On the hand, the PDF Document time stamp/date stamp could had never be changed and it would indeed provide evidence if the original file was or was not created on October 11th.   Therefore the totality of evidence 100% dis proves Prof. Tenderich's second claim and the preponderance of evidence is 100% in my favor on the second claim since there is no evidence on the second claim  provided  by Mr.  Barton and Prof. Tenderich".   Section III A " Mr. Barton grossly committed gross negligence   amounting  to reckless conduct in his total failure to follow due diligence as the mandatory requirement of fair and impartial interview", pages 14 to 19 provide additional evidence of unfairness.    Page 19 states: " That was absolutely flawed process, which was solely used by Mr. Barton to exonerate himself and Prof. Tenderich against charges filed by my Father with USC Provost Office.  The only way Judicial Officer Barton could had exonerated himself and Prof. Tenderich is to act in reckless disregard of the truth.  That is exactly what happened in this review process.  USC, implied in fact, fairness standard prohibits Mr. Barton simply to say IT IS IMMATERIAL only because he did not want to understand it so INJUSTICE can be served in my case in order to help

himself and Prof. Tenderich in my Witness complaints against them. That is 100% Unfair, Biased and Flawed review process".

Since USC Appeal Panel decision was final within USC, it in fact finally deprived Daniel of his earned USC credits required for his graduation from USC and USC degree.

That was  ultimately unfair treatment of Daniel and taking unfair advantage of him by USC Appeal Panel, with all the Powers USC President vested in them per USC regulations while Daniel was just a USC students with absolutely no powers at USC to  seek a FAIR treatment at USC.

That is blatant violation of USC's promises not to treat Daniel unfairly and not to take unfair advantage of him, which was binding obligation on USC as stated above which could  affect the Plaintiff  as stated above and in fact did damage the Plaintiff by causing him financial losses associated with paying $455,000 for Daniel's education at USC.

 

  a)  USC has utterly failed to follow its strict,  mandatory publicly stated
        policy on preponderance of evidence in Daniel's  SJACS case.

 

  1.  USC per its publicly stated policies was required to follow its
        preponderance of evidence standard in reaching its initial decision,
        and its Appeal Panel's Decision.

USC policy defined that standard as: "Preponderance of evidence means that based upon totality of evidence and reasonable inferences drawn therefrom, it is more likely than not that the Respondent committed the prohibited conduct charged."

 

  2.  In its initial SJACS' decision, Barton was required to use
        preponderance of evidence  standard to reach his decision.

Daniel's Appeal, Exhibit A, section III A, pages 14 to 19 and section VII, " Mr. Barton violated USC Student Conduct Code Section 10.II.2 Standard of Proof".   Pages 26 to 30 provide direct evidence that Barton has utterly failed to apply this standard.   As stated above, Barton on page 3 of his

decision claimed to uphold preponderance of evidence USC standard. Page 29 of Daniel's Appeal states: " As 100% proved in section IIIa, Exhibit C file creation date of October 17, 6:52:15 p.m. can not represent the original file creation date.  As  the matter of undisputed facts, there is absolutely no evidence on the record to support Prof. Tenderich's conclusion that my PR 429 Mid Term  PDF was not created on October 11th ".   Using  absolutely no evidence to support Barton's decision directly violated USC preponderance of evidence standard as stated above. Barton's decision to change Daniel's C grade to F deprived him of required credits for his graduation and USC degree.  Therefore, USC explicitly violated its promise, which was binding obligation  as stated above which could affect the Plaintiff as stated above and in fact it  did  damage the Plaintiff by causing him financial losses.

3.  In its Appeal Decision,  USC was required to use the same preponderance of evidence  standard which Barton was required to use in his initial decision.

