UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07896 JAK (ASx) | Date | November 27, 2018 |
| Title | Witold Kowbel v. University of Southern California, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) (DKT. 29)

## I.     Introduction

Witold Kowbel ("Plaintiff"), who is self-represented, filed this action on October 27, 2017. Dkt. 1. He originally advanced claims for breach of contract, fraud and negligence against the University of California ("USC" or "Defendant") and two of its employees -- C.L. Max Nikias ("Nikias") and Ainsley Carry ("Carry"). *See* First Amended Complaint ("FAC"), Dkt. 13. The allegations in the FAC arise from the enrollment of Plaintiff's son as an undergraduate student at USC, and certain disciplinary sanctions that his son received.

On June 20, 2018, an Order was issued dismissing the FAC with leave to amend. *See* Dkt. 24 ("June 20 Order"). On July 10, 2018, Plaintiff filed a Second Amended Complaint. Dkt. 28 ("SAC"). The SAC does not name Nikias or Carry. The SAC does not include the fraud and negligence claims. The sole cause of action is for breach of contract against USC. *See id.* at 5.[1]

On July 26, 2018, Defendant filed a Motion to Dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 29 ("Motion"). Plaintiff filed an opposition (Dkt. 33 ("Opposition")) and Defendant replied (Dkt. 34 ("Reply")). A hearing on the Motion was conducted on November 5, 2018, and the matter was then taken under submission. Dkt. 35. For the reasons stated in this Order, the Motion is **GRANTED**.

## II.    Allegations in the SAC

The SAC, like the FAC, is not a model of clarity. The following summary is based on the most reasonable and favorable interpretation of the allegations.

---

[1] The allegations in the SAC are not presented in numbered paragraphs. Consequently, this Order cites the docket page numbers of that pleading.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07896 JAK (ASx) | Date | November 27, 2018 |
|---|---|---|---|
| Title | Witold Kowbel v. University of Southern California, et al. | | |

      A.      The Alleged Contract Between Plaintiff and USC

Daniel Kowbel ("Daniel") is Plaintiff's son.[2] Daniel attended USC as an undergraduate student.[3] Plaintiff alleges that Daniel was accepted by USC in Spring 2013, and that he and Daniel were invited by USC to visit its campus. *See* SAC, Dkt. 28 at 5. During this visit, it is alleged that USC engaged in certain marketing efforts designed to "convince the [p]arents of potential USC students to send their children to USC and pay to USC for their services [instead of] sending their children [to] other schools . . . ." *Id.* These efforts allegedly included: (i) emphasizing the quality of the education provided by USC to its students; (ii) stating the value of a USC degree for future career opportunities; and (iii) promising that USC will treat students fairly and objectively in applying its policies to them. *See id.* at 5, 7.

The SAC also alleges that USC maintains a Code of Ethics, which Plaintiff reviewed carefully prior to the decision that Daniel would enroll at USC. *Id.* at 9. The Code of Ethics includes certain representations about USC's commitment to fairness, ethics and the respectful treatment of all members of the USC community. *Id.* at 9-10.

Plaintiff alleges that he interpreted the representations made by USC both during his visit to campus in Spring 2013 and in its Code of Ethics as binding promises. The alleged promises included that USC would neither act unfairly in making allegations that Daniel engaged in any academic misconduct nor deprive Daniel of course credits or a degree based on such unsupported allegations. *See id.* at 8-10. Plaintiff alleges that he relied on these promises in deciding to have Daniel enroll as an undergraduate student at USC. He did so notwithstanding that other colleges and universities had also accepted Daniel for admission, and offered "more favorable financial terms" than those of USC. *Id.* at 9.