USC Appeal Panel's  decision, totally ignored all the undisputed evidence presented in Daniel's  Appeal, Exhibit A..  It makes absolutely no mention of any direct evidence, sections III and VII of the Appeal,  100% proving that Barton failed to apply that standard in reaching his 100% unsupported decision.  Pages  26  and 27 of Daniel's Appeal stated:" As a matter of undisputed fact, Mr. Barton in his Summary omits the critical second claim Prof.  Tenderich made against, PDF Document dare stamp of 11:52:15 a.m, and the full date in Exhibit C, October 17 6:52:15 p.m.  In terms of any evidence he only states my USC IT email as any evidence supporting my case.  He utterly disregards my Witness two affidavits and all other material evidence stated above properly submitted to SJACS.  Prof. Tenderich's complaint against me has two basic claims: sent email allegedly proving I did not submit  my original mid term report to Prof. Tenderich on October 11th, alleged date stamp again allegedly proving I did not submit my Mid term report to Prof. Tenderich on October 11th.

On the first claim Prof. Tenderich provides just one evidence, USC IT log. It is missing the October 11th entry of my original submission. Just the mere fact that IT log does not contain the October 11th entry, is used as the

evidence to prove that the email in question was never sent.  As discussed above I provided the following evidence to 100% dis prove Prof. Tenderich's first claim.

My Witness Affidavit I presented undisputed evidence which clearly established the following facts:  the email system is not 100% reliable, it can be affected by a plethora of internal and external factors resulting in the actual sent email not reaching the intended recipient.   The above presented summary of undisputed evidence presented by my Witness  and I clearly established preponderance of evidence in my favor on Claim I".

Page 29 of Daniel's Appeal stated: " As 100% proved in Section IIIA: if the original file was in fact created on Monday October 17 6:52:15 p.m. per Exhibit C, IT COULD HAD NOT been sent to him on Monday October 17th at 11"56;15 a.m.  That fact is 100% supported by the factual and documentary evidence…  Under no circumstances PDF Document properties file creation date can provide evidence that the original file was not created on October 11th in my case based upon the undisputed record. On the hand, the PDF Document time stamp/date stamp could had never be changed and it would indeed provide evidence if the original file was or was not created on October 11th.   Therefore, the totality of evidence 100% dis proves Prof. Tenderich's second claim and the preponderance of evidence is 100% in my favor on the second claim  since there is no evidence on the second claim  provided  by Mr.  Barton and Prof. Tenderich".

 Therefore, USC Appeal Panel has utterly failed to apply the required USC standard by not taking into considerations and rejecting all the evidence on the record proving that Tenderich's accusations have absolutely no factual support as stated above.

Since USC Appeal Panel's  Decision was final within USC it deprived Daniel of earned credits required for his graduation and USC degree.  That is a USC's blatant violation of its preponderance of evidence standard and its binding obligation as explicitly stated above which could  affect  the Plaintiff and in fact  did greatly damage the Plaintiff who suffered $455,000 financial loss since USC deprived Daniel of his USC degree.

b) USC's unfairness, taking unfair advantage of Daniel and failure to follow its policy on Student Conduct Code in a fair manner affected the Plaintiff in a highly negative way and damaged him.

The unimaginable unfairness in blatant violation of USC Code of Ethics promise " we do not take unfair advantage of anyone" and very specific promise made by USC in Spring 2013 to the Plaintiff, never treat Daniel unfairly, by depriving Daniel of USC credits and USC  degree/diploma and asking him to write 5 page essay with absolutely no supporting evidence brought Daniel to a clearly critical suicide stage.   USC's despicable unfairness and violation of USC specific Student Conduct policies in its treatment of  Daniel, in total violation of USC promises, has caused the Plaintiff the loss of $455,000 paid for his education at USC and huge continuing emotional distress as directly related to USC bringing Daniel to a critical suicide stage.   Even, if the Plaintiff paid unjustly USC one more time for PR 429, Daniel's mental state  directly created by USC breach of implied in fact binding obligations would had never allowed him to take this class   again   and write the 5 page essay on ethics  in light of despicable and unimaginable UNFAIRNESS USC inflicted on him without huge risk of triggering committing suicide.   Therefore, USC's conduct as described above resulted in the net loss of $455,000 to the Plaintiff.  USC degree was the reason Plaintiff has paid $455,000  for his son's educational expenses at USC, but USC failure to comply with its obligations as stated above in fact deprived Daniel of his USC degree/diploma and directly caused the Plaintiff a loss of $455,000.