It is alleged that these representations constituted an offer of an implied contract between Plaintiff and USC. It is also alleged that Plaintiff agreed to this contract by paying Daniel's tuition. *See id.* at 17-18. Plaintiff alleges that he paid $455,000 to USC in connection with Daniel's enrollment there. *Id.* at 4. This amount includes $211,000 in tuition and fees, and $244,000 for all other costs associated with Daniel's enrollment at USC. *Id.*

      B.      Disciplinary Proceedings

As explained in the June 20 Order, which is incorporated by this reference, Plaintiff alleges that USC breached the implied contract with him by conducting unfair and unwarranted disciplinary proceedings against Daniel in October 2016. These proceedings, which resulted in the imposition of certain academic sanctions, were conducted by USC's Student Judicial Affairs and Community Standards ("SJACS"), an administrative body that oversees student discipline. *See generally id.* at 18-27; *see also* Dkt. 29 at 6 (defining SJACS).

---

[2] The use of the first name to identify those with the same surname is a common practice used for clarity. No disrespect is intended by using this common protocol in this Order.
[3] The SAC does not allege the time period when Daniel was enrolled. The memorandum in support of the Motion states that Daniel is presently enrolled at USC. *See* Dkt. 29 at 6. At the hearing, Plaintiff stated that Daniel is no longer a student there. Whether Daniel remains enrolled at USC is not material to the issues addressed in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07896 JAK (ASx) | Date | November 27, 2018 |
|---|---|---|---|
| Title | Witold Kowbel v. University of Southern California, et al. | | |

The SAC alleges that, on October 27, 2016, Professor Tenderich ("Tenderich"), who was teaching a class in which Daniel was enrolled, submitted a complaint to SJACS regarding certain irregularities in a paper that Daniel had submitted. SAC, Dkt. 28 at 18-19. The SAC appears to allege that Tenderich claimed that Daniel had misrepresented when the paper was written and submitted. *Id.* at 19.

The SAC next alleges that, in December 2016, Tenderich gave Daniel a "C" grade for the course. *See id.* at 20. It is also alleged that, on April 19, 2017, following an investigation into the allegations by Tenderich, the SAJCS determined that Daniel had violated the academic policies of USC, and changed his grade from "C" to "F." *Id.* Daniel was also required to write an essay about the importance of ethical behavior. *Id.* at 21.

It is alleged that Daniel then appealed the SJACS decision to the USC Appeal Panel. *Id.* at 22. A copy of the written materials submitted by Daniel in connection with this appeal are attached to the SAC. *See* Ex. A to SAC, Dkt. 28 at 29-62. The appeal was denied in July 2017, and a written decision affirming the conclusions and disciplinary sanctions imposed by the SJACS was provided to Daniel. SAC, Dkt. 28 at 22.

Plaintiff alleges that the investigation and decision-making process through which Daniel was sanctioned breached USC's contractual obligation to Plaintiff that it would treat Daniel fairly. *See id.* at 10-11, 14, 24-27. Specifically, it is alleged that the SJACS lacked sufficient evidence upon which it reasonably could have concluded that Daniel had made a misrepresentation about the timely submission of his paper. It is also alleged that USC officials failed to apply a "preponderance of the evidence" standard in evaluating the allegations as to Daniel, which they were required to do pursuant to USC policies. *Id.* at 24-26. Consequently, it is alleged that the Appeals Panel should not have upheld the SJACS determination. *Id.* at 19-23.

Plaintiff alleges that USC's disciplinary determinations deprived Daniel of the academic credits necessary to earn a degree at USC. *Id.* at 23. Plaintiff seeks damages of $455,000 "since USC deprived Daniel of his degree which was the sole reason [] Plaintiff [] paid all the educational expenses" for Daniel. *Id.* at 27. Plaintiff also alleges that he experienced significant emotional distress due to USC's alleged misconduct. *Id.* at 27-28.