C.  Plaintiff's performance under implied contract

 Plaintiff has 100% performed under implied contract by the following facts: Plaintiff has paid USC $211, 000 for his son tuition and fees.

i)      in total the Plaintiff has paid $455,000 for all his son educational expenses at USC following USC offer made to the Plaintiff by sending his son to USC.

31

D. Causation between USC breach of implied  contract and Damages to the Plaintiff.

USC  breach of ~~five~~ two  implied in fact  contractual obligations to the Plaintiff  is a direct result of damages suffered by the Plaintiff.

USC breach of implied in fact contract  is highly material.  Plaintiff did not get at ALL  what was promised by USC to him in the above stated  ~~five~~ two implied in fact promises  on which the Plaintiff  had predicated sending his to USC, paying USC for his tuition and fees and, paying for all other educational expenses at USC.


E. Damages

 Plaintiff  has  suffered not only monetary damages totaling $455,000 since USC deprived Daniel of his degree  which was the sole reason, Plaintiff has paid all the educational expenses for Daniel.   Also implied contract breach by USC resulted in  a great emotional distress of Plaintiff,  causing near irreparable injury on a number of occasions , which continues up to date, inflicted on him by  USC Breach of implied  contract which directly brought Daniel to  a suicide stage in the totally unfair manner. ~~But a great emotional distress inflicted on him by USC Breach of contract.~~

~~Claim Two:  Fraud and Fraudulent conduct against USC.~~

~~A. Fraud and Fraudulent Conduct~~

~~The Defendant USC was required not commit any FRAUD  intentionally harming the Plaintiff.  As the matter of undisputed fact Defendant USC employees have engaged in a fraudulent conduct against the Plaintiff by committing Fraud with intent to harm the Plaintiff on two occasions.  On April 19th 2017 USC SJACS Judicial Officer Barton sent his initial SJACS decision to  the Plaintiff's son.  It contained patently FALSE, objectively verifiable statement: "the properties of the attached paper would not contain a creation date after the date the email was sent".   Barton knew it is a false statement. HE LIED.  In his decision he stated he reviewed all the evidence provided to him".  On February 1st, 2017, Plaintiff's son sent email titled " Additional Evidence for the case record" to SJACS.  Line 1 states:~~

Exhibit  B1 lists the corresponding date: 10/17/11:56 A/M.  Line 3 states,
Exhibit C fabricated by Barton, false PDF file creation date of 10/17/2016
6:52: 15 P.M.   Conclusion one states:   The alleged file creation fabricated
by Barton is patently false.  A file created at 6:52:15 P.M. on October 17th
could have never been emailed to Tenderich several hours earlier as
documented in Exhibit B1.   That statement, made by Barton,  was highly
material  and the most critical to Barton's decision to side with the FALSE
accuser   Tenderich against the  Plaintiff's son.  It was made with a clear
intent to deceive that Tenderich's complaint is supported by FACTS  while
as the matter of Fact Tenderich's complaint is FALSE and Fraudulent as
stated in the Claim one.   The false statement made by Barton is in FACT
an intentional misrepresentation as shown above. It was made with intent
to harm the Plaintiff  by inflicting  on the Plaintiff a  severe emotional
distress by the following facts.  On Dec. 15th, 2016, Defendant Carry did
forward the Plaintiff's complaint to SJACS Head, Budar-Turner.  On Dec.
22, the  Plaintiff's son attached that complaint as additional evidence sent
to Barton.