**III.     Analysis**

      A.     General Legal Standards

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendants liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07896 JAK (ASx) | Date | November 27, 2018 |
|---|---|---|---|
| Title | Witold Kowbel v. University of Southern California, et al. | | |

A defendant may move to dismiss a complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Such a motion may be granted when the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations of the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this policy is to be applied "with extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 1990), allowing leave to amend is inappropriate in circumstances where litigants have failed to cure previously identified deficiencies, or where an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

  B. Application

    1. <u>Specific Legal Standards</u>

As stated in the June 20 Order, to state a claim for breach of contract, Plaintiff must allege facts showing the existence of a contract, whose terms were breached by a defendant, thereby causing injury to a plaintiff. *See, e.g.*, *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). A contract can be express or implied by conduct, *see* Cal. Civ. Code § 1621. A breach of contract claim based on an implied contract "reflects no difference in legal effect, but merely in the mode of manifesting assent." *Green Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 430,433 (2015) (internal citations and quotation marks omitted) (citing *Ret. Emps. Assn. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178 (2011)).

Implied in fact contracts are distinguishable from quasi-contracts, which "unlike true contracts . . . are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises." Witkin, Summary of California Law, 11th ed. (2017) § 103. Thus, unlike "the quasi-contractual quantum meruit theory, which operates *without* an actual agreement of the parties, an implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998) (internal quotation marks and citations omitted).

    2. <u>June 20 Order</u>

The June 20 Order concluded that the FAC failed sufficiently to allege either a contract between Plaintiff and USC, or any material breach by USC. *See* Dkt. 24 at 6. Thus, the allegations were insufficient to show that USC made a binding commitment to Plaintiff, or that USC's alleged conduct was sufficient to demonstrate its intent to be bound. *Id.* It was also determined that, to the extent the alleged contract included a promise that USC would not engage in fraud toward any student in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07896 JAK (ASx) | Date | November 27, 2018 |
|---|---|---|---|
| Title | Witold Kowbel v. University of Southern California, et al. | | |

connection with disciplinary proceedings, this would not constitute a contractual commitment because USC has an independent, legal obligation not to engage in fraud. *Id.* at 6-7.

        3.        <u>Whether the SAC States a Claim for Breach of Contract</u>

The SAC includes new allegations about the nature of the claimed implied contract between Plaintiff and USC. These include the following:

> In consideration for the Plaintiff's $211,000 paid to USC for his son's tuition and fees, USC had the following contractual obligations to the Plaintiff. First, USC was required to allow Daniel to take classes at USC so he could earn the credits required for getting his diploma/degree[.] Secondly, USC was not allowed to treat Daniel unfairly and take unfair advantage of him by making unsupported accusations against him by his own instructor which could deprive him of earned USC credits and USC degree. Thirdly, USC was not allowed to treat Daniel unfairly and take unfair advantage of him by using unsupported accusations against him in its [SJACS] proceedings against him and deprive him unfairly of the properly earned USC degree and USC credits. Fourth, USC was required to follow its Disciplinary policy on preponderance of evidence, SCC sections 10.II.2 and 15.04 in its SCJACS' proceedings against Daniel at both initial review and the Appeal stage and not deprive Daniel of his properly earned USC degree and USC credits by its failure to apply the required preponderance of evidence standard to his SJACS' case.

SAC, Dkt. 28 at 18.

USC does not expressly dispute that it had a general obligation to allow Daniel to take classes for the purposes of earning a degree. Thus, it effectively concedes that, in general, the payment of tuition imposes certain contractual obligations on academic institutions to provide educational services to those whose tuition has been paid. *See, e.g.*, *Paulsen v. Golden Gate Univ.*, 25 Cal. 3d 803, 811 (1979) (en banc) (recognizing private university's general obligation to provide the education, and associated degrees and credits, upon the payment of tuition) (citing *Zumbrun v. Univ. of S. Calif.*, 25 Cal. App. 3d 1, 10 (1972) ("The basic legal relation between a student and a private university or college is contractual in nature.")). California courts also have recognized implied contracts between colleges or universities and students who have been enrolled and whose tuition has been paid. *See Kashmiri v. Regents of Univ. of Calif.*, 156 Cal. App. 4th 809, 827-29 (2007) ("If the catalogue or the website of the university does not expressly state that it intends to be bound by these statements, such statements become part of the enrollment agreement only if they are implied-in-fact contract provisions.") (internal quotation marks omitted).