The complaint states as follows:  "In addition Dr. Tenderich fraudulent
conduct as described above caused mental damage to Daniel Kowbel.
Since Daniel Kowbel is my son I have actual knowledge he has suffered
from anxiety and depression over the past several months and is on
medication. By fabricating lies to support his complaint against Daniel
Kowbel, Dr. Tenderich has knowingly hurt Daniel Kowbel by destabilizing
his mental condition.  A person on depression can be driven to suicide by
being subject to a huge external stress.  Since these lies were intentional to
prove a complaint against Daniel they clearly are part of the external stress
inficted on Daniel by Dr. Tenderch by his fraudulent complaint.  These
fabricated lies could have killed Daniel Kowbel".   Thus, clearly Barton
knew the huge emotional distress  the  Plaintiff was under from December
2016 till April 19th, 2017 when he sent his complaint.  Barton knew the
following FACTS: i) Tenderich's complaint is  false and fraudulent, ii)  He
knew that his decision is False and Fraudulent iii) he knew about all the
complaints  the Plaintiff made against HIM   and other Plaintiff's
correspondence with USC on that case  since Ms. De Miero of the UCS
Provost Office informed  the Plaintiff she forwarded  ALL the Plaintiff's
correspondence  on that subject to SJACS and Barton acknowledged in his

decision that he reviewed  all the correspondence iv) he  also knew that HIS FALSE and FRAUDULENT SJACS decision would greatly harm the Plaintiff who has lived the past several months (December 2016 till April 2017) under  emotional distress, constantly worrying if his son will commit Suicide or not as a result OF USC FRAUD and other miscounducts.  Thus Barton made the fraudulent misrepresentation intentionally to further increase  and intensify the  emotional distress  the Plaintiff was under due to USC Breach of Implied Contract.  In FACT Barton's  intentional misrepresentation has greatly harmed the Plaintiff by causing totally acute emotional distress and greatly compounding the emotional distress.

On July 28th, Malhotra sent an email to Plaintiff's son containing the following intentional misrepresentation.  An objectively verifiable FALSE statement: "the case file shows the review officer appropriately reviewed the evidence in his assessment".   The Plaintiff's son Appeal filed on May 3, 2017.  Sections IIIA, III E and section VII provide undisputed evidence on the Falsity of that statement.  The statement was made knowingly.  IT was a LIE.  It was highly material to the patently FALSE USC Panel Recommendation. It was made with specific intent to deceive that BARTON's  False and Fraudulent decision is TRUE.  It was the most critical element in the Appeal Panel to uphold, Barton's patently FALSE and fraudulent decision.  It was an intentional misrepresentation.  The Appeal Panel and its adviser knew the following FACTS:  i) Tenderich's complaint is false and fraudulent, ii)   Barton's decision is false and fraudulent, iii) their own recommendation is false and fraudulent, iv) about all the complaints the Plaintiff  made since they were part of the SJACS record, they did review .   Intentional misrepresentation  was made with intent to inflict harm on the Plaintiff by causing the Plaintiff to reach an acute emotional distress by the following facts.  The Plaintiff has corresponded since Dec. 10 th 2016 till April 2017  with USC including  top executives, Nikias, Quick. and  Carry  trying in vain  stop the  USC FRAUD resulting in continuing emotional distress caused by  USC misconduct and FRAUDULENT conduct has caused the Plaintiff which as stated above Ms. De Miero forwarded to SJACS.  The Appeal Panel recommendation even mentioned the Plaintiff's  correspondence  which became the part of the SJACS record.   Thusthe Appeal Panel and its adviser also had  Plaintiff's

complaint, specifically referenced above.  Thus the Appeal Panel and its adviser were fully aware of the emotional distress the Plaintiff was under constantly worrying about his son Daniel committing suicide because of undisputed USC misconducts.  The Appeal Panel and its adviser knew that another FALSE/ Fraudulent act by USC  will cause the Plaintiff an acute emotional distress.  The intentional misrepresentation was intentional to cause the Plaintiff to suffer greatly compounded  emotional distress.

B.  USC employees fraud imputes to USC

 Based upon information and believe the Plaintiff alleges the USC through its Officer, USC Provost Quick had the advance knowledge of the alleged fraudulent conduct and acted in a conscious disregard. In fact on April 21, 2017 the Plaintiff  sent the email to Mr. Quick: " I hold you responsible for this miscarriage of justice"  referring to the fact that Mr. Quick not only  had the advanced knowledge of the FRAUD committed against the Plaintiff by Barton as alleged in this complaint but on behalf of USC as its Provost acted in a conscious disregard of this Fraud.

Thus, the  Plaintiff is entitled to seek punitive damages  against Defendant USC in addition to compensatory damages under California Code 3294.