With respect to the application of these principles to the allegations in the SAC, two issues are presented. *First*, the implied contracts in the cited cases were between the student and the educational institution. The cases do not address whether there is such a contractual relationship between the institution and a person who is paying tuition on behalf of a student. Plaintiff has cited no authority to support the position that there is an implied contract between such parties.

*Second*, the SAC does not allege that USC barred Daniel from taking classes he needed to earn a degree. Rather, it alleges that the disciplinary action taken against Daniel prevented him from earning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07896 JAK (ASx) | Date | November 27, 2018 |
|---|---|---|---|
| Title | Witold Kowbel v. University of Southern California, et al. | | |

an academic credit for one course when his grade was changed to an F, that such credits are needed to earn a degree and that this denial of a course credit breached a separate alleged contractual obligation to treat Daniel fairly. *See* SAC at 17. This alleged unfair treatment arose from USC's claimed failure to follow its own disciplinary procedures during the SJACS investigation, decision, and the subsequent appeal. *See id.* at 18.

The SAC fails adequately to state a claim with respect to these alleged contractual obligations to Plaintiff. Although the SAC adequately alleges that Plaintiff intended to be bound by the claimed, implied contract, it fails to allege that USC acted in a manner that reflected such intent. As noted in the June 20 Order, although an implied in fact contract "may be inferred from the conduct, situation, or mutual relation of the parties, the very heart of this kind of agreement is an intent to promise." *Div. of Labor Law Enf't v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977); *Unilab Corp. v. Angeles-IPA*, 244 Cal. App. 4th 622, 636 (2016) ("Like an express contract, an implied-in-fact contract requires an ascertained agreement of the parties."). The SAC does not allege facts that, if established, would be sufficient to show that by accepting the tuition and fees paid by Plaintiff on behalf of Daniel, USC implicitly agreed with any person to do more than provide sufficient courses so that Daniel would have the opportunity to earn a degree.

The alleged statements made by USC personnel during the campus visit, and those in USC's Code of Ethics, reflect a general commitment to fairness toward students. However, they are not sufficient to show the intent by USC to enter a contractual agreement with Plaintiff pursuant to which it promised to meet those standards. The alleged statements in the Code of Ethics are directed to USC students and others in the academic community, not to parents or others who may be paying the tuition for particular students. This conclusion is consistent with California law as to the required elements of an implied in fact contract. *See Kashmiri*, 156 Cal. App. 4th at 828-33 (specific promises made by the University of California on its website not to raise certain fees created an implied contract not to do so); *Requa v. Regents of Univ. of Calif.*, 213 Cal. App. 4th 213, 227-28 (2012) (university handbooks that included commitments that employees would continue to receive certain insurance benefits after retirement was sufficient manifestation of intent to show an implied contract).

Assuming without deciding that Plaintiff's payment of tuition and fees created certain contractual obligations for USC, *e.g.*, offering academic courses and the opportunity to earn a degree, it does not support the existence of the terms of the alleged implied contract stated in the SAC. *See, e.g., Banner Ent'mt, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 359 (1998) ("[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have . . . agreed upon some of the terms, or have taken some action related to the contract."). For the foregoing reasons, the SAC fails to allege facts sufficient to demonstrate conduct by USC that reflected its intent to enter a contract with Plaintiff with respect to the alleged fairness obligations. *See Green Valley*, 241 Cal. App. 4th at 433.

Furthermore, the alleged obligations of USC to refrain from "treat[ing] Daniel unfairly" and "tak[ing] unfair advantage of him," *see* SAC, Dkt. 28 at 18, are too indefinite to be enforceable under California law. "Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." *Ladas v. Cal. State Auto Ass'n*, 19 Cal. App. 4th 761, 770 (1993). "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07896 JAK (ASx) | Date | November 27, 2018 |
|---|---|---|---|
| Title | Witold Kowbel v. University of Southern California, et al. | | |

provide a rational basis for the assessment of damages." *Id.*; *see also Cal. Cartage Co. v. Sol Grp. Mktg. Co.*, No. 13-cv-8556-BRO, 2014 WL 12678375, at *5 (C.D. Cal. July 22, 2014) ("If a contract provides no basis to determine (1) what the parties agreed to do—and thus whether there has been a breach—and (2) what the appropriate remedy is for a breach, then there is no enforceable contract.") (citing *Bustamante v. Inuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006)).