C.  Causation between USC fraud and Plaintiff's damages.

As a direct result of USC FRAUD the Plaintiff suffered a great emotional distress and  huge anxieties compounding the emotional distress caused by USC breach of its implied contract..

D.  Damages.

USC Fraud has caused  the Plaintiff  compensatory damages in the form of acute emotional distress.  Plaintiff also  seeks punitive Damages to punish USC for  its unimageable and despicable ACTS of  FRAUD committed against the Plaintiff with the advanced knowledge of its Provost Quick.

Claim three.  Negligence against  Carry and Nikias.

A.  Duty of care owed by Defendant  Carry to  he Plaintiff.

The Plaintiff conduct with Defendants Carry and Nikias was based upon well-established, principle that: everyone has a duty of care if the person is involved in any activities/conduct which can foreseeably harm/injure another person. The Plaintiff has always complied with this principle in any of his conduct/activities including any business and private life activities. Thus the Plaintiff fully expected Defendants Carry and Nikias to uphold this standard. The fact that Defendant Nikias is USC President and Defendant Carry is USC VP clearly meant to the Plaintiff that both Defendants were required to know that principle, and not only knew that Principle but also knew they must comply with it or face the consequences of liability for their actions. The duty of care Defendant Carry owed to the Plaintiff is clearly established in this complaint by the factual conduct between Defendant Carry and Plaintiff. The underlying facts are as follows. The relationship between the Plaintiff and Defendant Carry is as follows. Defendant Carry as USC VP for Student Affairs is responsible for USC SJACS. On Dec. 10th 2016 the Plaintiff did file an official complaint against SJACS with USC Vice Provost Grady. She has forwarded it Carry. He acknowledged it in the email dated Dec. 15th. That complaint contained the sections described in Claim Two. It contained very specific statement regarding very high risk for suicide to Plaintiff's son due to USC FRAUD and other miscounducts. Thus Defendant Carry clearly had the full and undisputed foreseeability of grave harm to the Plaintiff by Defendant's Carry conduct/activities as described below. In fact, Defendant Carry knew that the Plaintiff is under severe emotional distress facing constant threat of his son committing suicide because of USC FRAUD and other miscounducts. Defendant Carry knew that his conduct/activities as described below not only could but 100% would result in grave/or irreparable injury to the Plaintiff. Thus the facts alleged in this complaint go well- beyond just the foreseeability standard used by the Plaintiff to allege the owed duty to the Plaintiff, but in FACT they amount to actual 100% probability standard. Thus the duty of care Defendant Carry owed to the Plaintiff is undisputed under these factual allegations. The activities/conduct giving rise to this claim against Defendant Carry arise from Defendant's Carry handling of the Appeal Panel recommendation. As clearly stated below these activities could not only foreseeably inflict a grave/or irreparable injury on the Plaintiff but actually Defendant Carry knew that his conduct/activities as alleged in this claim carry 100%

probability of intrinsic risk endangering the Plaintiff.  Thus the duty of care on the part  of Defendant Carry was mandatory to prevent the injury to the Plaintiff.