The duties allegedly imposed by the Code of Ethics and the statements allegedly made to Plaintiff and other parents during the 2013 campus visit, do not meet these standards. California law calls for courts to "construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained." *Patel v. Liebermensch*, 45 Cal. 4th 344, 349 (2008) (internal quotation marks and citations omitted). Applying this standard to the allegations in the SAC, and construing them in the light most favorable to Plaintiff, USC promised to treat Daniel fairly and to not take advantage of him. These promises are not enforceable ones under contract law because they do not make clear "what the parties agreed to do." *Cal. Cartage Co.*, 2014 WL 12678375, at *5. Thus, these alleged obligations of USC are not ones that can be reasonably understood and interpreted, which is the first step necessary to determine whether USC breached any of them.

The allegations also fail because "[t]here is a widely accepted rule of judicial nonintervention into the academic affairs of schools" which counsels against finding that USC has the contractual obligations alleged in the SAC. *Paulsen*, 25 Cal. 3d at 808; *see also Banks v. Dominican College*, 35 Cal. App. 4th 1545, 1551 (1995) (a university's discretionary decisions may be overturned only "if we find it to be arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors."). In general, courts do not accept breach of contract claims as a means to second-guess academic and disciplinary decisions by colleges and universities. *See, e.g.*, *Kashmiri*, 156 Cal. App. 4th at 825 (citing *Ross v. Creighton Univ.*, 957 F.2d 410, 414-15 (7th Cir. 1992)). *Kashmiri* distinguished breach of contract claims that are ordinarily available against universities and those as to which the presumption of nonintervention applies:

> Courts have applied contract law flexibly to actions involving academic and disciplinary decisions by educational institutions because of the lack of a satisfactory standard of care by which to evaluate these decisions. Courts have also been reluctant to apply contract law to general promises or expectations. Courts have, however, not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction.

*Id.* at 826.

*Kashmiri* involved a commitment by the University of California, which was stated on its website, not to increase certain fees. There, it was determined that a "breach of contract action regarding a *specific* promise about the fee to be charged is similar to a breach of contract action based on the failure to provide a specifically promised educational service." *Id.* at 826-27 (emphasis in original).

The promises alleged in the SAC lack this level of specificity. A breach of contract analysis as to whether USC breached its alleged obligations to treat Daniel fairly would require an assessment of the SJACS investigation, the evidence presented to that administrative body, and the appropriateness

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07896 JAK (ASx) | | Date | November 27, 2018 |
|---|---|---|---|---|
| Title | Witold Kowbel v. University of Southern California, et al. | | | |

the discipline that was imposed. This is precisely the type of assessment of internal, academic processes, that has been deemed an inappropriate basis for a breach of contract claim. *See Paulsen*, 25 Cal. 3d at 808-09; *see also Lachtman v. Regents of Univ. of Calif.*, 158 Cal. App. 4th 187, 203-04 (2007) ("University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation . . . .").

Although Plaintiff may disagree with the investigation at issue and its outcome, no facts have been alleged to suggest that it was based on "irrelevant or discriminatory factors," *see Banks*, 35 Cal. App. 4th at 1551, or that it was the product of bad faith. *See Paulsen*, 25 Cal. 3d at 808-09; *Wong v. Regents of Univ. of Cal.*, 15 Cal. App. 3d 823, 830 (1971) (recognizing a school's "absolute discretion in determining whether a student has been delinquent in his studies, and to place the burden on the student in showing that his dismissal was motivated by arbitrariness, capriciousness[,] or bad faith."). Consequently, Plaintiff has not stated a legal basis upon which judicial review of USC's academic and administrative processes would be appropriate.[4]