   B.  Defendant Carry  breached his duty owed to the Plaintiff.

  On January 18 th,  2017  Ms. De Miero of the  USC Provost Office communicated with the Plaintiff, that on behalf of Provost Quick, Vice Provost Grady and Defendant Carry she will handle all the complaints Plaintiff has against USC. Subsequently she informed the Plaintiff  that she is in possession  of all the emails on that subject. Afterwards the Plaintiff provided additional, undisputed evidence on the Falsity and fraudulent activities made with intent to harm the Plaintiff to Mr. Quick's Office which included Defendant Carry per Ms. De Miero assertions.   Thus, Defendant Carry knew that SJACS case is false and fraudulent based upon fabricated LIES by  USC employees to harm the Plaintiff.    On July 29th Malhotra, his senior adviser cc him on  her email containing false and fraudulent Appeal Panel recommendation so he can act on it.   He was required to act on  the Appeal Panel recommendation in order to exercise  the duty of care he owed to the  Plaintiff, as clearly stated above and  ACT on it since he knew it was false and fraudulent  based upon fabricated LIES by USC employees to harm the Plaintiff and it would  100% cause grave injury if not irreparable injury  to the Plaintiff.    Defendant Carry had not only  the  foreseeability of the harm to the Plaintiff caused by his failure to perform  his duty owed to the Plaintiff but he knew he would certainly inflict grave if not irreparable harm to the Plaintiff by taking no action  and breaching the duty he owed the Plaintiff.  It was a catastrophic failure  by Defendant Carry to comply with duty of care he owed to the Plaintiff  to prevent the  Plaintiff's injury which was 100%  preventable if Defendant Carry simply  complied  with the duty of care he owed the Plaintiff. As the matter of undisputed FACT that is exactly what happened after July 30th, when the Plaintiff received a   copy of Malhotra  email and Defendant Carry took no required actions  per his duty owed to the Plaintiff to prevent the harm to the Plaintiff caused by that email.   Defendant  Carry had clear foreseeability of the grave if not irreparable  injury  he inflicted on  the Plaintiff by taking no actions and causing the Plaintiff grave injury just short of irreparable injury. By the ordinary duty of care, Defendant Carry would 100% prevent the grave injury to the Plaintiff  caused by Defendant Carry activities/conduct as

described above.   Carry had 100% breached his duty  of care owed to the Plaintiff.  It was a truly catastrophic breach of duty.

C. Causation

As stated above Defendant's Carry conduct  is the cause of   grave injury suffered by the Plaintiff after July 30th  and greatly compounding the emotional distress resulting from USC  FRAUD and Breach of Implied Contract

D. Damages

 The Plaintiff  has suffered severely grave  emotional distress  and injury as a  result of Defendant's Carry breach of duty care owed to the Plaintiff. That injury greatly compounded the injury suffered by the Plaintiff due to USC Breach of Contract and Fraud.

E.  Duty of care owed by Defendant Nikias to the  Plaintiff.

The duty of  care Defendant Nikias owed the Plaintiff can be established by the FACTS underlying the relationship between Defendant Nikias and the Plaintiff. The relationship between Nikias and the Plaintiff spans from December 2017 till now.  The Plaintiff has initially sent some emails to Nikias but was told by USC Provost Quick Office on January 18th,  2017 to deal with the Provost OFFICE not Defendant's Nikias Office.  That situation changed,  after July 29th, 2017.    The  Plaintiff on July 31 st, 2017   filed an official complaint against Defendant Carry with Defendant Nikias on the basis that Defendant Carry has failed his duties as USC VP and additional complaints on the   Patently FALSE Appeal Panel Recommendation. Subsequently USC Counsel James Ball informed the  Plaintiff  he  was asked  by  the  Defendant Nikias to work with the  Plaintiff to address  the Plaintiff's complaints.   The Plaintiff has acted  in good faith   and submitted virtually hundreds of pages of evidence to USC Counsel James Ball.  On August 25th, the Plaintiff submitted the final evidence, which concluded with the following statement:  Time can not travel back.  Daniel has no power to send a non existing file.   The Plaintiff has sent all these emails so Defendant Nikias can act on the complaints sent earlier to him.  In addition,  the  Plaintiff  has supplied USC Counsel Ball the complaint mentioned above stating the huge distress  the Plaintiff is under facing under  high risk of his  son suicide because of USC FRAUD and other

miscounducts. The Plaintiff had provided undisputed evidence to Defendant Nikias through James Ball, that USC is causing the Plaintiff great harm by the Appeal Panel recommendation email from Malotra to the Plaintiff's son dated July 29th. Defendant Nikias had an undisputed foreseeability about grave if not irreparable  injury his conduct/activities described below would cause  to the Plaintiff. In fact Defendant Nikias knew that Plaintiff would suffer a great injury as described below as a result of his activities/conduct described below.  Thus the facts alleged in this complaint go well beyond just the foreseeability standard used by  the Plaintiff  to allege the owed duty to the Plaintiff and amounted to actual 100% probability standard.   Thus the duty of care Defendant Nikias owed the Plaintiff is undisputed under these factual allegations. The activities/conduct giving rise to this claim against Defendant  Nikias arise from Defendant Nikias handling of  the Plaintiff's complaints against  the False Appeal Panel recommendation and the negligence committed by Defendant Carry.  As clearly stated below these activities/conduct had not only  foreseeable grave injury to the Plaintiff but Defendant Nikias knew that in fact his activities/conduct  carry 100% intrinsic risk of endangering the Plaintiff.  Thus duty of care  on part of Defendant Nikias was  absolutely mandatory to prevent the injury to the Plaintiff.