      C.      Whether Leave to Amend Should be Granted

As noted above and in the June 20 Order, leave to amend a complaint should be granted "with extreme liberality," *see Owens*, 244 F.3d at 712. However, it is inappropriate where amendment would be futile or where a plaintiff has failed to cure deficiencies that were present and identified as to earlier versions of the complaint. *See Foman*, 371 U.S. at 182; *see also Ascon v. Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

The SAC is Plaintiff's third attempt to state a claim against USC. Its allegations reflect that he disagrees with USC's investigation into and resolution of the academic misconduct allegations against Daniel. They also imply that this process adversely affected Daniel's ability to earn a degree from USC. At the hearing, Plaintiff stated that, during the campus visit prior to Daniel's enrollment at USC, certain

---

[4] At the hearing, USC argued that students seeking to challenge a disciplinary action may do so through a writ of administrative mandamus. Cal. Code Civ. Proc. § 1094.5 provides that administrative mandamus is available to review "any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." This process is available to students who seek to challenge academic discipline imposed by their colleges or universities. *See, e.g.*, *Doe v. Univ. of Southern California*, 28 Cal. App. 5th 26, 238 Cal. Rptr. 3d 856, 863-64 (2018) (USC student challenging academic integrity violation and corresponding discipline imposed by SJACS based on allegations of academic dishonesty); *Berman v. Regents of Univ. of California*, 229 Cal. App. 4th 1265, 1271-72 (2014). Courts have held that administrative mandamus provides the exclusive remedy for challenges to the fairness of a private university's administrative process in the context of tenure decisions. *See Pomona College v. Superior Court*, 45 Cal. App. 4th 1716, 1726 (1996) ("[W]e hold that, absent discrimination, judicial review of tenure decisions in California is limited to evaluating the fairness of the administrative hearing in an administrative mandamus action."); *Gutkin v. Univ. of Southern Calif.*, 101 Cal. App. 4th 967, 978-79 (2002) ("It is precisely the faculty handbook's requirement of a hearing that renders the hearing 'required by law,' for purposes of administrative mandamus."). Although no authority has been cited to support the claim that mandamus is the exclusive remedy with respect to academic sanctions like those at issue here, it is well-settled that Section 1094.5 provides a means through which Daniel could seek review of the SJACS decision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07896 JAK (ASx) | Date | November 27, 2018 |
|---|---|---|---|
| Title | Witold Kowbel v. University of Southern California, et al. | | |

admissions officials made express promises about how students would be treated by USC if they enrolled. However, even if included in a fourth version of the complaint, these alleged commitments suffer from the same lack of specificity that is present in the SAC. They distill to an alleged, vague promise by USC that it would treat Daniel fairly. *See Ladas*, 19 Cal. App. 4th at 770. Moreover, they would result in challenges to academic decision-making that is not deemed appropriate for a breach of contract claim, *see Paulsen*, 25 Cal. 3d at 808; *Lachtman*, 158 Cal. App. 4th at 203-04, and instead must be addressed through the administrative mandamus process under Cal. Civ. Proc. Code § 1094.5. *See Doe*, 238 Cal. Rptr. 3d at 863-64; *Berman*, 229 Cal. App. 4th at 1271-72.

For these reasons, because any further amendment of the allegations would be futile, the SAC is dismissed with prejudice.[5]  *See Foman*, 371 U.S. at 182; *Ascon*, 866 F.2d at 1160.

**IV.**     **Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**. The parties shall confer in an effort to agree on a form of judgment. On or before December 7, 2018, USC shall lodge a proposed judgment that is consistent with this Order. The notice shall state whether the parties agreed to the form of judgment or whether Plaintiff will be filing any objections consistent with the Local Rules by December 14, 2018.

**IT IS SO ORDERED.**

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | ak |  |

---

[5] Consequently, the Motion to Quash Defendant's Subpoena for Oral Deposition (Dkt. 37), which was filed by Daniel on November 19, 2018 as a nonparty pursuant to Fed. R. Civ. P. 45, is **MOOT**.