F.  Defendant Nikias breach of duty owed to the PLaintiff.

Defendant Nikias had total control at the time of the situation that gave rise to the harm  the Plaintiff  has endured and is enduring now  due to his failure of duty  In light of undisputed Facts provided to USC Counsel James Ball, per Defendant Nikias request,  Defendant Nikias  had undisputed duty of care owed to the Plaintiff  to ACT on  the FALSE  Appeal Panel Recommendation since he knew it  is FALSE and fraudulent  designed by his employees to harm the Plaintiff and it would certainly  cause a grave if not irreparable injury to the Plaintiff.   In fact Defendant Nikias did not ACT on  the false and fraudulent  APPEAL PANEL recommendation intended to harm the Plaintiff causing the Plaintiff grave injury just short of irreparable injury.   In fact Defendant Nikias had not only the foreseeability of the harm to the   Plaintiff caused by his failure to perform the duty he owed the Plaintiff but he knew he would certainly inflict grave if not irreparable harm to the Plaintiff by his breach of duty by taking no actions on the Fraudulent

Appeal Panel recommendation made with intent to harm the Plaintiff..   The Plaintiff proved  beyond any doubt to  Defendant Nikias via  his USC Counsel James Ball  that the Appeal Panel Recommendation  is  FALSE AND FRAUDULENT based upon SCIENCE FICTION: "TIME TRAVEL" not actual facts and Defendant Nikias knew that the Appeal Panel recommendation  is  a FRAUD BASED upon Science Fiction fabricated lies by his employees, A FRAUD made   up  by  his employees intentionally designed to harm  and  keep harming the Plaintiff.  Thus  Defendant  Nikias knew that he would cause a grave injury if not irreparable to the Plaintiff by not taking any actions on it and his  breach of ordinary care owed to the Plaintiff.  That is exactly what happened to the Plaintiff on October 20th, 2017.

 As a direct result of undisputed breach of duty owed by Defendant Nikias to the Plaintiff on  October 20 th, the most  acute emotional distress, just short of irreparable  injury to  the Plaintiff  took place.  Clearly after July 31th 2017 Defendant  Nikias  had not only the undisputed foreseeability of the injury to the Plaintiff, but  total control over the situation which caused the Plaintiff  most acute, just very short of irreparable  injury on October 20th. Defendant Nikias did absolutely nothing to prevent the huge injury the Plaintiff has suffered on October 20th  and afterwards because of Defendant Nikias catastrophic  failure to comply with the duty of care he owed to  the Plaintiff.  By the ordinary duty of  care Defendant Nikias would 100% prevent the grave injury to the Plaintiff caused by his actions/conduct as described above.  Thus,  Defendant Nikias has breached his duty of ordinary care he owed to  the Plaintiff.  It was a catastrophic failure of breach of duty.

   G. Causation

As stated above Defendant Nikias is the cause of grave injury suffered by the Plaintiff  between  October 20th  and now affecting the Plaintiff very severely till now by compounding the emotional distress caused by USC Fraud, Breach of Contract and Defendant's Carry Negligence..  On October 27th  the Plaintiff filed the lawsuit against Defendant Nikias to finally end  the Plaintiff's continuous injury  greatly compounded by Defendant  Nikias  breach of duty owed to the Plaintiff.   That is why the Plaintiff is also requesting injunction relief to prevent irreparable injury inflicted on the Plaintiff.

H. Damages

The Plaintiff has suffered greatly componded emotional distress and great injury   as a result of Defendant Nikias breach of duty.